**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **OLIVIA PARROTT, et al.,**<br><br>On behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>    v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA,**<br><br>Defendant. | Civil Action No.: **21-02930 (RCL)** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST**

**AMENDED COMPLAINT**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendant District of Columbia's (the "District's") Motion to Dismiss [ECF No. 22] Plaintiffs' Amended Complaint [ECF No. 18] should be denied because Plaintiffs' Amended Complaint plausibly stated claims.

## INTRODUCTION

This case is an overdetention case like *Bynum* and *Barnes* with the only difference being that the District overdetained vehicles and smartphones instead of people. The District only needs the vehicles and smartphones it seized in connection with criminal investigations for a few weeks to process them for evidence because it seizes them to extract any potential evidence that may be in them (*e.g.*, contraband, fingerprints, trace DNA) not as "trial evidence" for use in Court proceedings, which the District's own Attorney General testified to the D.C. Council only takes a couple weeks, Am. Compl. ¶ 44. Nonetheless, the MPD's "until-the-case-is-over"/ three-year retention policy requires the MPD to retain all property seized in connection with criminal investigations and classified by the District as "evidence" until any papered prosecution is over or for three years if a prosecution is never instituted. General Order 601.2. Like the District's "10 p.m. cut-off" ordinance in *Barnes* which delayed releases after 10 p.m. until the next morning, the District's "until-the-case-is-over"/ three-year retention policy is an "over-detention-making machine." *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 277 (D.D.C. 2011).

### How and why the District seized Named Plaintiffs' vehicles and Ms. Parrott's smartphones

Named Plaintiffs, Olivia Parrott, Bardino Joyner, and Dreyvon Iracks, are persons whose vehicles were seized by the Metropolitan Police Department ("MPD") pursuant to "established state procedures" in connection with MPD criminal investigations to process them for potential

evidence that might be in them, and, in the case of Mr. Joyner's and likely Mr. Iracks', also for civil forfeiture determinations. FAC, ¶ 2; ¶¶ 7-10.

The MPD seized and retained each of their vehicles without a warrant, and not incident to an arrest, before any criminal prosecution commenced, and without leaving an inventory of property seized with them or any other kind of notice informing them who seized their vehicles or why, *Id*.; the MPD simply in the dark of night towed each vehicle off the street where it had been parked leaving not a ripple of notice behind, *Id*., like a whaling ship's boat "towed out of sight by a Whale." Moby Dick, (Chap. 7: The Chapel), Melville, Herman.

As far as Plaintiffs or Plaintiffs' counsel know, no warrant was ever issued for any of these three vehicles. MPD never gave a copy of a warrant and a written inventory of property taken to any of three owners as Rule 41(f)(5) and (6) prescribe, and to Plaintiffs' counsel's knowledge, none ever issued. The MPD detectives who seized Ms. Parrott's family Passatt and smartphones and who interrogated her obtained consent to search her property conditioned on her answering their questions, Am. Compl. ¶¶ 221- 223, so, presumably, to their minds, no warrant was needed to search and process her Passat and the family smartphones for potential evidence.

The District instituted a criminal prosecution relating to Ms. Parrott's vehicle and smartphones four months after seizing her property and the MPD continued to retain her property for another twenty months. *See* Docket, *United States v. Simmons*, Case No. 2019 CF1 014711 (D.C. Super. Ct. Nov. 19, 2019); Am. Compl. ¶ 7. Presumably Rule 41(g) became available to Ms. Parrott when the prosecution was instituted because her Passat and the family smartphones were "property possession of which "is in contemplation of the law possession by the court,'" *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order. But the District never gave Ms. Parrott notice that the

prosecution had commenced or that she was entitled to bring a motion pursuant to Rule 41(g) upon institution of a criminal prosecution related to her vehicle.

The District released Mr. Joyner's vehicle before a criminal prosecution was instituted so Rule 41(g) never became available to him. But, while the MPD retained the vehicle as "evidence", the MPD's Asset Forfeiture Unit placed a forfeiture hold, began to make forfeiture determination about the Toyota, and opened negotiations with Mr. Joyner about the return of his Toyota. The implications of the forfeiture hold on his rights is discussed below in the discussion of Claim 6.

The MPD still has Mr. Joyner's Infiniti and no case has been instituted; nor have the MPD ever served Mr. Iracks with a copy of a warrant and a written inventory of property seized as Rule 41(f)(5) and (6) prescribe. Mr. Iracks' vehicle maybe subject to civil forfeiture under D.C. Code § 7-2507.06a (illegal transporting a firearm) because the MPD claim it was involved in a shooting.

Another legal consequence flowing from the lack of warrants is that Superior Court Rule 41(f)(8)(applying to property seized pursuant to a warrant) does not apply to any of Named Plaintiffs' vehicles or smartphones so the only "evidentiary holds" (classifications as "evidence") on the vehicles were placed by the MPD pursuant to General Order 601.1.[1] Moreover, since the vehicles and smartphones were seized not incident to arrest the investigators investigating the related criminal investigations had responsibility for submitting the PD 81-Cs to the relevant prosecutors with no deadline for releasing the property (submitting the PD 81-Cs) except for the three-year rule of General Order 601.2. Presumably the "until the case is over" rule attached to Ms. Parrott's vehicle and smartphones when the government instituted a prosecution against Mr. Simmons. Am. Compl. ¶ 7.

---

[1] D.C. SCR-Crim. Rule 41(f)(8) provides: "(8) Disposition of Seized Property. Property seized in the execution of the warrant must be safely kept for use as evidence. No property seized shall be released or destroyed except in accordance with law and upon order of a court or an attorney for the government."

The "General Procedures" and the paragraph on "Evidence" on the MPD/ ECB website obviously track the language of Rule 41(f)(8) and thus relate to property seized pursuant to a warrant. The text provides in pertinent part that "evidence" is generally held until the conclusion of any pending court action. Subsequently, the prosecuting attorney will initiate a "Property Release" certifying that the property is no longer needed for court and may be returned to the rightful owner." The website only discusses property seized in connection with a papered criminal prosecution. None of the website text addresses the situation of property seized without a warrant or before commencement of a prosecution though it is not likely that a non-lawyer or even some lawyers would realize this when reading the website.

## STANDARD OF REVIEW

The defendant in a motion to dismiss bears the burden of establishing that the complaint fails to state a claim. *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 481 (2016). The burden never shifts to the plaintiff regardless of the sufficiency of the plaintiff's opposition where, as here, the complaint adequately states a plausible claim for relief. *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 344–45 (D.C. Cir. 2018).

The issue in a 12(b)(6) motion is the sufficiency of the complaint; the plaintiff does not have to establish success on the merits. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

At the motion to dismiss stage the court must treat the complaint's factual allegations as true and grant plaintiff the benefit of all inferences that can be derived from the facts alleged. *Atherton*, 567 F.3d at 677; *Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014).

**I.   The District through its MPD during the Class Period seized vehicles, smartphones, and money for civil forfeiture, for criminal investigations, and sometimes for both reasons.**

The District through its MPD during the Class Period seized vehicles, smartphones, and money for civil forfeiture, as "evidence" in connection with criminal investigations, and sometimes

for both reasons. All vehicles, smartphones, money and other property at issue in this case were seized and held in connection with criminal investigations and classified by the MPD as "evidence" or sometimes "investigation" or "Suspected Proceeds of a Crime."[2] Page 1 (¶ I.A, 6), General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department (Apr. 30, 1992) (GO-SPT-601.1). Some of the property was also held for civil forfeiture determinations and ultimately for civil forfeiture. *Id.*

### A. The District's established "municipal" procedures for seizing vehicles, smartphones and other property in connection with criminal investigations to preserve "potential evidence."

Both parties agree that the MPD seized Plaintiffs and class members' vehicles and smartphones pursuant to established municipal procedures though the parties disagree on the exact contents of the established municipal procedures. Am. Compl. ¶ 65; Def. Mem., p. 3.

The Chief of the MPD, the District's policy maker for this function, *Id.* at 45, has promulgated written policy directives to establish "state" or "District" procedures for seizing property in connection with MPD criminal investigations. General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department (Apr. 30, 1992) (GO-SPT-601.1); General Order 601.02, Preservation of Potentially Discoverable Material (Feb. 3, 2004) (GO-SPT-601.02); Automobile Searches and Inventories, [GO-602.01].

This section identifies the District's established municipal procedures (MPD General Orders) for seizing vehicles, smartphones, and other property (1) without a warrant, and (2) not incident to an arrest, (3) not related to any papered criminal prosecution, as Ms. Parrott, Mr. Joyner, and Mr. Iracks' vehicles and smartphones were.

---

[2] The MPD/ ECB website defines "Suspected Proceeds of a Crime" as "primarily a holding classification for the purpose of investigation. At the end of a sixty-day period, the classification must be changed or the property released. Property retained after this time is handled in the same manner as evidence."

1.  *The MPD's established state procedures for seizing and retaining in connection with criminal investigations without a warrant and not incident to arrest.*

The General Orders set forth an established municipal procedure which authorize MPD members to seize property in connection with criminal investigations and classify it as "evidence" according to the MPD orders, *See e.g.*, Paragraph III, F, 1-6, General Order 601.1, Recording, Handling and Disposition of Property Coming into the Custody of the Department (Apr. 30, 1992) (GO-SPT-601.1).

The MPD classifies as "evidence" or for "investigation" vehicles, phones or other property that may be used in a criminal investigation. *Id.* at pp. 26-27 (III, F, 1 – 6). *Id. at 46.* The MPD -- not either District prosecutor, not the Superior Court pursuant to Rule 41(f)(8) -- classifies the property as "evidence" when the property is seized without a warrant, with or without a papered case.

There are two crucial documents involved in a vehicle or smartphones or any other property seized by the MPD in connection with criminal investigations and classified by the MPD as "evidence": (1) the PD 81 (the "Property Record") which the MPD generates at seizure of property and writes the classification on, General Order 601.1 at p. 2 (I, A, 2) and pp. 4-5 (I, C,1-5) and; (2) the property Book.

The PD 81 is the document the seizing officer uses to memorialize the seizure of the vehicle or smartphone or other property, and it is also the document the seizing officer uses to memorialize the classification of the vehicle as "evidence" or for forfeiture, according to criteria established by the MPD policy directives issued by the Chief. An MPD officer who seizes or "recovers" a vehicle or phone or other property (the "recovering officer") must, before the end of their shift, fill out a PD 81 (Property Record) describing the property, why it was seized, and information about the owner or the person from whom the property was seized (if any) if different

from the owner. **Am. Compl. ¶ 42; General Order 601.1 at p. 4-*5* (I, C, 1-*5*), p. 26-27 (III, F, 1-10, property classified as "evidence" or "suspected proceeds of a crime").** The recovering officer classifies the property on the Property Record according to categories established by the Chief in MPD policy directives. **General Order 601.1 at pp. 4-*5* (I, B, 1-*5*, available classifications), p. 26-27 (III, F, 1-10, property classified as "evidence" or "suspected proceeds of a crime").**

The officer filling out the PD 81 at seizure also enters the property, the classification of the property, and the CCN or "incident number" into the "Property Book (PD 82), a property log maintained at each "element," that is MPD unit such as a District station or the Evidence Control Branch. General Order 601.1 at p. 4 (I, B, 1-*5*). The data from the PD 81 is also required to be entered into the MPD's evidence tracking database, but this is not reliably done.

When the MPD decides to release property the PD 81-C is the most important document in securing the release of the vehicle. The MPD will not release a vehicle or smartphone or other property classified as "evidence" without a PD 81-C (except for the MPD's "rapid release" procedure for stolen vehicle discussed below). The MPD controls the timing when to submit a PD 81-C to the relevant prosecutor. Am. Compl. ¶¶ 4, 46-51. The MPD/ ECB website states that the prosecuting attorney "initiates" the "Property Release" but this is incorrect for Plaintiffs' vehicles. The prosecutor does not sign a PD 81-C until the MPD submit it to them. Am. Compl. ¶¶ 4, 46-51.

The three vehicles in this case were seized without warrants and without arrests so General Order 601.1 delegates responsibility for obtaining the PD 81-C/ releasing the property to the "investigator" (or the member first taking the property into custody when there is no investigator). *Id.* at p. 26, (¶ III, F, 4). Because the investigator controls the timing of when to submit the PD 81-C to the relevant prosecutor, subject only to the three-year rule of General Order 601.2, the

investigator controls when to release the property. Am. Compl. ¶¶ 4, 46-51. General Order 601.1 does not set a deadline or even any guidance to investigators for releasing the property. Therefore, General Order 601.2 is the only applicable policy prescribing how long the investigator may retain a vehicle. Presumably the "until-the-case-is-over" rule kicks in when a case relating to the property is instituted.

### B. Vehicles classified as both for forfeiture and as evidence.

The MPD also classified some vehicles as both hold for forfeiture and as evidence.

The criteria for seizing a vehicle as evidence are the same whether the vehicle is seized solely as evidence or as evidence on top of for forfeiture. P. Ex. 201, Automobile Searches and Inventories Order, pgs. 10-11 (I,B,2) (seizures for forfeiture), 8 (I,B,1).

The District also has an established municipal procedure for seizing vehicles and other property for forfeiture determinations and deciding whether to proceed with forfeiture or release the property which consists in General Orders and the District's revised forfeiture statute (the Civil Asset Forfeiture Amendment Act of 2014, which became effective in July, 2015) enacted to replace the previous version which lacked constitutionally required procedural safeguards. D.C. Code § 41-301 et seq. Plaintiffs discuss the District's established municipal procedures for forfeitures below in the discussion of Claim 6.

### II. Plaintiffs in Claim 1 plausibly pleaded both a predicate constitutional violation and a *Monell* claim under the Fourth Amendment.

Defendant's motion to dismiss Claim 1 should be denied because Plaintiffs plausibly pled both: (1) a "predicate constitutional violation"; and that (2) a "custom or policy of the municipality" was the "moving force" behind the constitutional violation." *Anderson v. District of Columbia*, 317 F. Supp. 3d 444, 447 (D.D.C. 2018). Even a seizure reasonable at its inception can become unreasonable because of its duration. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25

(D.D.C. 2019); *Avila v. Dailey*, 246 F. Supp. 3d 347, 358 (D.D.C. 2017). The District claims a circuit split on this issue but the D.C. Circuit has not ruled on the issue, and the better reasoned cases such as *Smith* and *Avila* comport with the Supreme Court's jurisprudence.

**A. Plaintiffs state a plausible predicate constitutional violation under the Fourth Amendment.**

Plaintiffs plausibly alleged that the District held their vehicles and Ms. Parrott's smartphones without any further justification after the initial justification – to search and to process them for any potential evidence that might be in them and to preserve the results of its analyses and any items found in the search – had evaporated. Am. Compl. ¶¶ 7-10; ¶¶ 42-43; ¶ 44.

To answer the question whether the District's ongoing seizure of Plaintiffs' vehicles and Ms. Parrott' smartphones after processing them for evidence complied with the Fourth Amendment, the Court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Smith*, 387 F. Supp. 3d at 25. An individual's Fourth Amendment interests in retrieving their vehicles and smartphones as soon as the government no longer needs them is overwhelming. Am. Compl. ¶ 1. A vehicle is often an individual's "most valuable possession," as well as their primary "mode of transportation, and for some, the means to earn a livelihood." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 100-01 (D.D.C. 2012). "[M]odern cell phones ... are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014).

**1. *The District had no justification for retaining Plaintiffs' vehicles after processing them for evidence and preserving the evidence.***

The District's own Attorney General told the D.C. Council in written testimony in 2015 that processing vehicles and arranging for prompt post deprivation hearings only takes about two weeks. Am. Compl. ¶ 44. Therefore, unless exceptional circumstances are present, any vehicle or

smartphones held longer than two weeks is held with justification, that is, is overdetained. *Smith*, at 25; *Avila*, at 358 (D.D.C. 2017). The District has not articulated any justification for retaining the vehicles and the smartphones past the point where they were processed for potential evidence. The obvious reason the District held the vehicles and smartphones as long as it did was because the District's policy statements directed the MPD to hold vehicles and smartphones and other property until any papered case was over or for three years. MPD General Order 601.2 "Preservation of Potentially Discoverable Material" (Feb. 3, 2004); Am. Compl. ¶ 364; *see* also DCMR § 6-804.3. The District denies the rule applies to property seized in connection with criminal investigations and classified by the MPD as "evidence", but the District of Columbia Court of Appeals says it does. *Koonce v. District of Columbia*, 111 A.3d 1009, 1018 (D.C. 2015)(potentially discoverable evidence is to be preserved "until the entire investigative jacket or case folder is disposed of," or, "[i]f no criminal judicial proceeding has been initiated, the material shall be preserved for a period of three years from the date such material was first obtained," *quoting* MPD General Order 601.2); *see also Clatterbrook v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (courts may consider "relevant facts obtained from the public record," so long as these facts are construed in the light most favorable to the plaintiff).

The District cites to *dicta* in cases discussing the need to hold trial evidence until the case is over. Memorandum, pp. 13-14. But the cases are distinguishable because Plaintiffs plausibly alleged that "vehicles themselves are virtually never offered as evidence in court proceedings, and smartphones are seldom if ever offered as evidence in court proceedings." Am. Compl. ¶ 32-33; 34-36; *see United States v. Lee*, 509 F.2d 400, 404 (1974)(police justified in seizing and searching car seized incident to arrest to prevent loss of incriminating evidence left in the car or accomplices or friends' wiping off any fingerprints or loss of fingerprints to elements if car left in place); *Avila v.*

*Dailey*, 246 F. Supp. 3d 347, 356 (D.D.C. 2017)(MPD did not need to retain the van seized for potential evidence in it to preserve the fingerprints, which may well have degraded over the time the van was held).

The evidentiary value of any potential evidence that may be found in a vehicle or a smartphone is separate and distinct from the vehicles or the smartphones themselves. Am. Compl. ¶ 38; *Lee*, 509 F.2d at 404; *Avila v. Dailey*; *Krimstock II and III*. Also, the concerns expressed by the D.C. Circuit and this Court for processing vehicles promptly so as to recover and preserve any trace evidence in them supports Plaintiffs' position that the District does not need to hold vehicles and smartphones very long. Any evidentiary value in the vehicles and smartphones themselves remaining after processing can be preserved by processing the vehicles for trace evidence such as fingerprints and sufficiently informative photographs of the vehicles and smartphones. *Lee*, 509 F.2d at 404; *Avila v. Dailey*; *Krimstock II and III.*

And with respect to that small sliver of smartphones, the **MPD** could release them to most owners conditionally upon a promise or court order to produce them at trial. Cf. **D.C. Code § 41-306(d)(2)(C)** (allowing conditional release of property pending forfeiture proceedings upon owner's agreement not to destroy, damage or dispose of or transfer).

*Smith v. District of Columbia* is also distinguishable on the facts for the same reason. In *Smith*, this Court recognized the justification for holding plaintiffs' guns and ammunition pending trial on CPWL and other gun possession charges as the need to preserve trial evidence for the ongoing prosecutions and the justification continued at least until those prosecutions were dismissed. *Smith*, 387 F. Supp. 3d at 25. This ruling does not, as the District thinks, lay down a universal rule that a government may hold all property as "evidence" until any papered case is over. See Def.'s Mem. at p. 14. Holding the *Smith* plaintiffs' guns and ammunition pending trial

on CPWL and other gun possession charges was reasonable under the Fourth Amendment because guns and ammunition were routinely offered as evidence in such prosecutions as Plaintiffs conceded in their operative complaint. *Smith*, 387 F. Supp. 3d at 25. The principle announced in *Smith* is that under the Fourth Amendment the government may keep property seized in connection with criminal investigations only as long as it needs it for that purpose. *Smith*, 387 F. Supp. 3d at 25. Absent a new justification, continued retention is unjustified. *Id.*

*Jenkins v. District of Columbia* is distinguishable on the facts for the same reason. The language cited merely states what Plaintiffs have acknowledged – the government has an interest in processing vehicles for any potential evidence (e.g., items such as contraband or trace evidence such as DNA or fingerprints) that might be in them and it has an obligation to preserve the evidence for any defendant in any papered criminal prosecution. Rule 16 is a red herring regarding the vehicles and smartphones seized from Named plaintiffs and most persons, as explained below.

Instead of addressing Plaintiffs claims that vehicles and smartphones seized and retained in connection with criminal investigations long after the District has searched and processed them for evidence, the District merely sets up a straw man – "none of the plaintiffs have plausibly alleged that their property was retained after the conclusion of the related criminal investigation." Memorandum, p. 16. But Judge Chutkan held that MPD's only possible evidentiary interest in the van after searching it and processing it was "some slight chance that the van might contain more items with evidentiary value that MPD did not detect during the first search," and the off chance that a second search might yield more "evidence" did not justify continued retention of the van. *Id.* at 358, 360.

**2. Rule 16(a)(1)(E) provided no basis to retain Plaintiffs vehicles after searching and processing them, or after instituting cases against defendants.**

Rule 16(a)(1)(E) provided no basis to retain Plaintiffs' vehicles or Ms. Parrott's smartphones after searching them and processing them for evidence. Alternatively, Rule 16(a)(1)(E) provided no basis to retain Ms. Parrott's Passat more than 30 days after the MPD arrested the only suspect in the case and the AUSA instituted a case in Superior Court the next morning naming that suspect as the only defendant.

This red-herring justification should be rejected out of hand because the District merely supposed that it might apply without analyzing whether it applied to any Plaintiff's vehicle or smartphones. Def. Mem., p. 15. The District's statement that Rule 16(a)(1)(E) requires the government to make tangible objects ... within the government's possession, custody or control "available to a criminal defendant upon request for inspection" (District's language, text not in Rule) is not a correct statement of the law because it wildly overstates its obligations under Rule 16(a)(1)(E). *See e.g., In re Q.D.G.*, 706 A.2d at 38 n.6.

Rule 16(a)(1)(E) as interpreted by the District of Columbia Court of Appeals does not require the government to retain vehicles and make the entire vehicle available to defendants for inspection if detailed photographs of the material parts of the vehicles, the items in the vehicle, and the preserved trace evidence or report found in them are provided to the defendant to substitute for the vehicle itself. *See e.g., In re Q.D.G.*, 706 A.2d at 38 n.6. For example, in a stolen vehicle case the District of Columbia Court of Appeals held that that sufficiently detailed photographs of the Honda and, in particular, of the allegedly "punched out" ignition, would have been sufficient to satisfy the government's preservation obligations under Rule 16(a)(1)(E) in lieu of keeping the Honda for inspection by the defendant. *In re Q.D.G.*, 706 A.2d at 38 n.5, 6. The court even pointed to provisions of the New York City penal law codifying the practice of allowing the government to satisfy its preservation of certain stolen evidence obligations through sufficiently

detailed photographs instead of retaining the entire vehicle so the vehicle can be promptly returned to the owner without notice or consent of the defendant. *Id*. (citing New York Penal Law § 450.10 (4)(c) (McKinney 1997 Supp.)).

The court highlighted its concern for the property interests of owners of recovered stolen vehicles so "that a vehicle which is the subject of a charge of UUV should [] be returned to the owner at the earliest practicable date." *In re Q.D.G.*, 706 A.2d at 38 n.6. In fact, General Order 601.1 on handling property coming into the custody of the MPD provides special procedures for the rapid return of recovered stolen vehicles to owners without having to obtain separate PD 81-Cs from prosecutors. General Order 601.1, p. 30, ¶ 9; p. 31, ¶ 12. There is no principled reason why the great weight accorded the interests of owners of recovered stolen vehicles and the sense of urgency in returning them to owners by the District of Columbia Court of Appeals and the MPD General Order should not be accorded to other owners of vehicles seized in connection with criminal investigations, especially innocent owners such as the Named Plaintiffs.

Like the court in *In re Q.D.G.*, the D.C. Circuit and this Court has also draw a distinction between the vehicle itself and items and trace evidence found on a vehicle when conducting its Rule 16 analysis, and both accord great weight to the property interests of owners of vehicles seized in connection with criminal investigations. *See e.g., Lee; Avila v. Dailey*, 246 F. Supp. 3d at 357. Both the D.C. Circuit in *Lee* and *Judge* Chutkan in *Avila* point out that preserving trace evidence such as fingerprints in or on a vehicle is one of the reasons for seizing a vehicle for potential evidence without a warrant in the first place. Judge Chutkan held that once a detective removed from the van fingerprints and items which might have potential evidentiary value in a criminal case against the suspect, the van itself would have no evidentiary value. *Avila v. Dailey*, 246 F. Supp. 3d at 356. Any criminal prosecution of the suspect would not have required the government to

provide defense counsel access to Plaintiff's van; it would have required the government to provide access to the items removed from the van. *Id.* at 360.

The Second Circuit has reached the same conclusion: once a vehicle is processed for evidence and the evidence is preserved the government has no further need to retain the vehicle. *Krimstock III* at 255; *Krimstock v. Kelly*, 2007 U.S. Dist. LEXIS 82612, 10 (S.D.N.Y. Sept. 27, 2007) ("*Krimstock* Third Amended Order"); s*ee also the rationale in Hines v. Albany Police Dep't*, 520 F. App'x 5, 7 (2d Cir. 2013) (vehicle in which drugs found has no evidentiary value after vehicle searched and processed and any drugs recovered).

The same rule should apply to smartphones.

Nothing in *Walker* undermines the general principle of *In re Q.D.G.* that the government can satisfy its preservation obligations under Rule 16(a)(1)(E) by preserving the evidentiary value in a vehicle in lieu of the entire vehicle by searching and processing the vehicle for items and trace evidence such as fingerprints and DNA. *Walker v. United States*, 253 A.3d 146 (D.C. 2021).

*Walker* is distinguishable on the facts from *In re Q.D.G.* because in *Walker* the MPD returned a stolen vehicle to the owner without any searching or processing of the vehicle for evidentiary value whatever. *Id.* at 152. The MPD did not even photograph the vehicle let alone dust it for prints or process it for DNA or other trace evidence. *Id.* Apparently the MPD did not even search the vehicle because they left a smartphone (visible in photographs of the vehicle's interior taken by the owner's insurance agent for insurance purposes) belonging to a robbery victim lying in plain view on the front seat. *Id.* The only photographs taken of the vehicle before release were the photos taken by the owner's insurance company. *Id.* The court did not hold that preserving the results of fingerprints and DNA would not be sufficient to satisfy the government's preservation obligation under Rule 16(a)(1)(E). *Walker*, at 156. The court merely pointed out to

government counsel (who lamely argued that the police can satisfy Rule 16 by providing the defendant with "sufficiently informative photographs" of the stolen items in lieu of defense inspection) that photographs obviously could not indicate the absence of fingerprints and DNA. *Id.* at 156. The *Walker* panel did not reject the fundamental policy of returning stolen property to their rightful owners without undue delay. *Id.*

The strongest case for Rule 16 delaying release of a vehicle is Ms. Parrott's claim because of the complex nature of biological evidence alleged to be on the vehicle. Am. Compl. ¶ 212. But the government's interest in preserving Ms. Parrott's Passat for inspection by the defendant dwindled away to zero about 30 days after the MPD arrested the defendant – Mr. Simmons – and the U.S. Attorney instituted a criminal prosecution in Superior Court. *See* Docket, *United States v. Simmons*, Case No. 2019 CF1 014711 (D.C. Super. Ct. Nov. 19, 2019). Once Mr. Simmons was in custody and a case was filed he or his attorney were perfectly capable of inspecting the vehicle and performing their own tests. The District's retention of the Passat for 20 months after the criminal case was instituted undermines the District's suggestion that Rule 16 caused any of the overdetentions of Plaintiffs' vehicles. Instead it shows that the "until-the-case-is-over"/ three-year policy delayed release of the vehicle after processing. The District's warrant for the arrest of Mr. Simmons (there was never a warrant to search the car) states that position of the Passat relative to the suspected trajectory of bullet marks led the District to believe the Passat had been moved from the Brown shooting scene, but the District did not leave the vehicle in place; they photographed it. Am. Compl. ¶ 213. The existence of witnesses, CCTV and Ms. Parrott's statements the morning after also minimized the need to retain the Passatt for inspection by the defendant.

The police typically do not close down murder scenes for years "for investigation." Two months after the racist mass shooting that killed 10 people and injured three others at the Buffalo

supermarket, the store has reopened. https://www.npr.org/2022/07/15/1111771195/tops-grocery-store-buffalo-reopens-mixed-reactions-after-racist-mass-shooting

Mr. Joyner's vehicle presents the typical case of a seized vehicle and the reason for returning it after the MPD processed it for potential evidence. The MPD searched his vehicle and found some substances they alleged to be controlled substances. Once they had searched and processed and photographed the vehicle the MPD had no need for it. *In re Q.D.G.*, 706 A.2d at 38 n.6.; *Avila v. Dailey*, 246 F. Supp. 3d 347, 358 (D.D.C. 2017), *Hines*, 520 F. App'x at 7 – as is evidenced by the fact that the MPD released it after the forfeiture issue was resolved. *Krimstock III* at 255. The same analysis applies to Mr. Iracks' vehicle.

**B. Plaintiffs plausibly pled a *Monell* claim.**

The D.C. Circuit has provided a non-exhaustive list of four different ways in which a "policy" can be set by a municipality to cause it to be liable under § 1983: (1) the municipality adopts a policy that itself violates the Constitution; (2) the unconstitutional action was taken by a "policy maker" within the government; (3) the employees' unconstitutional actions "are so consistent that they have become [a] 'custom'" of the municipality of which the supervising policymaker must have been aware; or (4) the municipality knew or should have known of a risk of constitutional violations, but showed "deliberate indifference" to that risk by failing to act. *Hurd v. District of Columbia*, 997 F.3d 332, 337 (2021). Plaintiffs plausibly pled all four of these *Monell* claims.

Plaintiffs' easily satisfy *Baker* prong # 1 and # 2 because the District's "until-the-case-is-over"/ three- year policy is a written policy directive issued by the Chief, General Order 601.2, and it was the moving force of the overdetentions of the Plaintiffs' vehicles and smartphones.

The three vehicles in this case were seized without warrants and without arrests so General Order 601.1 delegates responsibility for obtaining the PD 81-C/ releasing the property to the

"investigator" or the member first taking the property into custody when there is no investigator. *Id.* at p. 26, (¶ III, F, 4). General Order 601.1 does not set a deadline or even any guidance to investigators for releasing the property. Therefore, General Order 601.2 is the only applicable policy so the three-year rule applies because there were no papered cases at seizure. *Koonce*, 111 A.3d at 1017; Am. Compl. ¶ 364. For vehicles and smartphones seized without an arrest, presumably the "end-of-case" rule governs when and if a case is instituted. When the District instituted a criminal prosecution against Mr. Simmons presumably the "until-the-case-is-over" rule engaged. General Order 601.2.

The District's "end-of-case"/ for three years mandate promulgated in General Order 601.2 violates the Fourth Amendment.  The Fourth Amendment allows the government retain vehicles and smartphones only as long as it needs them. *Smith*, 387 F. Supp. 3d at 25 (under the Fourth Amendment the government may keep property seized in connection with criminal investigations only as long as it needs it for that purpose unless continued retention is justified by a new purpose). The District's former Attorney General told the D.C. Council that the MPD only needs about two weeks to process vehicles and perform the other steps involved in evaluating vehicles seized as "evidence."  Am. Compl. ¶ 44. Established municipal procedures that authorize the seizure and retention of vehicles and smartphones for a period of time for mere administrative convenience without regard for the District's need for the property or the owners' interest in recovering their vehicles and smartphones generates overdetentions and violates the Fourth Amendment. *Smith, supra; Avila, supra*; *Barnes*, 793 F. Supp. 2d at 282-83 (District's "10 p.m. cut-off" rule which prescribed time for releasing inmates for mere administrative convenience without regard to the inmates' interest in prompt release when entitled to release violates substantive due process).

Additionally, the District and the MPD treat the Property Clerk statute as though it allows the District to keep all vehicles and smartphones seized in connection with criminal investigations for up to a year, Am. Compl. ¶ 365, even though the District concedes the Property Clerk statute does not even apply to the property at issue in this case. *Id.* at 64. So, the mandate generates unconstitutional overdetentions by requiring the District to hold vehicles and smartphones longer than the Fourth Amendment allows.

The General Orders and the DCMR are policies of the District, and thus satisfy *Baker* prong # 1. *Barnes v. District of Columbia*, 793 F. Supp. 2d at 282-83 (District's "10 p.m. cut-off" rule enacted by D.C. Council is a municipal policy.

Alternatively, the General Orders were policies set by a policy maker within the government, that is, the Chief and the Mayor respectively in the case of DCMRs. *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 277 (1990)(Chief of Police was the MPD's "final policymaking authority"); *Lewis v. District of Columbia*, 2018 U.S. Dist. LEXIS 95520, *17 (D.D.C. 2018) (Mayor's Order constitutes "policies" for purposes of § 1983).The Chief of Police is the District's final policymaker for the policies of the MPD. *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 277 (1990); Organization of the Metropolitan Police Department (MPD), General Order 101.10 (October 15, 2018). Therefore, these facts satisfy both *Baker* prong 1 and *Baker* prong 2.

In a "straight line" *Monell* claim like this where Plaintiffs alleges that the District's unconstitutional policy or custom of unconstitutionally applying it caused their constitutional violations the plaintiff can prove that causation element simply by proving the existence of the unconstitutional municipal policy or custom. *Jauch v. Choctaw Cnty.*, 874 F.3d 425, 435 (5th Cir. 2017); *Smith*, 387 F. Supp. 3d at 26 n.12. Plaintiffs plausibly pled that the "until-the-case-is-over"/

three year policy is the moving force behind the overdetentions of Plaintiffs' vehicles and smartphones. Am. Compl. ¶ 364. The MPD's retention policy is a moving force in delay in returning property to owners after a reasonable period for processing the property for evidence even when property is returned before a case is over because the MPD's retention policy saps the MPD of any sense of urgency in processing vehicles and smartphones and other property for evidentiary value and then returning it to owners. Am. Compl. ¶ 67. The MPD believes that as long as it returns property before or at the end of any trial or case it has discharged its obligation to respect owners' property rights and it has not overdetained the vehicles and smartphones because its "investigations" lasts until the case is over. *Id.* at ¶ 69. The MPD's interpretation of District statutes and its own policy directives is that it is entitled to keep vehicles, smartphones, and other property seized in connection with a criminal investigation until the end of "the investigation," and the MPD's conception of a criminal investigation includes not only processing property for whatever "potential evidence" it might yield but also interviewing witnesses, having witnesses testify a grand jury, instituting and prosecuting a criminal case on the off chance that it might require further searches of property. *Id.* at ¶ 69.

Moreover, the "end-of-case"/ three-year policy is the moving force behind every overdetention of vehicles or smartphones seized in connection with criminal investigations and classified by the MPD as "evidence" where the vehicle or smartphone is kept past the point needed to extract evidentiary value from the property on an as applied basis. Causation from an unconstitutional policy is presumed at the motion to dismiss stage. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

Plaintiffs satisfy *Baker* prong # 3 because Plaintiffs allege the District has a custom of retaining all vehicles and smartphones longer then it needs them to process them for evidence and

preserve any evidence in them, whether or not a case is ever papered. Both the MPD's own admission on the MPD/ECB website and Det. Dailey's testimony in *Avila* confirm that the actual practice of the MPD is to retain vehicles until the case is over. *Avila*, 246 F. Supp. 3d at 360. As Plaintiffs' pled, the District's policymakers know or should have known about and acquiesce in the custom because it is posted on the website. These admissions establish the plausibility of Plaintiffs' allegations on the existence of a custom. *Hurd*, 997 F.3d at 337.

Plaintiffs satisfy *Baker* prong # 4 because the website also establishes that the District is deliberately indifferent to the rights of owners' property held pursuant to the custom. The municipality knew or should have known of a risk of constitutional violations, because the website shows the District routinely overdetained property including vehicles and smartphones and the District showed "deliberate indifference" to that risk by failing to act to stop the overdetentions. *Hurd*, 997 F.3d at 337.

On pages 17 to 19 of its memorandum the District makes arguments relating to "prisoner's property" and the Property Clerk statute which are red herrings. Def. Mem., p. 17-19. The provisions of the General Orders 601.1 and 601.2 and MPD Special Order 15-08 the District considers "instructive" relate to "prisoner's property" seized from an arrestee which is not classified as "evidence" by the MPD. Plaintiffs never alleged that prisoner's property not seized or classified as "evidence" by the MPD is subject to the "until-the-case-is-over"/ three year policy.

Plaintiffs and the District agree D.C. Code § 5-119.06(d), the Property Clerk statute, does not apply to vehicles seized as "evidence".See Def. Mem., p. 19. But, DCMR § 6- A807.3 promulgated by the Mayor directs the Property Clerk to obtain the certification of the United States Attorney for the District of Columbia or the D.C. Corporation Counsel that property

deemed not subject to forfeiture is not needed as evidence in the prosecution of a crime before releasing it.

### III. Claim 2: Due Process Clause obligated the District to give notice to owners at or promptly after seizure, after processing vehicle for evidence, and after a prosecution was instituted.

Defendant's motion to dismiss Claim 2 should be denied because Named Plaintiffs plausibly pled both: (1) a "predicate constitutional violation," failure to send notice when required; and that (2) a "custom or policy of the municipality" was the "moving force" behind the constitutional violation." *Anderson*, 317 F. Supp. 3d at 447.

Plaintiffs' Claims 2, 3, and 4 are related because each has a claim for notice based on *Mullane*'s "desire-to-inform" standard which governs deprivations of property by the government.[3]

The District should have given Named Plaintiffs notice at or promptly after each of the crucial events triggering Plaintiffs' due process rights in the life of the seizure and retention of their vehicles and smartphones: seizure, after MPD finished processing their vehicles and smartphones for evidence, after a prosecution was instituted, after searching their property pursuant to a warrant.

No authority excuses police from giving *Mullane* style "desire-to-inform" notice to owners when police seize their property in connection with criminal investigations just because a post-deprivation remedy may be on the books, especially here when no post-deprivation remedy that satisfies due process is "established by published, generally available state statutes and case law," *See Perkins*, 525 U.S. at 241, the property was subject to seizure for more than on reason, and the MPD/ECB website provides misleading information about recovery remedies, and the owners were not defendants in papered cases.

---

[3] Claim 6 is also has a due process clause claim for notice but Claim 6 covers only vehicles classified as "H" for forfeiture as well as "evidence" and is discussed separately below.

The need for written notice at each of these events is magnified because the MPD/ ECB website, which the District touts as "provid[ing] detailed instructions on how to seek the return of seized property," Def.'s Mem., p. 2, does not provide correct information as to property seized without a warrant or a papered case, as Plaintiffs' vehicles and smartphones were, and thus misleads owners such as Plaintiffs.

### A. Plaintiffs pled a predicate constitutional violation for lack of notice at or promptly after seizure, after processing vehicle for evidence, and promptly after a prosecution was instituted.

Claim 2 incorporates a stand-alone claim for notice at each of the crucial events triggering Plaintiffs' due process rights in the life of the seizure and retention of their vehicles and smartphones: seizure, after MPD finished processing their vehicles and smartphones for evidence, after a prosecution was instituted.

Plaintiffs bring the notice claims in Claim 2 which correspond to the notice prongs of the claims in Claim 3 and 4 for pre-deprivation hearings as independent, stand-alone claims because even if the Court denies the claims for hearings in Claims 3 and 4 on the theory that Rule 41(g) provides a constitutionally adequate recovery procedure, Plaintiffs are still entitled to notice so they can "turn to these public sources [i.e., "published, generally available state statutes and case law"] to learn about the remedial procedures available to [them]. *Perkins*, 525 U.S. at 241.

### 1. The Supreme Court in Perkins and the Mullane notice cases require notice when police seize property in connection with criminal investigations.

The Supreme Court in *Perkins*, relying mainly on the *Mullane* line of notice cases based on the Due Process Clause, held that when a law enforcement agency seizes a person's property in accordance with a search warrant, the Due Process Clause requires the agency to take "reasonable steps" to give "[i]ndividualized notice" that the property has been taken so the owner can pursue available remedies for its return just as it does in any seizure of property by the government.

*Perkins*, 525 U.S. at 237; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("The right to be heard has little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest").

The notice the police gave Mr. Perkins by leaving at his home a copy of the warrant and a written inventory of the property taken that included the fact of the search, its date, the searching agency, the date of the warrant, the issuing judge, and the court in which he serves. Moreover, the issuance of the warrant was recorded by the address of the home searched and the search warrant number in a public index maintained by the court clerk. *Perkins*, 525 U.S. at 237. Finally, the notice listed the names and a phone of two of the detectives. 525 U.S. 234, 237. When Mr. Perkins called one of the detectives he correctly told Mr. Perkins he needed to obtain a court order authorizing the property's return. *Id*.

The crux of the dispute before the Court was Mr. Perkins' contention that the notice should have given him detailed notice of the recovery procedures for return of the property and how to invoke them. The Court reasoned that individualized notice that officers had taken property was necessary because Mr. Perkins had no other reasonable means of ascertaining who is responsible for his loss. But, the Court held that where notice of state-law remedies were "established by published, generally available state statutes and case law," which the parties acknowledged, once the property owner is informed that their property has been seized, they can

---

[1] The warrant did not show the warrant number, but the District Court made an explicit factual finding that Mr. Perkins failed to establish that he needed the search warrant number to file a court motion seeking return of the property, which Mr. Perkins never overcame. *Perkins*, 525 U.S. at 243.

turn to these public sources to learn about the remedial procedures available to them without the City taking other steps to inform owners of their options. *Perkins*, 525 U.S. at 241.

Although the *Perkins* Court did not specify the how and when of notice for property seized in connection with criminal investigations, 525 U.S. at 240, subsequent Supreme Court and Circuit court cases establish that where a vehicle is properly licensed or registered and, therefore, the owner's identity may be easily ascertained, the *Mullane* "desire-to-inform" standard requires notice by mail, preferably notice by certified mail to the owner, or at the place the government knows them to be if different from the address on the title, especially after *Jones v. Flowers*. *Robinson v. Hanrahan*, 409 U.S. 38 (1972) (government must send notice to jail not address on title when government knows owner is in its county jail); *Propert v. District of Columbia*, 948 F.2d 1327, 1334 (1991)(notice *by* certified mail to address on title when vehicle registered and tagged). There is no reason for a different standard of notice for smartphones because the owners' identity can be easily established.

And, at least in the case of vehicles, "notice must be prompt," generally within 48 hours. *See, e.g., Cokinos* (due process requires that government must provide notice to owners within 48 hours when it seizes vehicles for traffic ticket violations). And it must provide the property owner with sufficient information about the seizure to enable to owner to identify for themselves the available remedies to recover it.

### 2. *Plaintiffs' need for notice for "[i]ndividualized notice that the officers have taken the property" is even more compelling.*

Since the MPD took plaintiffs' vehicles and smartphones in warrantless seizures in the dark of night without a warrant and not incident to arrest in a papered case *a fortiori* the rationale for giving notice at seizure in a **warrantless** seizure is even stronger because in a warrantless seizure there is no pre-seizure probable cause determination made by a judge and no requirement that the

police make a return of the warrant in the clerk's office so no warrant is on file in the clerk's office that owners can go to for information about their property. The property involved - Plaintiffs' vehicles and smartphones - was extremely important to them and lost value every day while requiring payment for licensing and insurance.

Moreover, there is no constructive knowledge from the seizure itself that the property was seized in connection with a criminal case. For all the owners knew, the vehicles were stolen or seized for traffic violations. Mr. Shakur even attempted to report his vehicle as stolen. Am. Compl. ¶ 307. Since the Named Plaintiffs were not defendants in a papered criminal prosecution they were not given copies of the PD 81 (Property Record) telling who took their property or why (i.e., how it was classified). Am. Compl. ¶ 113.

Moreover, since their property was not taken pursuant to a warrant or incident to arrest in a papered case no recovery procedures were available to them because they were non-existent. Rule 41(g) was not available to owners at seizure because the Superior Court has no jurisdiction over property seized by the MPD unless the seizure was pursuant to a warrant issued by the Superior Court or incident to an arrest in a papered case. *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order.

Moreover, the General Orders setting forth the established municipal procedures for seizing property in connection with criminal investigations without a warrant or not incident to arrest in a papered case provide no procedure for the owners of the property to retrieve their vehicles and smartphones from investigators or members other than calling them and begging for their property, if they find they have their property in the first place.

Finally, without notice setting forth the procedures for return of property owners would not know that Superior Court Rule 41(f)(8) does not apply to their vehicles and smartphones if they read the MPD/ ECB website or were charged with notice of its contents.

Even when the owner through self-help discovers that the property was taken by the MPD in connection with a criminal investigation the owner still needs notice setting forth the reason for the seizure and any recovery procedures. None of the MPD informed any of the Plaintiffs of their right to return of their property when the District no longer needed it after the Plaintiffs tracked down the investigator in charge.

A corollary of notice when property is seized without a warrant or incident to an arrest resulting in a papered case arises in a situation such as Ms. Parrott's where the MPD seized her property without a warrant or a papered case and then four months later the government instituted a case related to the vehicle and the smartphones. *See* Docket, *United States v. Simmons*, Case No. 2019 CF1 014711 (D.C. Super. Ct. Nov. 19, 2019); Cf.  *Schroeder* v. *City of New York*, 371 U.S. 208, 214, 9 L. Ed. 2d 255, 83 S. Ct. 279 (1962)(requiring a city to provide adequate notice of the deprivation -- the city's condemnation of certain water rights -- which created the property owner's right to pursue damages claims and triggered the statute of limitations on those claims) (quoted in *City of W. Covina v. Perkins*, 525 U.S. 234, 240-41, 119 S. Ct. 678, 681 (1999)).

Obtaining a warrant for the property would have changed Ms. Parrott's rights because the vehicles and smartphones and other property seized pursuant to a warrant become "evidence" by operation of Rule 41(f)(8) whereas the decision whether or not to classify property seized without a warrant is up to the MPD. Obtaining a warrant to search the Passatt or the family smartphones would have bestowed the Superior Court with jurisdiction over the property so Ms. Parrott would

have been for the first time able to file a Rule 41(g) motion for return of her Passatt and smartphones.

Similarly, instituting a case relating to Ms. Parrott's Passatt and the family smartphones presumably bestowed the Superior Court with jurisdiction over her property so she was for the first time able to file a Rule 41(g) motion for return of property.

Moreover, the notice should have given her information about how to file and pursue a Rule 41(g) motion for return of property because, among other reasons, had she read the MPD/ECB website or if she were charged with constructive notice of the website's contents she would be left with the impression that her property would be kept until the case against Mr. Simmons were over.

Ms. Parrott received no notice whatsoever for the first four months of the seizure. Similarly if the MPD obtained a warrant for Mr. Iracks' vehicle they should have informed him because he had no way to know. It is fundamentally unfair to charge a non-attorney with the complex knowledge required to navigate Rule 41(g) without notice of some kind.

### 3. *Constructive notice insufficient under Mullane.*

The District's argument that "notice relating to the seizure of property is sufficient if it [the notice?] is contained in publicly available documents," is a misreading of *Perkins* that turns *Perkins* and its notice requirements on its head. Perkins, 525 U.S. at 240. The existence of a remedy "established by published, generally available state statutes and case law" does not excuse the Fifth Amendment obligation to provide notice. The Court said the opposite: providing the police give Mullane notice saying who took the property and why, separate notice of published statutory recovery procedures is not required.

Moreover, since the vehicles were towed away at night before any related case was pending, Plaintiffs got no constructive notice that their vehicles were towed as "evidence", and since they were not defendants in a criminal case they got not notice in the form of a PD 81.

It is asking too much of owners such as Ms. Parrott, Mr. Joyner, and Mr. Iracks to expect them to know that different recovery procedures including the availability of Rule 41(g) apply depending on whether their property was seized pursuant to warrant, Rule 41(f)(8); incident to arrest in a papered case; or not incident to arrest before any papered case is instituted. In *Jenkins* the Court suggested that Rule 41(g) was not too complicated for owners to master because plaintiff/ car-owner Ms. Taylor managed to file a motion for return of property under Rule 41(g) for her vehicle and actually obtained the release of the vehicle. But, the decision does not explain that Rule 41(g) was only available because the Superior Court had jurisdiction over the vehicle because the vehicle was seized incident to the arrest of Ms. Taylor's boyfriend whose charges were papered, and that the boyfriend was represented by PDS (who filed the motion) and Ms. Taylor was represented by Georgetown Law Students in Court. *Jenkins v. District of Columbia*, No. 16-cv-118 (CRC), 2017 U.S. Dist. LEXIS 119157, at *11-13 (D.D.C. Mar. 28, 2017).

A more accurate picture of the complexities of Rule 41(g) jurisprudence and practice emerges from *United States v. Wilkins*, 538 F. Supp. 3d 49, 92-93 (D.D.C. 2021) and the story of Mr. Shakur's motion for return of property. As Judge Contreras explained in *Wilkins* rejecting the government's argument that Mr. Wilkin's non-filing of a Rule 41(g) motion in Superior Court was evidence of abandonment of his property, "Mr. Wilkins was not legally trained. The notion that he should have known that he had the legal right to request the return of his phone (which, as discussed, had been logged as evidence and would have required prosecutor approval for release), or that he should bear the cost of obtaining legal representation to take action in this regard is a

high burden to place on an ordinary citizen to safeguard one's Fourth Amendment rights." *Wilkins*, 538 F. Supp. 3d at 92-93.

In Mr. Shakur's case a former supervisor in the Civil Division of the District's Attorney General's office managed to get a motion for return of property filed for the return of a vehicle seized in connection with criminal investigations without a warrant, and not incident to arrest in a papered case, just like Plaintiffs' vehicles, only to have the Chief Judge of the Criminal Division deny the motion for lack of jurisdiction because the property was not seized pursuant to a warrant or in connection with a papered case. Abdus-Shakur Order.

In *Avila* Judge Chutkan specifically rejected the argument that an owner's knowledge at the time of seizure that (1) the seizure was taking place, and (2) it was conducted by MPD, was sufficient notice under the Due Process Clause. *Avila*, at 364. The MPD seizes vehicles for multiple reasons which magnifies owners need for notice that police have taken their property and why. *Ford v. Turner*, 531 A.2d 233, 237-38 (D.C. 1987).

## IV. District should have provided prompt post seizure hearings and notice of hearings after seizing vehicles and smartphones (Claim 3).

The District's motion to dismiss Claim 3 should be denied because Plaintiffs plausibly pleaded both: (1) a "predicate constitutional violation," that is, a failure to provide notice and prompt post deprivation hearings after the District seized their vehicles and smartphones pursuant to established municipal procedures; and that (2) a "custom or policy of the municipality" was the "moving force" behind the constitutional violation." *Anderson*, 317 F. Supp. 3d at 447. Also, implicit in the right to a hearing is the right to notice of the hearing. *Mullane*, 339 U.S. at 315.

The General Orders provide "zero" process for owners to retrieve their vehicles after the District has finished processing them for evidence, Rule 41(g) was not available to them because the Superior Court lacked jurisdiction over their property because MPD seized it without a warrant

before a papered criminal prosecution was instituted, *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order, and reducing process to zero never comports with the Due Process Clause. *Propert*, 948 F.2d at 1332.

### A. Plaintiffs plausibly pled a predicate constitutional violation because the District seized their vehicles and smartphones pursuant to an established municipal procedure.

Plaintiffs pled a need for notice and prompt post deprivation hearings, Am. Compl. ¶¶ 398-399; 401, 402, and they are entitled to the hearings because the District reduced process to zero as explained above, and also under the *Mathews* analysis even if Rule 41(g) were available. *Propert*, 948 F.2d at 1331, 1332.

### B. Plaintiffs were entitled to prompt post deprivation hearings under the Mathews v. Eldridge three factor balancing test.

Evaluation of the adequacy of pre-deprivation procedures is governed by applying the balancing test stated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which Plaintiffs satisfy. The "*Medina*" test, *Medina v. California*, 505 U.S. 437 (1992), advocated by the District and discussed below, is not applicable here.

#### 1. *Parratt does not dispose of Plaintiffs' procedural due process claims because the District deprived Plaintiffs of their vehicles and smartphones pursuant to an established municipal procedure.*

The District bases its entire defense to Plaintiffs' Claim 3 procedural due process claim on the assumption that Superior Court Rule 41(g) is (1) an adequate alternative state remedy, and that (2) it is relevant here. Def.'s Mem. at 28. But, the District's *Parratt* defense fails entirely because, as the District appears to agree, the District seized Plaintiffs' vehicles and smartphones pursuant to an established municipal procedure, Am. Compl. ¶ 65, Def. Mem., p. 3.

The mere existence of an alternative state remedy such as Rule 41(g) is irrelevant in this case because the District deprives owners of their vehicles pursuant to an established municipal procedure that is not the random unforeseeable act of rouge low level employees. Am. Compl. ¶

65; *Zinermon*, 494 U.S. at 136, 136-38 (permitting procedural due process claim to go forward, despite existence of adequate state remedies, where deprivation was alleged to have been predictable, avoidable through pre-deprivation procedures, and authorized); *Tri Cnty. Indus. v. District of Columbia*, 104 F.3d 455, 460 (1997). Thus, the legal principle the District cites *Dukore* at p. 29 for – existence of state remedies - is inapplicable here.

Furthermore, Rule 41(g) is not an adequate alternative state remedy because it was not available to Plaintiffs at seizure because the Superior Court does not have jurisdiction over property seized without a warrant or not incident to arrest in a papered criminal prosecution, *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order; Def.'s Mem. p. 29.

The cases the District cites in support of its contention that Rule 41(g) provides constitutional adequate process and ***was available to Plaintiffs at seizure*** are distinguishable because they deal with motions for return of property made at the end of a papered criminal case: *see e.g., Cousart v. Metro Transit Police Chief*, 101 F. Supp. 3d 27, 28 n.1 (D.D.C. 2015)(plaintiff's underlying criminal case was *nolle'd* by the prosecutor after Mr. Cousart had successfully completed diversion in a papered criminal prosecution in Superior Court); *Leyland v. Edwards*, 797 F. Supp. 2d 7, 9 (D.D.C. 2011)(plaintiff entered plea and was sentenced in Superior Court case). Def. Mem., p. 28-29; 29 n. 11. Plaintiffs concede the Superior Court still has ancillary jurisdiction over property seized incident to arrest in a papered case under *Alleyne* – just not in a warrantless seizure before any papered case is pending. *Alleyne v. United States*, 455 A.2d 887, 888–89 (D.C. 1983). Also, the owners in the cases the District cites – the defendants in the criminal cases – got notice satisfying the *Mullane* "desire-to-inform" standard in the form of a PD 81 (property record) informing the defendant of the seizure and the reason for it. Am. Compl. ¶ 113; See *Perkins*, at 240.

Finally, Rule 41(g) is inadequate under due process for seizures of vehicles and smartphones because it takes too long, it impermissibly shifts the burden to owners, and it is difficult to access as *Wilkins*, 538 F. Supp. 3d at 92-93 and the discussion above shows. *See also Gates v. City of Chi.*, 623 F.3d 389, 410 (7th Cir. 2010)(explaining difference between regular procedures for the return of property and remedies to pursue if property is not returned according to those regular procedures).

So, even if Rule 41(g) were available to Ms. Parrott four months after seizure when a criminal case were instituted it is still irrelevant and inadequate.

In *Parratt v. Taylor*, Bert Taylor, Jr., an inmate in a Nebraska state penitentiary, sent away for mail-order hobby materials valued at twenty-three dollars and fifty cents. Although the materials arrived at the prison, two employees of the prison hobby center caused the loss of the materials by failing to follow established state procedures designed to ensure their delivery.

A plurality of the Court reasoned that Taylor was not entitled to a pre-deprivation hearing because the Fourteenth Amendment did not require that Taylor be given an opportunity to challenge the propriety of the state employees' actions before they occurred, because the random and unauthorized nature of the employees' actions made provision for such an opportunity impracticable: so a tort remedy it provided all process due. ARTICLE: Due Process and Section 1983: Limiting Parratt v. Taylor to Negligent Conduct., 71 Calif. L. Rev. 253, 255-56.

The rationale of *Parratt* is that because the losses from such a random act are not the result of any state procedure: the principle in the background is that the loss was not caused by the policy established by the defendant.

Subsequent Supreme Court and D.C. Circuit cases have reaffirmed that the *Parratt* rule only applies only to the random unforeseeable acts of rouge low level employees. *See Zinermon,*

494 U.S. at 136, 136-38 (permitting procedural due process claim to go forward, despite existence of adequate state remedies, where deprivation was alleged to have been predictable, avoidable through pre-deprivation procedures, and authorized); *Tri Cnty. Indus.*, 104 F.3d at 460 (stating rule).

The justification for imposing liability on a municipality when its employees deprive people of their property by acts pursuant to an established municipal procedure is that the municipality's own policy was the moving force behind the loss because the municipality failed to provide procedural safeguards to prevent foreseeable avoidable harms authorized by the municipality. In this case, the District set up an established municipal procedure to seize property including vehicles and smartphones to search them for potential evidence that might be in them. The District then both: (1) established the "until-the-case-is-over"/ three-year policy even though the Attorney General told the D.C. Council in written testimony that it only takes a couple of weeks to process vehicles for evidence and to set up prompt post deprivation hearings; and (2) authorized MPD members to seize vehicles and smartphones without a warrant and/ or before a criminal prosecution was instituted, thereby blocking owners' access to Rule 41(g) hearings because the Superior Court does not have jurisdiction over such property. *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order.

So *Parratt* does not dispose of Plaintiffs' procedural due process claims because instead of challenging random and unauthorized acts, Plaintiffs' claims allege "a general failure to provide procedural safeguards to prevent foreseeable avoidable harms authorized by the District." *Crawford-El v. Britton*, 844 F. Supp. 795, 805 n.13 (1994)(negative subsequent history other grounds). Since the District blocked access to Rule 41(g), Plaintiffs and other owners had no self-help remedies other than tracking down investigators holding their property and begging for the release of the property as a matter of grace from the very people who want to hold them until the

"end of the investigation" on the off-chance that a second search might turn up evidence missed or not looked for in the first search or who attach strings to any release. Our Circuit has already held such a system does not provide a "meaningful opportunity to be heard" as due process requires. *Propert*, 948 F.2d 1327, 1333-34.

### 2.   Applying Mathews v. Eldridge the District was obligated to provide prompt post seizure hearings and notice of the hearing to Plaintiffs and the putative class members.

The balance of factors relevant under the *Mathews v. Eldridge* test weighs in favor of having review by a neutral fact-finder of the MPD's decision to retain a vehicle as potential evidence – even if no adversarial hearing is required. *Krimstock III* at 255. [5]

**[i] the private interest affected by the government action.** The District acknowledges that the first *Mathews* factor—the owner's interest in the property—tips in favor of plaintiffs given the role that vehicles and smartphones play in society today. Def.'s Mem. p. 32.

The length and indefinite nature of the seizures weigh in favor of prompt post deprivation hearings. The District held Ms. Parrott's Passatt for over two years, Am. Compl. ¶ 7; Mr. Joyner's Toyota Tundra for over a year, *Id.* at 9, and the MPD continue to hold Mr. Iracks' Infiniti QX50 SUV almost 10 months after seizing it. Plaintiffs had no idea when their vehicles would be released.

In *Tri Cnty. Indus.* the D.C. Circuit evaluated the promptness and likelihood of correction of an erroneous deprivation in a prompt post deprivation hearing under the first prong of the *Mathews* analysis holding that a post deprivation hearing in lieu of a pre-deprivation hearing must be timely in light of the interest at stake and the other *Mathews* factors. *Tri Cnty. Indus.*, 104 F.3d

---

[5] Courts excuse pre-deprivation hearings even for deprivation of property made pursuant to a state-authorized procedure when pre-deprivation hearings are "impracticable" because of a overriding state interest if the government provides a prompt post deprivation hearing. *Cokinos v. District of Columbia*, 728 F.2d 502, 503 (D.C. Cir. 1983) (car towing without pre-deprivation hearing valid because prompt – within 48 hours - post-deprivation hearing).

at 461. The length of any deprivation increases the weight of an owner's interest in possessing the vehicle and having access to the entire bundle of ownership rights in the vehicle. *See Logan*, 455 U.S. at 434 (noting the Court's concern under Mathews for "the importance of the private interest and the length or finality of the deprivation"); *Krimstock III* at 255; "*Krimstock* Third Amended Order" at 10. Any retention of a vehicle for processing and preservation of evidence beyond the two-week period then-AG Nathan told the D.C. Council MPD needs to retain vehicles to process them for evidence and to *liase* with prosecutors, Am. Compl. ¶ 44, is an erroneous deprivation (*i.e.*, an overdetention) except in unusual circumstances. *See also Brewster v. City of L.A.*, holding that the 30 day delay between seizure and the only post-deprivation hearing available heavily impaired owners' private interests in uninterrupted automobile use. 2020 U.S. Dist. LEXIS 188688, at *11 (C.D. Cal. July 14, 2020).

[ii] the risk of an erroneous deprivation and the probable value of additional or substitute procedural safeguards. There are actually two separate risks of erroneous deprivation in Claim 3: (1) the risk of erroneous deprivation from the seizure and initial classification of the property by the MPD as "evidence", and a second risk, (2) the risk that the MPD will keep the property longer than the MPD needs to keep it to process the vehicles or smartphones for evidence and to preserve the results of the processing to satisfy its Rule 16 "preservation" obligations ("overdetention type erroneous deprivations"). This dual deprivation problem weighs in favor of prompt post deprivation hearings for owners.[6]

The District's "until-the-case-is-over"/ three-year retention policy by itself tips the balance in favor of prompt post deprivation hearings because the retention policy generates overdetention

---

[6] The government has no pecuniary interest in retaining vehicles as "evidence" as it does in seizures for forfeiture determinations but that factor does not decrease the risk of erroneous deprivations it only does not increase them.

type erroneous deprivations by mandating that the MPD keep vehicles and smartphones longer than the two-week period then-AG Nathan told the D.C. Council MPD needs to retain vehicles to process them for evidence and to *liase* with prosecutors and arrange prompt post deprivation hearings for vehicles seized for forfeiture. Am. Compl. ¶ 44. The MPD's retention policy is a moving force in delay in returning property to owners after a reasonable period for processing the property for evidence even when property is returned before a case is over or before three years because the MPD's retention policy saps the MPD of any sense of urgency in processing vehicles and smartphones and other property for evidentiary value and then returning it to owners. *Id.* at 67. Like the District's "10 p.m. cut-off" ordinance in *Barnes* which delayed releases after 10 p.m. until the next morning, the District's "until-the-case-is-over"/ three-year retention policy is an "[overdetention type erroneous deprivation]-making machine." *Barnes*, 793 F. Supp. 2d at 277.

Since the primary focus in the due process claims is the second deprivation, the over-detention type deprivation, probable cause determinations are not relevant because the test for an erroneous deprivation, is the district finished processing the item for evidence, is different from the test for probable cause to seize an arrested person. So the likelihood of overdetention type erroneous deprivations under the second prong of the *Mathews* analysis is not reduced by determinations relating to probable cause to support a defendant's arrest or the initial seizure of a vehicle or smartphone for potential evidence. Therefore, *Smith* is distinguishable because the seizures of guns for CPWL prosecutions was for use as trial evidence and the same probable cause determination to support the initial seizure remained through-out trial. *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 33 (D.D.C. 2019). *Jenkins* is also distinguishable on this issue because the Court in *Jenkins* did not analyze the relationship between probable cause determinations and the standard for release of vehicles seized for potential evidence after the

government had finished processing them. The mere fact that the District had probable cause to arrest a person says nothing about when the need for the property seized for potential evidence in the investigation or prosecution evaporates.

The District's claim to need to retain vehicles and smartphones for inspection by the defendant under Rule 16 also magnifies the need for prompt post deprivation hearings because the government's "show the defendant" retention policy magnifies the risk of overdetention type erroneous deprivations, so hearings are required to prevent overdetention type erroneous deprivations.

Moreover, the following factors magnify the risk of erroneous deprivation of Plaintiffs' vehicles and smartphones: (1) the MPD has not promulgated any General Orders guiding members on how to process vehicles and smartphones for evidence, Am. Compl. ¶¶ 77-79; (2) neither the District nor the MPD ever established any guidelines for how to preserve the evidentiary value of vehicles or smartphones or the trace evidence found in them in lieu of retaining the property until a case is initiated against a defendant as the District maintains it is obligated to do. *In re Q.D.G.*; (3) the MPD still uses a paper-bound system for keeping track of the property it seizes and retains every year which increases overdetention type erroneous deprivations. *See* PCB POLICY REPORT #19-4: Handling Property (September 30, 2019) https://policecomplaints.dc.gov/sites/default/files/dc/sites/office%20of%20police%20complaints/publication/attachments/HandlingProperty.FINAL_.pdf ; Am. Compl. ¶ 81; and (4) the District's Department of Forensic Sciences ("DFS") which participated in the analysis of Ms. Parrott's Passatt has had problems and lost its accreditation in April 2021 for several reasons, Report, Section 3.1, p. 1, for problems going back at least as far as 2015 when the DFS Forensic Biology Unit (FBU) accreditation was suspended due to incorrect DNA profile mixture interpretation,

Report, p. 1

https://dfs.dc.gov/sites/default/files/dc/sites/dfs/publication/attachments/DFS%20Forensic%20Laboratory%20Assessment%20Report.pdf

    *Jenkins* is also distinguishable because it considered Rule 41(g) when evaluating the incremental benefit of Plaintiffs' requested hearings under the second prong of *Mathews*. 2017 U.S. Dist. LEXIS 119157, at \*10. *Parratt* establishes an in or out decision tree for state remedies: if the deprivation was made pursuant to an established state/ municipal procedure, then the state remedy is excluded from the analysis, whether adequate or not; only if the deprivation was made by a lower-level person acting randomly, does the Court consider any adequate state remedy. *Zinermon*, 494 U.S. at 136-38; *Tri Cnty. Indus.*, 104 F.3d at 460. Moreover, in *Jenkins* Rule 41(g) was available to Ms. Taylor because her vehicle was seized incident to arrest in a papered case. *Jenkins*, 2017 U.S. Dist. LEXIS 119157, at \*3-4. But Rule 41(g) was simply not available to Plaintiffs at seizure because their vehicles and smartphones were seized without warrants or papered criminal prosecutions.  *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order.  Judge Cooper did not address the *Jenkins* Plaintiffs' argument that the availability of state remedies such as Rule 41(g) was irrelevant because the District made the deprivations pursuant to "an established state procedure," Plaintiffs' Opp'n [EFC No. 19], pp. 2-3, *Jenkins v. D.C.*, 16-0118 (CRC).

    The Second Circuit reached the opposite conclusion from *Jenkins* in *Krimstock III*, applying the *Mathews* balancing test to prosecutor's assertions that vehicles were needed as "trial evidence" and for criminal investigations to scrutiny for reasonableness, holding that "although "no adversarial hearing is required," additional safeguards are required when police or prosecutors hold vehicles seized in connection with criminal investigations or even for trial because due process requires "some immediate judicial review" by a neutral fact-finder of the District Attorney's decision

to retain a vehicle" as evidence because prosecutors cannot decide unilaterally to keep vehicles as evidence. *Krimstock v. Kelly*, 464 F.3d 246, 251 (2d Cir. 2006). This is essentially the position that the D.C. Circuit reached in evaluating property held as "evidence" in a grand jury proceeding where Rule 41(g) does apply. *In re Smith, supra.*

[iii] **the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.** The government has no interest in retaining vehicles and smartphones longer than needed to process them for potential evidence or for evidence preservation. Am. Compl. ¶¶ 37-40; *United States v. Wilson*, 540 F.2d 1100, 1103-1104 (D.C. Cir. 1976)(" *Wilson I*")(Court and government have duty to return property when property seized as "evidence" no longer needed).

Moreover, any adverse consequences to the government that might possibly have arisen from prompt post seizure hearings were easily avoidable by: [i] requiring that both prosecuting agencies be notified of any prompt post seizure hearings so that the relevant prosecuting agency could obtain retention orders to avert whatever risk of spoliation of evidence might arise from release of vehicles; [ii] allowing prosecuting agencies to block releases of vehicles by obtaining retention orders by *ex parte* affidavits so that criminal defendants could not abuse the hearing to obtain discovery; and [iii] using enforceable waivers from the owner or driver to protect the evidentiary value of a released vehicle. *See e.g., Krimstock III*, at 252. The Second Circuit identified other devices to avoid feared adverse consequences from prompt post deprivation hearings: [i] retention orders are readily available to avert spoliation; [ii] the " *Krimstock* hearing" process can specify that the order of a criminal court prevails in a conflict (as the Initial Order suggested); [iii] trial courts can be instructed that a prosecutor's use of vehicle evidence need not be limited to the purposes identified in the application for the retention order. *Id*.

A review of the *Krimstock* docket (and conversations with *Krimstock* counsel) shows that none of the government actors with a stake in the *Krimstock* litigation ever moved to modify the Third Amended Order (finally entered at the end of the litigation) as unworkable.

3.  **Even under *Medina* Plaintiffs were entitled to notice and a hearing because the overdetentions of their property violated their fundamental property rights.**

*Medina* adds nothing to the District's defense because Plaintiffs' ownership rights in their vehicles and smartphones were "fundamental," and the MPD blocked their access to the courthouse for purposes of Rule 41(g) hearings by seizing their property without warrants and without any related papered case. Def. Mem., p. 29. *Medina*, 505 U.S. at 439. *See Jauch v. Choctaw Cnty.*, 874 F.3d 425, 435 (5th Cir. 2017)(*applying Medina and Mathews*) *reh'g en banc den. Jauch v. Choctaw Cnty.*, 886 F.3d 534, 535 (5th Cir. 2018). In *Jauch,* a sheriff denied a prisoner access to an existing court remedy pursuant to which she could have sought her release by challenging the warrant in a hearing by his policy of refusing to take prisoners to court except at certain times. 874 F.3d at 427-428.

The even shorter answer to the District's *Medina*/ Rule 41(g) argument is that the Superior Court lacked jurisdiction over Plaintiffs' vehicles and smartphones because the Superior Court only has jurisdiction over property was seized pursuant to a warrant or incident to arrest in a papered case,  *Wilson II*, 424 A.2d at 133, and Plaintiffs vehicles and smartphones were seized without a warrant and not incident to arrest in a papered case. Am. Compl., ¶¶ 7 to 10.

Furthermore, *Medina,* assuming *arguendo* it even applied, does not dispose of the District's failure to provide notice of the hearings required by due process because notice of the deprivation of property is governed by *Mullane*, 339 U.S. at 315, not *Mathews*.

 Moreover, this case is distinguishable from *Medina* because *Medina* considered a challenge to the process afforded to a criminal defendant during criminal proceedings themselves,

*Medina*, 505 U.S. at 439; discussed in *Krimstock III*, at 254. Plaintiffs' procedural due process claim involves no challenge to an underlying criminal proceeding or the procedural rights **due the criminal defendant; r**ather, the claim involves the deprivation of property seized in connection with criminal investigations for which a criminal prosecution might never be instituted; **and the challengers are innocent owners who are not party to the criminal proceeding.**

### C. Plaintiffs plausibly pled the District's liability under Section 1983.

The three vehicles in this case were seized without warrants and without arrests so General Order 601.1 delegates responsibility for obtaining the PD 81-C/ releasing the property to the "investigator" or the member first taking the property into custody when there is no investigator. *Id.* at p. 26, (¶ III, F, 4). General Order 601.1 does not set a deadline or even any guidance to investigators for releasing the property. Therefore, General Order 601.2 is the only applicable policy so the three-year rule applies because there were no papered cases at seizure. *Koonce*, 111 A.3d at 1017; Am. Compl. ¶ 364.

General Orders 601.1 and 601.2 and DCMR § 807.3 setting forth the District's established municipal procedure including the "until-the-case-is-over" / three year rule constituted official District policy, and thus satisfy *Baker* prongs # 1 and # 2 as explained in the preceding discussion on Plaintiffs' Fourth Amendment claim.

Plaintiffs satisfy *Baker* prong # 3 because Plaintiffs allege the District has a custom of retaining all vehicles and smartphones longer then it needs them to process them for evidence and preserve any evidence in them, whether or not a case is ever papered, as both the MPD/ECB website and Det. Dailey's testimony in *Avila* confirms. *Avila*, 246 F. Supp. 3d at 360. As Plaintiffs' pled, the District's policymakers know or should have known about and acquiesce in the custom because it is posted on the website. *Hurd*, 997 F.3d at 337.

Plaintiffs satisfy *Baker* prong # 4 because the website also establishes that the District is deliberately indifferent to the rights of owners' property held pursuant to the custom. The District knew or should have known of a risk of constitutional violations, because the website shows the District routinely overdetained property including vehicles and smartphones and the District showed "deliberate indifference" to that risk by failing to act to stop the overdetentions. *Hurd*, 997 F.3d at 337.

## V.   District should have provided prompt post deprivation hearings to owners of vehicles and smartphones after they were no longer needed as "evidence" (Claim 4).

Defendant's motion to dismiss Claim 4 should be denied because Plaintiffs plausibly pleaded both: (1) a "predicate constitutional violation," that is, continued deprivations of their vehicles and smartphones after the District no longer needed them to process them for evidence and for its preservation obligations under Rule 16; and that (2) a "custom or policy of the municipality" was the "moving force" behind the constitutional violation." *Anderson*, 317 F. Supp. 3d at 447.

The General Orders provide "zero" process for owners to retrieve their vehicles after the District has finished processing them for evidence, Rule 41(g) was not available to them because the Superior Court lacked jurisdiction over their property because MPD seized it without a warrant before a papered criminal prosecution was instituted, *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order, and reducing process to zero never comports with the Due Process Clause. *Propert*, 948 F.2d at 1332.

The cases the District cites in support of its contention that Rule 41(g) provides constitutional adequate process and *was available to Plaintiffs at seizure* are distinguishable because they involve property seized in connection with a papered criminal prosecution, where the Superior Court has jurisdiction over the property, *Wilson II*, 424 A.2d at 133; Abdus-Shakur

Order, whereas Plaintiffs' vehicles were seized without warrants before any papered criminal prosecution was instituted so Rule 41(g) was not available to them.

The District waived argument on Claim 4 by treating Claim 4 as identical to Claim 3.

Claim 4 is distinguishable on the facts from Claim 3. Like the "right to return" claim in *Brown* this case involves two deprivations: the first being the MPD's initial seizure of the vehicles and smartphones, and the second being the District's subsequent and continued refusal to return the property after the District had processed it for evidence and preserved any evidence found or the results of its processing, that is, the overdetention type erroneous deprivation. 115 F. Supp. 3d at 73-74; *Walters v. Wolf,* 660 F.3d 307, 314 (8th Cir. 2011).

Plaintiffs pled that the triggering event for notice and hearings in Claim 3 is seizure of the property and the triggering event in Claim 4, pled in the alternative, is the District's subsequent and continued refusal to return the property after the District had processed it for evidence and preserved any evidence found or the results of its processing.

That factual distinction compels application of a different legal analysis and different governing case-law. In *Brown* Judge Cooper analyzed differently plaintiffs' claim for the procedural due process right to the forfeiture statute's lack of an opportunity for a prompt, post-seizure hearing where owners can challenge the seizure and retention of their property violated due process, 115 F. Supp. 3d 56, 63-64, from their claim for "right to return" of property seized for forfeiture determinations after the District elected not to proceed with administrative or judicial forfeiture proceedings. 115 F. Supp. 3d at 73-74; (*Walters v. Wolf,* 660 F.3d 307, 314 (8th Cir. 2011) (city violated due process by rejecting a criminal defendant's request for his property after the underlying charges had been dismissed); *McClendon v. Rosetti,* 460 F.2d 111, 116 (2d Cir.

1972) (police violated due process by retaining money or property that was no longer needed as evidence).

Also, the only issue to be decided in the prompt post deprivation hearing in Claim 4 is whether the District still needs the vehicles and smartphones after searching and processing them for any potential evidence in them. After the District had no right to the property, whether because the District had finished processing it for evidence or whether it had had an opportunity to do so, any ongoing retention -- even if temporary -- was a deprivation contrary to due process. *Brown*, 115 F. Supp. 3d at 74. The District shirked this obligation by placing the onus on owners to track down their property and secure its return. Am. Compl. ¶¶ 99-124. This practice violates not only the statute but due process as well. *Brown*, 115 F. Supp. 3d at 74;, 660 F.3d at 314; *McClendon*, 460 F.2d at 116; Brown, 115 F. Supp. 3d at 73-74.

And since in Claim 4 the **only** issue to be decided in the prompt post deprivation hearings at issue for vehicles and smartphones seized as "potential evidence" is whether after searching, processing and photographing and preserving the results of the processing vehicles and the smartphones continued retention of the property is justified, the value of the initial probable cause determinations by the seizing officers as an additional safeguard to reducing erroneous deprivation is non-existent.

The existence of an alternative state remedy such as Rule 41(g) is irrelevant in this case because the District deprived owners of their vehicles pursuant to an established municipal procedure. *Zinermon*, 494 U.S. at 136, 136-38; *Tri Cnty. Indus*, 104 F.3d at 460.

Moreover, as a separate and independent basis, each of the vehicles and Ms. Parrott's smartphones were seized without a warrant and not incident to an arrest in a papered case, so Rule 41(g) was not available because the Superior Court has no jurisdiction over property seized by the

MPD unless the seizure was pursuant to a warrant issued by the Superior Court or incident to an arrest in a papered case. *Wilson II*, 424 A.2d at 133.

Since the District's current policy provides no hearing procedure of any kind, either before or after towing, for vehicles seized without a warrant and not incident to an arrest in a papered case, this defect is fatal to the constitutional validity of D.C.'s policy for seizing and retaining vehicles and smartphones. *Propert v. District of Columbia*, 948 F.2d at 1332-1333; *Brown*, 115 F. Supp. 3d at 73-74.

Plaintiffs adopt here the *Monell* arguments made in support of Claim 3.

## VI.  District should have provided notice and prompt post deprivation hearings to owners of vehicles and smartphones taken for forfeiture determinations as well as "evidence" (Claim 6).

Plaintiffs Mr. Joyner and Mr. Iracks pled a predicate constitutional violation by alleging that the District should have provided prompt post deprivation hearings to owners of vehicles and smartphones taken for forfeiture determinations as well as "evidence." Am. Compl. ¶¶ 428-436.

The MPD seized Mr. Joyner's Toyota Tundra on about May 1, 2010 for both evidence and for forfeiture and the MPD held it for over a year before giving it back in June 2021. In District of Columbia forfeiture parlance the MPD placed both an "evidentiary hold" and a "forfeiture hold" on the two vehicles. Am. Compl. ¶¶ 9, 267. The MPD claimed the Toyota was subject to forfeiture because, the MPD state, they found a personal use amount of marijuana and a a bag with a white powder that the MPD believe is heroin, although the MPD never disclosed the results of an reliable scientific analysis identifying the white powder as heroin. *Id*. At 274-277. Mr. Joyner had no actual knowledge of any wrongdoing involving the Toyota Tundra nor did he consent to any wrongdoing involving the Toyota Tundra. *Id.* at 261, 264.

MPD seized Dreyvon Iracks' Infiniti QX50 SUV on October 18, 2021 for investigation and for civil forfeiture and MPD has held it ever since. *Id.* at 284. Mr. Iracks' vehicle may be subject to civil forfeiture under D.C. Code § 7-2507.06a (illegal transporting a firearm) because the MPD claim it was involved in a shooting. *Id.* at 288. The MPD detective refuses to provide any information about Mr. Iracks' Infiniti QX50 SUV unless Mr. Iracks sits for an interview about the alleged shooting, which he has declined to do upon advice of counsel. *Id.* at 292. Mr. Iracks does not know anything about the shooting and he had no involvement whatsoever. "I have no clue." *Id.* at 296.

### A. MPD seizes vehicles, smartphones, cash and other property for civil forfeiture pursuant to an established municipal procedure.

MPD seizes vehicles, smartphones, cash and other property for civil forfeiture pursuant to an established municipal procedure consisting in General Orders and the District's amended civil forfeiture statute. The MPD General Order requires that all vehicles seized for forfeiture must also classified as "evidence." Handling and Accounting for Seized and Forfeited Property [601.3], p. 2 (IV, A-C) (members shall seize property in compliance with this order and applicable laws, as appropriate); P. Ex. 201, Automobile Searches and Inventories, [GO-602.01], p. 11 (I,B,3).

The MPD classified each such vehicle seized for a forfeiture determination on the PD 81 as "H," "hold for civil forfeiture," according to criteria in the MPD general orders. P. Ex. 209, 209A, MPD General Order 601.1, p.3 (property classifications listed at p. 6 ("a." to "m."), p. 28.

Revisions to GO-601.01 effective July 2012 instructed members to "mark Part I.E of the PD Form 81 with the code "E/H," so each vehicle was also classified as "evidence".

### B. The District's failure to provide prompt post deprivation hearings violated due process.

The same analysis Plaintiffs developed in Claims 2, 3 and 4 apply to this Claim.

Mr. Joyner and Mr. Iracks were entitled to notice under Mullane and Perkins that their vehicles had been seized and why and the existence of remedies and how to invoke them. Failure to provide statutory notice within 90 days was a due process violation.

To the extent their vehicles were subject to an "evidentiary hold" Mr. Joyner and Mr. Iracks are entitled to prompt post deprivation hearings for the same reasons in Claims 3 and 4.

To the extent their vehicles were subject to a "forfeiture hold" they are entitled to prompt post deprivation hearings for the same reasons this Court held that Plaintiffs were entitled to prompt post deprivation hearings in *Brown* and *Simms*. *Brown v. District of Columbia*, 115 F. Supp. 3d 56, 67 (D.D.C. 2015)(later *Hoyte v. District of Columbia*)(owners of vehicles seized for forfeiture determinations entitled to prompt post deprivation hearings at which they could test the probable cause for a seizure and to propose alternatives to the government's retention of the vehicle pending the conclusion of forfeiture proceedings); *Simms v. District of Columbia*, 872 F. Supp. 2d 90 (2012)(same).

Both the "evidentiary holds" and the "forfeiture holds" were imposed pursuant to the District's established municipal procedures. Therefore, the mere existence of Rule 41(g) is irrelevant to this claim because the District deprives owners of their vehicles pursuant to an established municipal procedure and not according to the random, unforeseeable acts of rouge, low level employees. Am. Compl. ¶ 65; *Zinermon*, 494 U.S. at 136, 136-38; *Tri Cnty. Indus.*, 104 F.3d at 460.

Moreover, Rule 41(g) was not available to them because their vehicles were seized without warrants and papered cases were never instituted. *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order. Also, assuming *arguendo* Rule 41(g) were otherwise available placing a "forfeiture hold" on their vehicles deprived the Superior Court over any ancillary jurisdiction it might have had over the

vehicles (if, for example, the MPD did obtain a warrant for Mr. Iracks' Infinit). *District of Columbia v. Dunmore*, 749 A.2d 740, 743 (D.C. 2000). Conversely, the District's forfeiture statute expressly provides that the constitutionally mandated prompt post seizure hearings for return of vehicles pending the ultimate outcome of the forfeiture proceedings, D.C. Code § 41-306, do not go into effect until the MPD removes any "evidentiary hold" it has imposed on the vehicle. D.C. Code § 41-302(d)(property seized as evidence in a criminal case shall not be subject to this chapter while subject to evidentiary hold in a criminal case); *see also* D.C. Code § 41-306(a) (District shall not release property seized for forfeiture while it is being retained as evidence in a criminal case).

*Medina* is not applicable here for the same reason it is not applicable to Claims 3 and 4. Even if it were, it fails for the same reasons expressed above, the D.C. Council intentionally blocked owners access to Rule 41(g) and the statutory prompt post deprivation hearings in D.C. Code § 41-306 by enacting Code § 41-302(d) and D.C. Code § 41-306(a).

The General Orders provide "zero" process for owners to retrieve their vehicles after the District has finished processing them for evidence, Rule 41(g) was not available to them because the Superior Court lacked jurisdiction over their property because MPD seized it without a warrant before a papered criminal prosecution was instituted, *Wilson II*, 424 A.2d at 133; Abdus-Shakur Order, and reducing process to zero never comports with the Due Process Clause. *Propert*, 948 F.2d at 1332.

During this time Mr. Joyner had no way to challenge the District's seizure and retention of his Toyota Tundra because the D.C. Council did not provide a procedure in the civil forfeiture statute for owners to challenge either the seizure or the continued retention of their vehicles pending the outcome of the judicial forfeiture proceedings while the vehicle is held for forfeiture determination.

### C. Mr. Joyner and Mr. Iracks pled a plausible *Monell* claim.

Mr. Joyner and Mr. Iracks adopt here the *Monell* arguments made in support of Claim 3. The District seized and retained their vehicles after they were needed as "evidence" and after the time allowed for prompt post deprivation hearings pursuant to established municipal procedures, so the claim satisfies Baker prongs ## 1and 2. Additionally, the D.C. Council intentionally blocked their access to notice prompt post deprivation hearings as long as the property was subject to "evidentiary holds". D.C. Code § 41-306(a); 43-306(b) – (d).

The combination of the "evidentiary holds" and the "forfeiture holds" were the joint moving force behind the overdetentions of their vehicles.

Plaintiffs also satisfy Baker # 3 because the District followed a custom of holding the vehicles without prompt post deprivation hearings and the D.C. Council because it enacted the current civil forfeiture statute after full hearings. See Committee Report (attached). These facts also satisfy Baker prong # 4.

### VII. Plaintiffs state a Takings claim (Claim 5).

Because plaintiffs sufficiently allege actions which are inconsistent with the exercise of police power Plaintiffs state a predicate constitutional violation. The District was the moving force behind the overdetentions for the reasons stated in the discussion of Claims 3 and 4.

As with Plaintiffs other claims there are two seizures, or deprivations, or takings here: the initial seizure and the continued retention of Plaintiffs after the District no longer needed the property. In Claim 5 Plaintiffs pled that the District "took" their property at seizure, and that "[t]aking the property to extract the evidentiary value from it was for a public use." Am. Compl. ¶¶ 417-419.  Alternatively, Plaintiffs pled that the MPD "took" Plaintiffs' vehicles and cell smartphones and other property when it continued to detain the property after the District had extracted the evidentiary value from the property or after a reasonable time needed to extract the

evidentiary value from the property, but that this taking was not for a "public purpose." *Id.* at 420-21.

Plaintiffs focus here on Claim 5 pled in the alternative which is concerned not with the validity of the initial seizure but rather with what happens afterwards.

### A. Plaintiffs pled a predicate constitutional violation.

The Fifth Amendment of the United States Constitution states, "nor shall private property be taken without just compensation." U.S. CONST. amend. V. The seizure of evidence of wrongdoing from innocent third parties is done in the interest of the public good, and, therefore, should be considered a temporary governmental taking rather than simply the exercise of police power. ARTICLE: The Innocent's Property: A New Approach to Takings Law in Criminal Jurisprudence, 23 Fed. Cir. B.J. 283, 284.

The seizures and retentions were direct physical confiscations of property resulting in lengthy and severe intrusions on Plaintiffs' property rights. See *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071, 2074-76 (2021).

Moreover, the Plaintiffs are "innocent owners," mere bystanders to the takings because they themselves did not participate in criminal conduct justifying the seizures to check for potential evidence.

The District contends that there is a bright line categorical exception to the Just Compensation Clause when the government takes property while acting pursuant to its police power, relying on an out of Circuit case, *AmeriSource Corp. v. United States*. 525 F. 3d 1149, 1153 (Fed. Cir.2008) (affirming no compensation for the government's seizure and retention of drugs past their expiration date while it investigated the pharmacy's principals).

But, the Supreme Court has never held that the exercise of the police power categorically shields a government from liability for takings claims when confiscation of property as "evidence"

or destruction of property are involved. In fact, the guarantee of the Takings Clause was designed to bar the United States from forcing some people alone to bear public burdens that, in all fairness and justice, should be borne by the public as a whole. *Armstrong v. United States*, 364 U.S. 40 (1960); *Baker v. City of McKinney*, 2022 U.S. Dist. LEXIS 102950, at *15 (E.D. Tex. Apr. 29, 2022).

The only categorical rule that the Supreme Court has articulated on Takings is the rule that applies here: in the case of physical appropriations by the government, by any means, the government must pay for what it takes, even for a temporary physical taking. *Cedar Point*, 141 S. Ct. at 2071, 2074-76. Nor has the D.C. Circuit ever announced a categorical rule that the government's police powers shields it from takings claims. Moreover, any such rule would be inapplicable to this claim as pled in the alternative because the taking alleged here happened after the District's legitimate exercise of the police power – seizing the vehicles and smartphones to process them as "evidence" and preserve that evidence – was over. Am. Compl. ¶ 420-21.

The *AmeriSource* court fell into error by ending its inquiry upon finding that the prosecutor's actions were taken pursuant to the state's police powers, so the court impliedly asserted that the public good and public use categories are mutually exclusive. But this conclusion conflicts with Supreme Court precedent that equates "public use" under the police powers with "public purpose" under the Takings Clause. *Baker v. City of McKinney*, 2022 U.S. Dist. LEXIS 102950, at *29 (citing cases). Moreover, the holding in *AmeriSource* is an absurd and unfair result. For example, the court rejected AmeriSource's argument that the government would suffer no prejudice by retaining just a sample of the confiscated valuable, perishable drugs and instead the court accepted at face value the government's representation that "trial strategy" required presentation all of the seized drugs at trial, without even considering whether a sample, or

pictures, or even empty vials would satisfy the government's need for trial evidence. *Amerisource*, 525 F.3d at 1151. *Cf. In re Smith; supra.*

This Circuit has rejected such an absurd and unfair result in a series of cases refusing to allow the prosecutor to retain entire shipments of alleged contraband alcohol as "evidence" when just a sample would serve the government's evidentiary needs. *See e.g., Dorsey v. District of Columbia*, 265 F. 1005, 1006 (1920).

Even the panel in *AmeriSource* conceded that AmeriSource's "core theory is a sensible policy argument." *Amerisource*, 525 F.3d at 1157. Were this rule applied here, Plaintiffs' constitutional protections under the Fifth Amendment would disappear. *See Baker*, 2022 U.S. Dist. LEXIS 102950, at *33.

Both *Tate* and *Amerisource* place too much weight on the *dicta* in *Bennis* which predates the Court's more recent Takings cases such as *Cedar Point. Baker*, 2022 U.S. Dist. LEXIS 102950, at *19. *Tate* is distinguishable because it does not address the seizure of property in connection with criminal investigations. In *Tate* the District had already acquired title to the property by auction after Ms. Tate abandoned the vehicle by not redeeming it even though the District had sold it – at least according to Ms. Tate - without notice to her of the sale and before the expiration of the statutory period. *Tate v. District of Columbia*, 627 F.3d 904, 909 (2010).

A better explanation for the holdings in *Bennis* and *Tate* is that there is a fundamental difference between a police power seizure based on conduct that justifies forfeiture of all property rights to the seized property and a police power seizure from innocent owners that offers no basis for such a forfeiture and allows for only a temporary deprivation of rights of possession with respect to the seized property.

Other Courts since *AmeriSource* have begun rejecting a categorical rule that the police power shields the government from a takings claim. *Brewster*, 2020 U.S. Dist. LEXIS 188688, at *1, *2; *Baker*, 2022 U.S. Dist. LEXIS 102950. Commentators uniformly reject the rule. NOTE: You Break It, You Buy It--Unless You Have a Badge? An Argument Against a Categorical Police Powers Exception to Just Compensation, 82 Ohio St. L.J. 695; ARTICLE: The Innocent's Property: A New Approach to Takings Law in Criminal Jurisprudence, 23 Fed. Cir. B.J. 283.

Even assuming *arguendo* that a taking involving an exercise of the police power must involve a violation of both the Due Process Clause, Plaintiffs Claim 5 as pled in the alternative (taking occurred when the government had finished processing the vehicles and smartphones for evidence and preserving any evidence or after a reasonable time to do so) satisfies this rule. As explained above in the discussion of Claim 1 (Fourth Amendment) and Claim 4 (right to return), Plaintiffs state a takings claim because Plaintiffs pled plausible claims that the District's holding the vehicles and smartphones after finishing processing them for evidence violated both the Fourth Amendment and the Due Process Clause. Avila, Fourth Amendment and Brown/ Hoyte.

In *Brewster* Plaintiffs challenged the City of Los Angeles' "Impound Policy" under which City police officers, "LAPD" officers, could cause a vehicle to be seized and then impounded for thirty days under certain conditions such as driving without a valid license because even though the initial impound of the vehicle was reasonable, the continued retention implicated Fourth Amendment protections. *Brewster*, 2020 U.S. Dist. LEXIS 188688, at *1, *2. On remand, after the Ninth Circuit reversed the District Court's dismissal of the complaint, plaintiffs added a due process claim and a Takings claim. 2020 U.S. Dist. LEXIS 188688, at *11.

The District Court refused to dismiss the procedural due process claim because it held that the administrative procedures provided in the statute were not available for 30 days and the

delay was too long to satisfy the first prong of the *Mathews* analysis, and other factors such as shifting the burden of proof for its procedural protections onto the owner increased the risk of erroneous deprivations under prong 2. *Id.* at 11-18.

The District Court refused to dismiss the Takings claim because the Impound Policy violated both the Fourth Amendment and the Due Process Clause.

In *Brewster*, the City's continued retention of the vehicles after seizure violated the Fourth Amendment because the City's justification in retaining the vehicles evaporated once the driver was removed from the vehicle or the vehicle was removed from the road because the justification was allowing an unlicensed driver to drive a vehicle. So the Taking occurred at seizure.

In this case, the City's continued retention of the vehicles after processing them for evidence violated the Fourth Amendment because the City's justification in retaining the vehicles evaporated once the vehicles and smartphones were processed for evidence and the evidence was preserved. So, the Taking occurred when the District no longer needed the vehicles as "evidence" or it had a reasonable period in which to do so. And since the justification under the police power for seizing the vehicles had evaporated, retaining them past that point was not for a public purpose. Takings for a non-public or private use are *per se* unconstitutional regardless of just compensation. *Brewster*, 2020 U.S. Dist. LEXIS 188688, at *26. "The public use provision in the Takings Clause is a limitation on the government's power to seize property, not a restriction on an individual's ability to allege a takings claim." *Id.* at *25-26.

**B.  Plaintiffs state a Monell claim.**

Plaintiffs adopt here the *Monell* arguments made in support of Claim 3 because the takings were pursuant to the established municipal procedure and polices discussed above, and a custom existed and the District knew and did nothing.

**VIII. The District wrongfully detained Plaintiffs' vehicles and smartphones under the common law. (Claim 7).**

Plaintiffs sufficiently pled a plausible common law claim against the District.

Where public officials "unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity . . . ," the true owner may "bring his possessory action to reclaim that which is wrongfully withheld." *Hayden*, 387 U.S. at 308. In an action for conversion, "[e]ven where a defendant's initial possession of property is lawful, a demand for its return by the plaintiff may render the continued possession unlawful and show its adverse nature." *Savoy Const. Co. v. Atchison & Keller, Inc.*, 388 A.2d 1221, 1223 (D.C. 1978). This Court has likewise held that a plaintiff can state a conversion claim under D.C. law for misconduct by the police when "the police, after lawfully coming into possession of plaintiffs property, thereafter wrongfully refused to surrender it." *O'Callaghan v. District of Columbia*, 741 F. Supp. 273, 280 (D.D.C. 1990). And the Restatement (Second) of Torts states a similar rule. Id. § 237 ("One in possession of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its immediate possession, is subject to liability for its conversion.").

Each Plaintiff demanded return of their property. Each plaintiff was entitled to return of their property after the District finished processing it for potential evidence in it, and preserving the evidence.

The perceived evidentiary value of the vehicles and the smartphones gave the District a privilege to make a qualified refusal while processing the vehicles and smartphones. *See* Restatement (Second) of Torts § 238 (Am. Law Inst. 1965) ("One in the possession of a chattel does not become a converter by making a qualified refusal immediately to surrender the chattel when the circumstances are such that the demand for immediate surrender is unreasonable.").

But, the District did not return the vehicles and smartphones after processing them as "evidence". And failure to communicate that reason precludes them from relying on it to avoid

liability for declining to return the car. Id. § 241 ( "Qualification of a refusal to surrender a chattel to one entitled to immediate possession does not avoid liability for conversion unless . . . such reason is communicated to the claimant at the time . . . ."); Dan B. Dobbs et al., The Law of Torts § 67 (2d ed. 2016); *Denault v. Ahern*, 857 F.3d 76, 86 (1st Cir. 2017).

Moreover, MPD offers to return vehicles and smartphones came with strings attached: the District's MPD investigators refused to return their property unless they consented to searches or they agreed to help with their investigation regarding Denault, and the District had no privilege to qualify their refusal on that basis and require a quid pro quo. *Id*.

Since the District's continued retention of their vehicles and smartphones was unlawful, Plaintiffs did not even have to make demands for the return of their property. *Adenariwo v. FMC*, 808 F.3d 74, 79 (2015 (*citing with approval Welke v. City of Davenport*, 309 N.W.2d 450, 453 (Iowa 1981) (rejecting contention that a plaintiff's damages could be reduced when a tortfeasor illegally seized chattels and plaintiff did not try to reclaim the chattels by paying a fee and storage charge).

Neither Mr. Iracks nor Plaintiffs' counsel ever received a copy of a warrant or an inventory of property taken as Rule 41(f)(5) and (6) prescribe so apparently no warrant was ever obtained.

The forfeiture determinations of Mr. Joyner's and Mr. Iracks' vehicles were not conducted pursuant to statute, because, since they were subject to "evidentiary holds", e.g., Am. Compl. ¶ 267, the District's civil forfeiture did not apply, D.C. Code § 41-302 (d), or, if the civil forfeiture statute did apply, it forbade release of the vehicles and smartphones until the "evidentiary holds" were "lifted." D.C. Code § 41-306(a). Since the District does not recognize common law forfeiture, *U.S. v. Farrell*, 606 F.2d 1341 (D.C. Cir. 1979), the forfeiture holds were illegal, *Id*. and so do not defeat a common law wrongful detention claim. The "evidentiary holds" do not defeat Plaintiffs'

common law claims because any privilege based on the potential evidence that might have been in or on them evaporated after the property was processed for evidence. *See* Restatement (Second) of Torts § 238.

The District does not challenge Plaintiffs' assertions that the wrongful detentions were made by District employees acting within the scope of their employment, Am. Compl. ¶ 16, ¶ 442, so the doctrine of *respondeat superior* applies and the District is liable for the torts of its employees. *York v. Karbah*, 2021 U.S. Dist. LEXIS 241676, at *5-6 (D.D.C. Dec. 19, 2021).

For the reasons stated above Plaintiffs respectfully move this Court to deny the District's

Motion to Dismiss [ECF No. 22].

| | |
|---|---|
| Respectfully submitted, | |
| | |
| /s/ William Claiborne | |
| WILLIAM CLAIBORNE | |
| D.C. Bar # 446579 | |
| | |
| Counsel for named Plaintiffs | |
| | |
| 717 D Street, NW | |
| Ste 300 | |
| Washington, DC  20004 | |
| Phone 202/824-0700 | |
| Email claibornelaw@gmail.com | |