UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OLIVIA PARROTT**, *et al.*, | |
| *Plaintiffs,* | |
| **v.** | Case No. **1:21-cv-2930-RCL** |
| **DISTRICT OF COLUMBIA**, | |
| *Defendant.* | |

### MEMORANDUM OPINION

In this case, plaintiffs Olivia Parrott, Bardino Joyner, Dreyvon Iracks, and a putative class of similarly situated individuals allege that the defendant District of Columbia ("the District") violated their Fourth and Fifth Amendment rights and committed a common-law tort known as "unlawful detention of property" by seizing their vehicles and smartphones for use as evidence in criminal cases in which they were not themselves defendants and retaining that property long after it had been "processed" as evidence.

Before the Court is the District's motion to dismiss the amended complaint, ECF No. 22. In it, the District contends that neither the Fourth Amendment nor the Fifth Amendment's takings clause say anything about the ongoing retention of lawfully seized property for use in a criminal investigation, that the District's property-recovery procedures adequately protect plaintiffs' Fifth Amendment due process rights, and that the tort plaintiffs allege does not exist. The Court agrees with the District that plaintiffs fail to state a Fourth Amendment unreasonable seizure claim, Fifth Amendment takings claim, or tort claim. However, the Court concludes that plaintiffs state a plausible Fifth Amendment due process claim. Accordingly, the District's motion to dismiss will be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

The following background is drawn from publicly available rules and regulations setting

out District policies and from the factual allegations in the amended complaint, ECF No. 18. As it

must when evaluating a motion to dismiss, the Court assumes the veracity of all well-pleaded

factual allegations in the amended complaint. *See Alemu v. Dep't of For-Hire Vehicles*, 327 F.

Supp. 3d 29, 40 (D.D.C. 2018).

### A.  The District's Policies and Procedures for Property Seized as Evidence

Pursuant to Metropolitan Police Department ("MPD") General Order 601.1, "Recording,

Handling and Disposition of Property Coming into the Custody of the Department" (Apr. 30,

1992), MPD designates property that comes into its possession under one or more of several

classifications, including, as relevant here, "evidence," or "held for civil forfeiture." *Id.* Part I.A.6.

The procedures that the order sets out contemplate that property designated as "evidence" will

eventually be returned to its owner. If a case has been charged and "a disposition is available in

the case, or the property is no longer needed for prosecution," MPD "shall submit a completed PD

Form 81-C [Property Release] containing the signature of the appropriate prosecuting attorney"

from the U.S. Attorney's Office. *Id.* Part I.I.8.b. Alternatively, "[a]fter 60 days, if there is no

defendant or suspect in a case, and it is evident that the property will not be needed in court, the

[MPD] member who initially handled the property shall prepare and submit a properly signed PD

Form 81-C to their element property officer," *id.* Part I.I.11,[1] who is "responsible for the security

of property held at their element[] and for the proper transfer of the property to the Property Control

Branch," *id.* Part IV.A.1. However, General Order 601.1 does not explain in detail *how* property

---

[1] The text of the order is ambiguous as to whether, in order to be "properly signed" where no case has been charged, it must be signed by a prosecutor.

designated as evidence is to be released to its owner once a properly signed PD Form 81-C has been executed.[2]

Moreover, the amended complaint alleges that "MPD in practice has no reliable system for making sure that some member promptly obtains a PD 81-C from a prosecutor for vehicles or smartphones or other property when it is no longer needed for evidentiary reasons." Am. Compl. ¶ 51. In practice, even when a case has been charged, it is the MPD officer who "makes the decision to release the property and then presents a Form 81C to a supervisor at the USAO to sign indicating that the USAO-DC has no objection to that release and said property is not needed to be retained as evidence." *Id.* ¶ 49 (internal quotation marks and citation omitted). Furthermore, the evidence control section of MPD's website tells property owners that "property classified as 'evidence'" "is generally held until the conclusion of any pending court action." *Id.* ¶ 63.

### B. The Named Plaintiffs' Factual Allegations

#### 1. Olivia Parrott

Plaintiff Olivia Parrott is a single mother of two residing in the Parkland neighborhood of Southeast Washington. Am. Compl. ¶¶ 197, 203. On the afternoon of August 22, 2019, Ms. Parrott parked her Volkswagen Passat in front of her house. *Id.* ¶ 210. Around 11:00 p.m. that evening, she heard gunshots outside her home and went outside to see "the whole neighborhood" in a commotion around what appeared to be the scene of a shooting. *Id.* ¶¶ 208–09. Ms. Parrott's boyfriend, Melvin Simmons, lay seriously wounded in the Passat, with a gunshot wound to his back and bullet holes in the back of the car, and Robert Jerome Brown, Jr. lay dead in the street in a puddle of blood. *Id.* ¶¶ 204–05, 212. Ms. Parrott was unable to open the car because she did not

---

[2] The District cites a special set of procedures for handling certain cell phones that come into its possession, set out in Special Order 15-08, "Cell Phone Recovery Process" (Apr. 14, 2015). However, those procedures only relate to found cell phones, *see id.* Part III.A, and cell phones seized from arrestees, *see id.* Part III.B–C. Thus, it is irrelevant in this case, which concerns property that was seized as evidence of a crime from a person other than an arrestee.

have the keys. *Id.* ¶ 211. MPD officers arrived on the scene to investigate, and they found the bullet holes in the back of the car, as well as blood spatter evidence. *Id.* ¶ 212. They also searched the area in front of Ms. Parrott's home, where they found guns, blood spatter, and a set of keys with a Volkswagen key. *Id.* ¶ 214.

The next morning, Ms. Parrott exited her home around 7:00 a.m., and the Passat was not there. *Id.* ¶ 216. She was able to find where it was located only by using an app on her personal iPhone to track one of three family iPhones she had left in the car, which led her to a location marked as "D.C. Forensics," or "DFS." *Id.* ¶¶ 201, 217–18. When she arrived at DFS, she identified herself as the owner of the Passat, and MPD officers questioned her for two to three hours about the car, her relationship with Mr. Simmons, and the shootings that had apparently taken place outside her house. *Id.* ¶ 220. MPD told Ms. Parrott that it would return the Passat and one of the iPhones she left inside it if she consented to a search of the car and gave MPD the password to the iPhone so it could be searched as well. *Id.* ¶¶ 221–22. Ms. Parrott agreed, but MPD nevertheless refused to turn over either the phone or the car at that time. *Id.* ¶¶ 221, 223, 236.

MPD finished processing the car and the iPhone, "including taking swabs of the suspected blood," and searching the car and the iPhone, "in just a few days." *Id.* ¶ 241. Nevertheless, despite repeated calls and texts from Ms. Parrott inquiring about the return of her property, *id.* ¶ 247, MPD continued to hold onto it. Approximately three months after the seizure, on November 19, 2019, the U.S. Attorney instituted a criminal case in D.C. Superior Court against Mr. Simmons. *Id.* ¶ 246. At some point unspecified in the amended complaint, prosecutors subpoenaed Ms. Parrott to testify before the grand jury in that matter. *Id.* ¶ 249. She complied, the Superior Court appointed her a lawyer, and she testified before the grand jury on June 23, 2021. *Id.* ¶¶ 248–50. On July 26, 2021, the lead MPD detective and Assistant U.S. Attorney assigned to the case both promised Ms.

Parrott's court-appointed lawyer that they would get back to him within a week about returning the car and iPhone. *Id.* ¶ 248.

The amended complaint does not specify what happened next in those conversations, but MPD finally returned the car to Ms. Parrott over a month later, on September 8, 2021, more than two years after it was originally seized. *Id.* ¶ 251. Unfortunately for Ms. Parrott, she did not have the keys to the car, as they had been dropped at the scene of the shooting, and they were still in MPD's possession as evidence to be used in the criminal case. *Id.* ¶ 253. When she arrived at the impound lot, MPD did not return the keys along with the car. *Id.* ¶ 254. MPD also refused to return two of the iPhones left in the car, which it believed Mr. Simmons had used, or any other personal property in the car, including Ms. Parrott's birth certificate. *Id.* ¶¶ 255, 258. MPD told Ms. Parrott she could either leave the car in its custody or allow the impound lot to move the car to the curb, where it would be towed within 24 hours. *Id.* ¶ 256. Ms. Parrott chose the latter and paid a towing service to move the car to her home. *Id.* ¶ 200.

### 2. Bardino Joyner

Plaintiff Bardino Joyner was living in South Carolina when the events of his case began in 2020. Am. Compl. ¶ 263. Sometime before May of that year, Mr. Joyner lent his truck, a Toyota Tundra, to his brother, who in turn lent it to someone else without Mr. Joyner's knowledge. *Id.* ¶ 264. In early May 2020, the truck was parked on a street in Southeast Washington by an unknown driver, after which MPD towed it "without a warrant and without providing any notice or information about the seizure to Mr. Joyner or anyone else connected with the vehicle." *Id.* ¶ 266.

"As it turned out," MPD had seized Mr. Joyner's Tundra and classified it both as evidence of a crime and for potential forfeiture. *Id.* ¶ 267. The Amended Complaint does not specify how Mr. Joyner or his attorney became aware of the seizure, but on May 5, 2020, his attorney contacted

MPD to inquire about getting the truck returned. *Id.* ¶ 270. Over the coming months, Mr. Joyner's attorney was in frequent contact with MPD and the District's Office of the Attorney General regarding the truck. *Id.* ¶¶ 270–272. Mr. Joyner's attorney learned that MPD searched the Tundra after a drug-sniffing dog alerted them that there may be contraband inside and found small quantities of what appeared to be marijuana and heroin. *Id.* ¶¶ 274–75. However, the amended complaint alleges "[o]n information and belief" that "MPD never submitted the [suspected heroin] to the Drug Enforcement Administration [] for analysis and identification." *Id.* ¶ 277.

Mr. Joyner's truck remained on both an evidentiary hold and a potential forfeiture hold for approximately a year. *Id.* ¶¶ 278–83. He was finally able to recover it through some unspecified means in May 2021. *Id.* ¶ 283.

### 3. Dreyvon Iracks

Plaintiff Dreyvon Iracks's Infiniti QX50 SUV was parked in a Maryland parking lot on October 18, 2021 when MPD seized it and towed it away based on a "look-out." *Id.* ¶¶ 284–85. It is unclear from the amended complaint whether Mr. Iracks actually knew that his car had been seized by MPD, but he went to inquire about it the next day at the D.C. Superior Court courthouse, where he "ran into" "a CJA lawyer," who agreed to a "very limited" pro bono representation of him that amounted to no more than "making some calls." *Id.* ¶¶ 286–87. Mr. Iracks's pro bono counsel called MPD and the U.S. Attorney's Office and learned that MPD seized the vehicle as part of an investigation of a "felony shooting" because MPD believed the vehicle appeared in a video of that shooting. *Id.* ¶¶ 288–93.

Mr. Iracks alleges "[o]n information and belief [that] MPD classified [his SUV] as both [] 'evidence' and forfeiture." Am. Compl. ¶ 298. The only documentation he has been able to obtain, a "public incident report which might relate to" the vehicle, does not specify under what

designation it is being held, *id.* ¶ 297, but he maintains that the vehicle is "arguably subject to civil forfeiture proceedings" "if an unregistered gun or a gun carried by an unlicensed person [was] used in the shooting," *id.* ¶ 299. To Mr. Iracks's and his counsel's knowledge, no criminal case related to the shooting or the SUV had ever been charged as of the time of the amended complaint, approximately ten months after the seizure occurred. *Id.* ¶ 295. Mr. Iracks never received "notice of any kind[,] not even a copy of a warrant or an inventory of items taken," nor has he received "any forfeiture notice." *Id.* ¶¶ 300–01. Neither MPD nor the prosecutors on the case have "stated whether the District has searched or processed (including photographed) the vehicle." *Id.* ¶ 304. Mr. Iracks still has not been able to retrieve the SUV. *Id.* ¶ 284.

### C. Proceedings in this Court

Plaintiffs filed a putative class action complaint in this Court on November 5, 2021, asserting claims of Fourth Amendment unreasonable seizures, Fifth Amendment due process violations, Fifth Amendment uncompensated takings, and the supposed common-law tort of "wrongful detention of property." *See* Compl., ECF No. 2-1. The same day, plaintiffs filed a notice designating *Smith v. District of Columbia*, No. 15-cv-737-RCL, as a related case. *See* Not. of Related Case, ECF No. 3. The District moved to dismiss the initial complaint on February 7, 2022, *see* ECF No. 15, but plaintiffs then filed an amended complaint by right, amending several allegations but asserting the same claims, on March 15, 2022, *see* Am. Compl.

The District moved to dismiss the amended complaint on April 22, 2022. *See* Mot. to Dismiss, ECF No. 22. Plaintiffs filed their opposition on July 18, 2022, *see* Pls.' Opp'n, ECF No. 32, and the District filed its reply on August 16, 2022, *see* Def.'s Reply, ECF No. 38. Additionally, on August 31, 2022, the District filed a notice of supplemental authority informing the Court of a decision granting the District's motion to dismiss in a similar case, *Cameron v. District of*

*Columbia*, No. 21-cv-2908-APM, 2022 WL 3715779 (D.D.C. Aug. 29, 2022); *see* ECF No. 39.

Plaintiffs filed a response to the District's notice on October 10, 2022, *see* ECF No. 41, and the

District filed a reply on November 9, 2022, *see* ECF No. 44.

## II.   LEGAL STANDARDS

### A. Motions to Dismiss Under Rule 12(b)(6)

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) on grounds of "failure to state a claim upon which relief can be granted." To survive a

Rule 12(b)(6) motion, a complain must contain sufficient factual allegations, accepted as true, to

"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* A court evaluating a Rule

12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them

liberally in the plaintiff's favor." *Alemu*, 327 F. Supp. 3d at 40. However, "[a] court need not accept

a plaintiff's legal conclusions as true, . . . nor must a court presume the veracity of legal

conclusions that are couched as factual allegations." *Id.* (citation omitted).

### B. 42 U.S.C. § 1983 and Municipal Liability

42 U.S.C. § 1983 provides a cause of action for any person "depriv[ed] of any rights,

privileges, or immunities secured by the Constitution and laws" "under color of any statute,

ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." A

municipality such as the District may be liable under § 1983 only if it was a "policy or custom" of

that municipality that caused the violation of the plaintiff's rights. *Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 694 (1978). Thus, a court considering a § 1983 claim against a municipality,

sometimes called a "*Monell* claim," "must conduct a two-step inquiry": "First, the court must

determine whether the complaint states a claim for a predicate constitutional violation. . . . Second,

if so, then the court must determine whether the complaint states a claim that a custom or policy

of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306

(D.C. Cir. 2003) (citations omitted).

### III.   DISCUSSION

#### A. Plaintiffs Do Not State a Fourth Amendment Seizure Claim

Count I of the amended complaint alleges that the District has a policy or custom of

retaining property seized as evidence in a criminal case until the conclusion of that case, or

potentially indefinitely if no case is charged,[3] and that that policy or custom violated plaintiffs'

Fourth Amendment rights against unreasonable seizure of their property because any seizure that

endures longer than it takes to "process" and photograph evidence is unreasonable, even if such a

seizure would have been reasonable at its inception. *See* Am. Compl. ¶¶ 358–85. The District

argues that Count I does not state a claim that the District violated plaintiffs' rights because the

Fourth Amendment has nothing to say about the length of a seizure of property that was lawful at

its inception, *see* Mot. to Dismiss at 10–13. In the alternative, the District contends that the seizure

of plaintiffs' property was reasonable under the Fourth Amendment because the property was

retained in connection with an ongoing criminal investigation or prosecution. *See id.* at 13–16.

Furthermore, the District argues that Count I does not plausibly plead a policy or custom sufficient

---

[3] More precisely, the amended complaint alleges that the District has an express policy of "retaining 'potentially discoverable material' until the case is over or, if no judicial case is filed, for a period of three years from the date such material was first obtained." Am. Compl. ¶ 62. That allegation, however, is less a factual assertion than a plainly incorrect interpretation of MPD General Order 601.2, "Preservation of Potentially Discoverable Material" (Feb. 3, 2004). General Order 601.2 defines "potentially discoverable material" as material that "includes, but is not necessarily limited to, such items as tangible documents, reports, video/audio tapes, transcripts of video/audio tapes, and photographs," examples of which include "written statement[s]" by witnesses or defendants; recordings or transcriptions of "an oral statement made by a prospective witness, defendant, or co-defendant"; "notes taken by a member of the Department"; and "results or reports of physical or mental examinations or scientific or medical tests." Gen. Order 601.2 Part III. The three-year rule that plaintiffs allege as part of General Order 601.2 plainly does not apply as a matter of law to tangible evidence like phones or cars. Thus, plaintiffs have not plausibly alleged that it applies in their cases.

to support *Monell* liability. *See id.* at 16–26. The Court rejects the District's primary argument regarding the alleged Fourth Amendment violation but agrees with its alternative argument. And because the Court concludes that the amended complaint does not state a plausible claim for relief under the Fourth Amendment, the Court need not consider whether it adequately pleads a policy or custom for *Monell* purposes.

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Although a seizure of personal property is typically only reasonable when done pursuant to a warrant, the Supreme Court has held that law enforcement may seize personal property with probable cause, but without a warrant, "if the exigencies of the circumstances demand it or some other recognized exception to the warrant is present." *United States v. Place*, 462 U.S. 696, 701 (1983). At any rate, in this case, plaintiffs do not dispute that the seizure of their property as evidence in a criminal case, though done without a warrant, was initially reasonable.

Rather, plaintiffs' argument is that what was initially a reasonable seizure became unreasonable due to its length and other particular facts of their cases. In support of that proposition, plaintiffs cite cases holding that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U..S. 109, 124 (1984). For example, in *Place*, the Supreme Court held that the extended detention of a defendant's luggage at an airport was unreasonable based on "[t]he length of the detention . . . alone." 462 U.S. at 709.

In the face of that precedent, the District argues that that the Fourth Amendment has nothing to say about the length of time for which seized property is retained. This Court disagrees. To be sure, the First, Second, Sixth, and Seventh Circuits and another court in this District held as much. *See Denault v. Ahern*, 857 F.3d 76, 83 (1st Cir. 2017), *superseded on other grounds*, *Gonpo v. Sonam's Stonewalls & Art LLC*, 41 F.4th 1, 9–10 (1st Cir. 2022); *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004); *Fox v. Van Oosterum*, 176 F.3d 342, 350–52 (6th Cir. 1999); *Lee v. City of Chicago*, 330 F.3d 456, 460–66 (7th Cir. 2003); *Cameron*, 2022 WL 3715779, at *5–6. But the D.C. Circuit has not spoken on the issue, and this Court held in *Smith v. District of Columbia* that a seizure of property for use as evidence that is valid at its inception may become unreasonable if it outlasts its initial justification. 387 F. Supp. 3d 8, 25 (D.D.C. 2019). The plaintiffs in that case brought a number of constitutional claims challenging the District's gun-control laws and their enforcement, including the practice of continuing to retain seized handguns after dismissing the related criminal charges. *Id.* at 13–16. This Court denied the District's motion to dismiss as to the ongoing-seizure claim, reasoning that, since "any need to preserve evidence for the ongoing prosecutions ended when those prosecutions were dismissed," "the Court [could not] confidently say at the motion-to-dismiss stage that whatever governmental interest [the relevant D.C. Code provision] serves . . . outweighs such a long and significant intrusion on plaintiffs' possessory rights." *Id.* at 25.

The Court stands by its conclusion in *Smith* and notes that it is consistent with the holdings of the Ninth Circuit and another court in this District. *See Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017); *Avila v. Dailey*, 246 F. Supp. 3d 347, 355–61 (D.D.C. 2017); *see also Lee*, 330 F.3d at 472 (Wood, J., concurring) ("I think it undesirable to hold sweepingly that the Fourth Amendment has nothing to do with the reasonableness of the continued detention of property after

the rationale supporting the initial seizure no longer holds."). As the Ninth Circuit reasoned in *Brewster*, the decisions holding that the Fourth Amendment's only concern is the initial fact of seizure, not its duration, do not adequately distinguish the Supreme Court's holding in *Place* that "it was the '90-minute detention of [Place's] luggage [that was] was sufficient to render the seizure unreasonable,'" not the "initial seizure." *Brewster*, 859 F.3d at 1197 (alterations in original) (quoting *Place*, 462 U.S. at 710).

However, plaintiffs' Fourth Amendment claim, as stated in the amended complaint, goes far beyond what is cognizable as a matter of Fourth Amendment law, even under *Smith*. Plaintiffs advocate for a blanket rule that any retention of a vehicle or smartphone seized as evidence after it has been "processed," or a reasonable time for "processing" has passed, is *per se* unconstitutional. *See* Am. Compl. ¶ 363. The Court cannot endorse such a broad rule. As this Court has noted, "the Fourth Amendment's touchstone is reasonableness." *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 287 (D.D.C. 2011). Its text bars only "*unreasonable* searches and seizures." U.S. Const. amend. IV (emphasis added). And there are plenty of reasons why, in any given case, it might be reasonable for the government to retain seized property while a criminal case is still pending or in contemplation, even after an initial search or "processing." Among them is preserving the evidence for inspection by the actual or prospective criminal defendant. *See* Fed. R. Crim. P. 16(a)(1)(E); D.C. Super. Ct. Crim. R. 16(a)(1)(E). It might be especially reasonable to do so where, for example, the seized vehicle could potentially contain DNA, fingerprints, or other forensic evidence not detectable through a photograph that a defense expert would wish to analyze. *See, e.g.*, *Crocker v. United States*, 253 A.3d 146, 153–56 (D.C. 2021). And while it may be impracticable to present a car as evidence in a criminal proceeding in court, it is possible to imagine scenarios in which either party to such a proceeding may wish to show a jury a smartphone,

particularly where that smartphone's evidentiary value lies in something beyond the extractable data it contains.

It is for reasons like these that other courts have recognized, albeit in slightly different contexts, a "'general rule [] that' lawfully seized property hearing evidence relevant to trial 'should be returned to its rightful owner once the criminal proceedings have terminated,' not before." *United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013) (Gorsuch, J.) (alteration added) (evaluating Fourth Amendment claim that government unlawfully delayed seeking warrant to search car it had lawfully seized); *see also Jenkins v. District of Columbia*, No. 16-cv-118-CRC, 2017 WL 6211103 (D.D.C. Mar. 28, 2017) (reasoning in context of Fifth Amendment due process challenge that "[t]he District has an interest in preserving the integrity of the evidence it needs to obtain a conviction" and in protecting "the constitutional rights of criminal defendants"); *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999) (stating in evaluating motion for return of property that "[i]t is well settled that the government is permitted to seize evidence for use in investigation and trial, but that such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture"). And this Court agrees: It must be reasonable, at a minimum, for the government to retain property seized as evidence for as long as it is pertinent to an ongoing, lawful criminal investigation or prosecution.

That holding is consistent with this Court's decision in *Smith*. As explained above, that case involved the retention of the plaintiffs' guns *after* the charges against them were dropped and, thus, the relevant criminal cases were no longer pending. *Smith*, 387 F. Supp. 3d at 13–16. On its own terms, the Court's reasoning in *Smith* is not controlling in a case in which criminal charges are still pending or in contemplation.

Turning to the specific facts of plaintiffs' cases, the allegations in the amended complaint belie any notion that the property seized was not pertinent to an ongoing investigation or prosecution. As detailed above, Ms. Parrott's car and phones were seized and retained as part of an investigation of a shooting. Subsequently, a suspect was charged and, as of the time of the amended complaint, there was an active criminal prosecution pending in Superior Court. The car was allegedly involved in the shooting, and at least one of the phones was allegedly used by the criminal defendant, Mr. Simmons. Mr. Joyner's truck was seized and retained in connection with an investigation of illegal drugs found inside it. And Mr. Iracks's car was seized and retained as part of an investigation of a shooting because his car allegedly appeared in a video of that shooting. The amended complaint does not allege that any of those justifications are fabricated—only that they are insufficient as a matter of law. The Court disagrees.

Because the allegations in the operative complaint, taken as true, establish that all of plaintiffs' seized and retained property was pertinent to an ongoing criminal investigation or prosecution, plaintiffs do not state a claim that those ongoing seizures, which were reasonable at their inception, became unreasonable because of their duration. Accordingly, the Court will dismiss Count I.

**B.  Plaintiffs State a Fifth Amendment Due Process Claim**

Plaintiffs' procedural due process claims are split across Counts II–IV and VI, *see* Am. Compl. ¶¶ 386–413, 428–36, but they essentially involve three theories. First, plaintiffs argue that the District violated their due process rights by failing to provide a procedure by which they could retrieve their property before a criminal case was charged. Second, they argue that the District violated their due process rights by failing to give them prompt notice that MPD had seized their property or of any procedures available to retrieve it. Third, in Count VI only, they argue that the

14

District violated Mr. Joyner's and Mr. Iracks's due process rights by failing to make a post-deprivation procedure available to them while holding their property both as evidence and for potential civil forfeiture. As to the first point, the District argues that D.C. Superior Court Rule 41(g) provides an adequate procedure for return of plaintiffs' property. As to the second, it argues that, even taking the allegations in the complaint as true, plaintiffs *were* promptly notified of the seizures, and that it was unnecessary to give individualized notice of available remedies because Rule 41(g) is publicly available and provides sufficient notice. As to the third point, the District argues that the unavailability of a separate remedy where property is held both as evidence and for forfeiture is irrelevant to plaintiffs' due process rights and does not form the basis for a standalone claim.[4]

The Court agrees with plaintiffs in part and the District in part. The District has not established that Superior Court Rule 41(g) is a constitutionally adequate remedy for individuals in plaintiffs' situation because it has not demonstrated as a matter of law that that rule applies where no criminal case has been charged. The Court agrees with the District that the amended complaint does not adequately allege a failure to notify plaintiffs that their property had been seized, but the Court cannot accept the District's argument that publicly available sources put plaintiffs on notice that Superior Court Rule 41(g) was available to them. The Court agrees with the District that Count VI does not state a standalone claim specific to individuals whose property is being held both as evidence and for civil forfeiture. The Court will therefore dismiss the procedural due process

---

[4] The District does not dispute in its motion to dismiss that, if a predicate due process violation has occurred, plaintiffs have adequately alleged a policy or custom for *Monell* purposes.

claims in Counts II–IV only insofar as they allege a lack of notice that the seizures occurred but will dismiss in full the separate due process claim in Count VI.[5]

### 1. The amended complaint plausibly alleges the lack of an adequate post-deprivation procedure because D.C. Superior Court Rule 41(g) does not apply

Plaintiffs allege that the District does not provide any procedure by which individuals whose property was seized as evidence of a crime not yet charged in Superior Court can seek return of that property. The only procedure that the District cites in its motion to dismiss is D.C. Superior Court Rule of Criminal Procedure 41(g), captioned "Motion to Return Property," which provides as follows:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

D.C. Super. Ct. R. Crim. P. 41(g). The Court cannot agree with the District on this point: It appears that Superior Court Rule 41(g) does not apply—at least not reliably—where no criminal case has ever been brought before the Superior Court.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Due process claims challenging the constitutional adequacy of a procedure concerning a deprivation of a protected interest are typically evaluated under the three-factor balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). That test requires courts to weigh (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest

---

[5] The Court notes that a criminal case eventually was charged in connection with Ms. Parrott's vehicle. However, as explained above, the amended complaint alleges a delay of approximately three months between the seizure and the institution of the criminal case in Superior Court. *See* Am. Compl. ¶ 198. Ms. Parrott would thus have standing at least to pursue money damages under § 1983 for an alleged temporary deprivation of her due process rights.

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.[6] But of course, it makes little sense to evaluate the constitutional sufficiency of procedures if those procedures are not actually available.

Here, the parties vigorously dispute the threshold question of whether Superior Court Rule 41(g) is an available remedy at all in plaintiffs' situation—that is, whether it applies where no criminal case has been charged. The text of the Superior Court Rules suggests that it does not. To be sure, one could reason that a person whose property has been seized is, even prior to the charging of a criminal case, "[a] person aggrieved by . . . the deprivation of property," and thus they "may move for the property's return." D.C. Super. Ct. R. Crim. P. 41(g). But Superior Court Rule 1(a) textually limits the scope of all the criminal rules, including Rule 41(g), to charged cases, for it provides that "[t]hese rules govern the procedure in all *criminal proceedings* in the Superior Court of the District of Columbia." D.C. Super. Ct. R. Crim. P. 1(a) (emphasis added). And if no case has been charged, no "criminal proceeding" has commenced.

Furthermore, of the few extant cases concerning Superior Court Rule 41(g)'s application where no case has been charged, at least two of them, and the only one decided by a D.C. court,

---

[6] The District argues that plaintiffs' challenge should instead be evaluated under *Medina v. California*, 505 U.S. 437 (1992), which held that rules in criminal cases violate due process only if they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 445 (quotation marks and citation omitted). But the Supreme Court has recently cabined *Medina* to "state procedural rules that are a part of the criminal process," including, "for example, the allocation of burdens of proof and the type of evidence qualifying as admissible." *Nelson v. Colorado*, 581 U.S. 128, 134–35 (2017) (internal quotation marks and citation omitted). *Medina* does not apply to, for example, "the continuing deprivation of property after a conviction has been reversed or vacated." *Nelson*, 581 U.S. at 135. It stands to reason that it also would not apply to a motion by a third party for the return of property seized as evidence where no criminal case has ever been charged. The *Cameron* court agreed. *See* 2022 WL 3715779 at *10. At any rate, since the Court concludes that the procedures that the District asserts are available are actually not available at all, the question of what standard to apply in evaluating the sufficiency of those procedures is essentially academic.

support plaintiffs' position. First, plaintiffs cite *United States v. Abdus-Shakur*, No. 2020 CNCSLD 000303, in which the D.C. Superior Court recently interpreted Superior Court Rule 41(g) as applied before the charging of a crime or the issuance of a warrant. In that case, the Superior Court denied a Rule 41(g) motion for return of a vehicle on grounds that "no search warrant has been issued, nor has any criminal prosecution been initiated in connection with the purported seizure of the vehicle, [and] thus it appears that the Criminal Division is without authority or jurisdiction to act upon the request for return of property." *Abdus-Shakur* Order at 1, ECF No. 33-2. Courts in this Circuit give deference to D.C. Superior Court interpretations of D.C. Code laws and rules. *See Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 352 (D.C. Cir. 2003). Plaintiffs also cite *Avila*, in which a court in this District held that Superior Court Rule 41(g) does not "provide an adequate remedy" for due process purposes because "it is unclear whether, under D.C. law, a person who is not a defendant in a criminal case can bring a Rule 41(g) case in Superior Court." 246 F. Supp. 3d at 362. For that proposition, the *Avila* court cited *District of Columbia v. Dunmore*, in which the D.C. Court of Appeals described a Rule 41(g) motion as "ancillary to the criminal proceeding in which it is brought," 749 A.2d 740, 742 (D.C. 2000), and *Cousart v. Metro Transit Police Chief*, in which another court in this District stated that a plaintiff could "move in the Superior Court for the return of property seized as part of a criminal action" under Rule 41(g), 101 F. Supp. 3d 27, 29 (D.D.C. 2015).

In the face of those cases and the text of the rules, the District makes no meaningful attempt in its motion to dismiss or its reply thereto to explain why Superior Court Rule 41(g) should be read to apply in the specific situation where no criminal case has been charged. In its motion to dismiss, the District merely asserts that "[t]he broad scope of Rule 41(g) has been repeatedly addressed in caselaw," Mot. to Dismiss at 29, citing cases that involved "a criminal action," *see*

*Cousart*, 101 F. Supp. 3d at 28, without any explanation of why the rule should be extended to cases where no such action ever commenced. And in its reply, the District declines to "belabor this point," asserting that "it explained at length in its motion [that] Plaintiffs' interpretation lacks any support in the text of Rule 41(g), nor do Plaintiffs identify any basis for interpreting Rule 41(g) in such a limited manner." Def.'s Reply at 12. The only on-point citation the District ever provides is in its notice of supplemental authority, in which it notes that the *Cameron* court "held that D.C. Superior Court Rule of Criminal Procedure 41(g) provided due process for property owners who were arrested but not charged to seek the return of their property even absent a related criminal case." Def.'s Not. of Supp. Auth. at 1–2 (citing *Cameron*, 2022 WL 3715779, at *10–12).

This Court respectfully disagrees with the *Cameron* court's analysis of Superior Court Rule 41(g)'s applicability. Without any binding authority directly on point, *Cameron* first cites D.C. case law it asserts is closely analogous. The D.C. Court of Appeals has not addressed whether Superior Court Rule 41(g) applies where no case has been charged. It has held that the rule applies where property was seized as evidence in a case that was disposed of by *nolle prosequi* at arraignment. *Alleyne v. United States*, 455 A.2d 887, 888–89 (D.C. 1983). But a case disposed of by *nolle prosequi* is not the same as a case that was never brought before the Superior Court. Superior Court Rule 48(a)(1) provides that "[t]he government may *file* a . . . nolle prosequi of an *information or complaint*." D.C. Super. Ct. R. Crim. P. 48(a)(1) (emphasis added). That implies that a charging document exists and prosecutors have gone before the Superior Court, if only to cut a case short at arraignment by "fil[ing]" a *nolle prosequi*. *Id.* And notably, in *Alleyne*, the property owner attempted to file the motion for return of his property with the same judge who presided at the arraignment where his charges we disposed of by *nolle prosequi*. 455 A.2d at 888.

*Cameron* also points out that certain federal courts have interpreted Federal Rule of Criminal Procedure 41(g), whose language is identical in relevant part, to allow motions for the return of property before a criminal case has been charged. *See, e.g.*, *Harbor Healthcare System, L.P. v. United States*, 5 F.4th 593, 598–600 & n.2 (5th Cir. 2021); *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172–74 (9th Cir. 2010) (*en banc*) (*per curiam*), *overruled on other grounds*, *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13 (2017). And if a D.C. rule is "identical to the federal rule," the D.C. Court of Appeals "look[s] with favor on the federal authorities where [it has] no clear precedent" of its own. *Demus v. United States*, 710 A.2d 858, 859 (D.C. 1998). Citing these authorities, the *Cameron* court concludes that Superior Court Rule 41(g) *does* apply where no case has been charged. 2022 WL 3715779 at *8–10.

However, even under analogous federal precedent, the rule's straightforward application in plaintiffs' situation is far from certain. Several federal courts have held that "when the motion is made by a party against whom no criminal charges have been brought," it is "in fact a petition that the district court invoke its civil equitable jurisdiction," even if "styled as a motion under" Rule 41(g). *Comprehensive Drug Testing*, 621 F.3d at 1172; *see also United States v. Ali*, 306 F.R.D. 694, 695 (N.D. Ala. 2015); *In re Singh*, 892 F. Supp. 1, 2–3 (D.D.C. 1995); *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992); *Hunsacker v. Phinney*, 497 F.2d 29, 34 (5th Cir. 1974). And it is never a sure proposition that a court will have or exercise equitable jurisdiction to reach the merits of a motion that does not fit cleanly within the bounds of a court rule or statute. For example, in *Trump v. United States*, former President Donald Trump, whose property had been seized pursuant to a warrant where no case had been charged, moved in the district court to, among other things, "order the United States to return any item seized [from him] that was not within the scope of the search warrant." 54 F.4th 689, 696 (2022). The Eleventh Circuit held that the district

court lacked equitable jurisdiction to entertain that motion, which "was a civil filing and did not explain how the district court had jurisdiction to act on all of its requests" but "claim[ed] to be a precursor to an eventual motion under Federal Rule of Criminal Procedure 41(g)." *Id.* at 696, 701–02. It is all the more uncertain that such a civil proceeding invoking Rule 41(g) would be available in D.C. Superior Court, which, unlike federal district courts, is split by statute into a civil division and a criminal division, among others. *See* D.C. Code § 11-902(a)(1)–(2); *cf. Abdus-Shakur* Order at 1 (emphasis added) ("it appears that the *Criminal Division* is without authority or jurisdiction").

Ultimately, it appears to this Court that Superior Court Rule 41(g) is not, in fact, applicable—or at least not reliably applicable—in situations in which no criminal case has ever been brought before the Superior Court. In sum, the text of the Superior Court rules seemingly limits their applicability to "criminal proceedings," D.C. Super. Ct. Crim. Rule 1(a), and the only directly on-point D.C. case either party has cited held the rule inapplicable in the absence of a warrant or a charged case. Meanwhile, the most closely analogous D.C. Court of Appeals case supporting the District's position is readily distinguishable, and analogous federal decisions largely support the existence of, at most, an equitable civil remedy in the spirit of Rule 41(g). And if Superior Court Rule 41(g) does not actually provide individuals in plaintiffs' situation with any recourse at all for the deprivation of their property, it cannot satisfy the requirements of due process.

Because the District has not established that Superior Court Rule 41(g) is actually available to individuals whose property has been seized in connection with a criminal investigation not yet charged as a case in Superior Court, nor has it pointed to any other procedure that ostensibly safeguards property owners' constitutional rights in that situation, the Court will not dismiss

Counts II–IV of the amended complaint insofar as they allege an unconstitutional lack of procedures available to contest a deprivation of property.

### 2. The amended complaint plausibly alleges a lack of notice

The amended complaint also alleges that the District violated plaintiffs' Fifth Amendment rights by failing to give them prompt notice that MPD had seized their property or of whatever procedures exist for its return.[7] The District argues that the allegations in the amended complaint indicate that plaintiffs received notice of the seizures either before or shortly after they occurred and that no individualized notice of procedures was required because Superior Court Rule 41(g) is set out in a publicly available source.

The Court agrees with the District only in part. Nowhere does the amended complaint allege that any plaintiff was *notified by MPD* of a seizure, but the allegations do indicate that plaintiffs *became aware* of the seizures so soon after they occurred that it would be impossible to show that MPD's efforts to provide notice were constitutionally deficient. The Court therefore agrees with the District that plaintiffs do not state a due process claim stemming from a lack of notice that a seizure occurred. However, Superior Court Rule 41(g) and the caselaw interpreting it could not have put plaintiffs on notice of how to retrieve their property before a case was charged, because, as explained above, it is not apparent that it applies at that juncture. Moreover, to the extent aggrieved property owners may file a sort of pre-indictment petition invoking the Superior Court's equitable civil jurisdiction, as some federal cases contemplate, plaintiffs could not be on notice that such a remedy exists, as the District can point to no publicly available D.C.-law decision recognizing its existence. And the publicly available information on the MPD's website suggests

---

[7] Plaintiffs also allege that the District violated their procedural due process rights by failing to give them notice when their property had been processed for evidence and when a related criminal case was charged, *see* Am. Compl. ¶ 391, but they cite no authority for the proposition that the due process clause could conceivably require notice at those junctures, neither of which involves a new "depriv[ation] of life, liberty, or property," U.S. Const. amend. V.

that the return of property is only available when connected to a criminal proceeding. *See* Am. Compl. ¶ 63.

In general, due process requires that individuals "receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993). In the specific context of procedures for the return of personal property seized by the government, the Supreme Court has held that while the government must "take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). Furthermore, that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The Supreme Court held in *Perkins* that "published, generally available state statutes and case law" will often suffice for notice of available procedures, obviating the need for "individualized notice of state-law remedies." 525 U.S. at 241. However, *Perkins* "did not establish a *per se* rule that notice of the procedures for recovering seized property is adequate if those procedures are published in state statutes and/or case law." *Frith v. Hill*, No. 07-cv-5899-JSR, 2009 WL 3073716, at *4 (S.D.N.Y. Sept. 23, 2009). Rather, it "applied the general rule of *Mullane*," which "holds that '[a] primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful.'" *Id.* (alteration in original) (quoting *Perkins*, 525 U.S. at 240).

The Court turns first to plaintiffs' allegation that they were never notified that the seizures occurred at all. Notice of the seizure itself need not always be contemporaneous with the seizure; certain "extraordinary situations," including a seizure for purposes of forfeiture, may "justify postponing notice and opportunity for hearing." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416

U.S. 663, 677 (1974) (quotation marks and citation omitted). But of course, in order to plausibly plead a violation of that requirement, plaintiffs must allege that a delay actually occurred.

Here, the amended complaint does not include sufficient allegations to plead plausibly that the District failed to "take reasonable steps to give notice that the property has been taken," *Perkins*, 525 U.S. at 240, because even taken as true, the relevant factual allegations would establish that plaintiffs learned of the seizures shortly after they occurred and would not establish that the District actually had long enough to take reasonable steps to provide notice. The amended complaint alleges that the seizure of Ms. Parrott's car and the phones inside it occurred at some point between 11:00 p.m. on August 22, 2019, when she exited her home to see the scene of the shooting, *see* Am. Compl. ¶ 208, and 7:00 a.m. the next day, when she again exited her home to find that the car was no longer there, *see id.* ¶ 216. It contains no allegation as to how long thereafter she used a phone tracking app to find her car and learned that it was in MPD custody. *See id.* ¶¶ 216–20. But at any rate, taken as true, the relevant portion of the amended complaint would seem to establish a period of less than 24 hours between the seizure's occurrence and Ms. Parrott's finding out about it through self-help.[8] Even worse, the only allegation regarding the time between seizure of Mr. Joyner's vehicle and his discovery is that his "lawyer began communicating with MPD [] regarding the vehicle and the 'criminal investigation' regarding the vehicle almost as soon as MPD took the vehicle." *Id.* ¶ 269. And the corresponding portion of the amended

---

[8] The Court notes that the District's contention in its reply brief that "Ms. Parrott consented to the search of her phones and vehicle, therefore, she was fully aware of who was taking her property and why *prior to* seizure," Def.'s Reply at 9 (emphasis in original), so severely misreads the amended complaint as to make one wonder if that contention was made in good faith. As explained above, the amended complaint alleges that Ms. Parrott received no notice that the seizure had even occurred, that she simply saw that her car was missing, that she used a tracking app to find the car based on the location of a phone she had left in it, and that she consented to the search *after* discovering the car was at an MPD facility and speaking with MPD personnel. *See Am. Compl.* ¶¶ 216–22.

complaint concerning Mr. Iracks makes no allegation whatsoever as to the amount of time between the seizure of his car and his attorney's discovery that MPD had seized it. *Id.* ¶¶ 284–88.

Because the amended complaint does not plead with sufficient specificity facts that, taken as true, would establish that enough time elapsed that the District *could have* taken reasonable steps to notify plaintiffs of the seizures, it does not state a procedural due process claim based on a theory that the District failed to provide them notice that the seizures occurred.

The Court turns next to plaintiffs' allegation that the District does not provide property owners who have learned of a seizure with constitutionally adequate notice of how to retrieve their property. The District argues that it need not provide individualized notice of available procedures because Superior Court Rule 41(g) and the caselaw interpreting it "are established by published, generally available state statutes and case law." *Perkins*, 525 U.S. at 241. But while *Perkins* generally charges individuals with knowledge of procedures set out where one would ordinarily think to look for them, "[t]he law does not entertain the legal fiction that every individual has achieved a state of legal omniscience." *Grayden v. Rhodes*, 345 F.3d 1225, 1243 (11th Cir. 2003). For that reason, courts have held that a government defendant gave a plaintiff inadequate notice under *Perkins* where a person in the plaintiff's situation did not have a reasonable opportunity to learn of the publicly available sources setting out the available procedures. *See id.* at 1242–44 (holding that city code provision for challenging condemnation orders did not provide adequate notice where plaintiffs were given 36 hours to vacate their homes); *Frith*, 2009 WL 3073716, at *5 (holding that city rules did not provide adequate notice where they contradicted city code); *cf. Wright v. Beck*, 981 F.3d 719, 732 (9th Cir. 2020) (holding that statute requiring destruction of unneeded, unclaimed, or abandoned firearms did not provide constitutionally adequate notice where it was disputed whether plaintiff's firearm was unneeded, unclaimed, or abandoned).

Here, as explained above, the publicly available sources setting out this putatively available procedure are all either ambiguous, nonbinding, or not entirely on point. To learn that anything resembling a Rule 41(g) motion *might* be available, individuals in plaintiffs' situation would have first have to look past MPD's statement on its website that evidence "is generally held until the conclusion of any pending court action." Am. Compl. ¶ 63. They would then have to research federal caselaw interpreting a different but analogous rule and predict that because federal courts have entertained equitable petitions for return of property along the lines of a formal Rule 41(g) motion, the D.C. Superior Court would likely do the same. That is more than can be expected of a layperson. The mere existence of Superior Court Rule 41(g) does not suffice to put plaintiffs on notice of procedures that may theoretically be available to them through an exercise of equitable jurisdiction.

Because the District can point to no publicly available sources establishing in a reasonably comprehensible manner that the D.C. Superior Court would entertain anything resembling a motion under Superior Court Rule 41(g) before a criminal case has been charged, the Court will not dismiss Counts II–IV of the amended complaint insofar as they allege constitutionally inadequate notice of available procedures for the return of property.

### 3. Count VI does not state a standalone due process claim

The last aspect of plaintiffs' due process claims is Count VI of the amended complaint, which alleges a separate due process violation where the District retains property both for use as evidence and for potential civil asset forfeiture. Specifically, Count VI alleges that the District places property owners "[i]n a classic catch 22" by "classifying property subject to an 'evidentiary hold' as 'for forfeiture' as well," because a forfeiture hold "cuts off an owner's access to Rule 41(g) to the extent it provides a remedy" and, "conversely, a vehicle owner has no access to a

statutory prompt post seizure retention hearing under the District's civil forfeiture statute until the evidentiary holds are removed." Am. Compl. ¶¶ 433–44. The District argues that the unavailability of forfeiture proceedings for property that is also being held as evidence is irrelevant to Mr. Joyner's and Mr. Iracks's due process claims. *See* Mot. to Dismiss at 38–40. The Court agrees.

As an initial matter, while plaintiffs allege Count VI as to both Mr. Joyner and Mr. Iracks, they plausibly allege only that Mr. Joyner's property was held both as evidence and for forfeiture. The amended complaint alleges "[o]n information and belief" that the District is or was holding Mr. Iracks's vehicle for potential civil forfeiture, based only on the assertion that, under D.C. law, it is *possible* that the District might do so. *See* Am. Compl. ¶¶ 297–301. That allegation is so speculative that it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Thus, if Count VI stated a standalone claim as to any of the named plaintiffs, it would do so only as to Mr. Joyner.

Even as to Mr. Joyner, Count VI is superfluous. Plaintiffs are correct that under D.C. law, "[t]he District shall not release property seized for forfeiture while it is being retained as evidence in a criminal case." D.C. Code § 41-306(a). It is unclear whether they are also correct that a forfeiture hold "cuts off an owner's access to Rule 41(g)," Am. Compl. ¶ 433, because the case they cite for that proposition, *Dunmore*, addressed only Superior Court Rule 41(g)'s applicability where the District has already *instituted* forfeiture proceedings, not where the District is *holding* property for potential forfeiture proceedings in the future, *see* 749 A.2d at 741–42. But as explained above, it appears that Superior Court Rule 41(g) does not apply in plaintiffs' situation, anyway. Count VI thus adds nothing—where no forfeiture proceedings have yet commenced, the unavailability of prompt forfeiture proceedings for owners whose property is classified both for

forfeiture and as evidence says nothing about what process the District *does* provide. The Court will therefore dismiss Count VI.

### C. Plaintiffs Do Not State a Fifth Amendment Takings Claim

Count V of the amended complaint alleges that the District's seizure and retention of plaintiffs' property constitutes an unlawful taking under the Fifth Amendment. *See* Am. Compl. ¶¶ 414–27. The District moves to dismiss that count on the ground that the seizure and retention of property for use as evidence in a criminal case categorically is not a taking for public use within the meaning of the Fifth Amendment. *See* Mot. to Dismiss at 34–37.[9] The Court need not accept the District's argument in every particular to dismiss Count V, because no court has held that the seizure of retention of such property can constitute a taking *before* the associated criminal case has concluded, and plaintiffs have given this Court no reason to become the first.

The Fifth Amendment's takings clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. But not every deprivation of property by the government is for a public use. The Supreme Court has held that the deprivation of a property interest by civil asset forfeiture may never constitute an unlawful taking, because that process is an exercise of the government's police power rather than its power of eminent domain. *Bennis v. Michigan*, 516 U.S. 442, 452–53 (1996). And so far as this Court can tell, every Circuit to consider the question has held that the seizure and retention (or even destruction) of property pursuant to a valid exercise of the police power can never constitute an unlawful taking, even outside the forfeiture context. *See Lafaye v. City of New Orleans*, 35 F.4th 940, 943 (5th Cir. 2022); *Ostipow v. Federspiel*, 824 Fed. App'x 336, 342 (6th Cir. 2020); *Lech v. Jackson*, 791 Fed. App'x

---

[9] The District does not dispute in its motion to dismiss that, if a predicate takings clause violation has occurred, plaintiffs have adequately alleged a policy or custom for *Monell* purposes.

711, 718 (10th Cir. 2019); *Johnson v. Manitowoc County*, 635 F.3d 331, 336 (7th Cir. 2011); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332–33 (Fed. Cir. 2006). In *Frein v. Pa. State Police*, the Third Circuit held that a valid exercise of the police power merely "immunizes" the government from liability for what would otherwise be a taking, and that that immunity runs out in the case of a seizure pursuant to a lawful warrant "after the conviction" in the associated criminal case "becomes final," at which point the retention of the property is no longer a *lawful* exercise of the police power. 47 F.4th 247, 251–53 (3d Cir. 2022). But even *Frein* recognized that, "[b]ecause the point of seizing evidence is to use it in a criminal proceeding, the government may hang onto it through that proceeding." *Id.* at 252.

Here, the District argues that neither the seizure nor retention of plaintiffs' property could have been a taking for public use because both were done pursuant to the District's literal police power. Plaintiffs respond that under the Supreme Court's recent decision in *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), "in the case of physical appropriations by the government, by any means, the government must pay for what it takes, even for a temporary physical taking," Pls.' Opp'n at 52 (citing *Cedar Point*, 141 S. Ct. at 2071, 2074–76). But *Cedar Point* set out no such categorical rule. That case concerned a regulatory requirement that agricultural employers allow labor organizers onto their property, which the state did not attempt to defend as an exercise of its police power. *Cedar Point*, 141 S. Ct. at 2069. And as the Third Circuit explained in *Frein*, which was decided after *Cedar Point* and in fact cited it, the police power can "immunize" the government from liability for what otherwise would be a taking. *See Frein*, 47 F.4th at 252. Plaintiffs also argue in the alternative that even if the police power has that effect, it must still be a *lawful* exercise of the police power. *Frein* supports that proposition. But here, unlike in *Frein*, each of the plaintiffs' property is or was being retained as evidence in a criminal proceeding that

is ongoing or still in contemplation. Plaintiffs concede that the initial seizure of that property was lawful, and their only argument that it is not being retained pursuant to a lawful exercise of the police power is that the length of the seizure has violated the Fourth Amendment, an argument that the Court dispatched above. Thus, even under *Frein*, plaintiffs do not state a cognizable Fifth Amendment takings claim.

Because the amended complaint does not adequately allege a taking for public use within the meaning of the Fifth Amendment, the Court will dismiss Count V.

### D.  Plaintiffs Do Not State a Common Law Tort Claim

Count VII of the amended complaint alleges that by seizing plaintiffs' property and retaining it after processing it for evidence, the District committed the tort of "unlawful detention of property." *See* Am. Compl. ¶¶ 437–44. The District argues that no such tort exists, and in the alternative, that plaintiffs do not state a plausible claim for conversion. *See* Mot. to Dismiss at 40–42. The District is correct that plaintiffs do not plead a cognizable tort claim. Plaintiffs assert that their putative tort occurs "when a tortfeasor has converted chattel that has come back to the owner's possession, either through self-help, judicial proceedings or otherwise, and when the conduct that deprived the owner of the use of a chattel was not a conversion." Am. Compl. ¶ 440. But they do not identify any authority for the existence of such a tort. Rather, in their opposition, they defend Count VII as "an action for conversion." Pls.' Opp'n at 56. If plaintiffs wished to plead a claim for conversion, they should have done so in their amended complaint. "Where the amended complaint does not make a claim, plaintiff[s] cannot add a new claim through an opposition brief." *Williams v. Spencer*, 883 F. Supp. 2d 165, 181 n.8 (D.D.C. 2012). Because the amended complaint pleads a tort that apparently does not exist, and because plaintiffs address the elements of conversion and

frame their tort claim as such for the first time in their opposition brief, the Court will dismiss Count VII.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** in part and **DENY** in part the District's motion to dismiss. Specifically, the Court will **DISMISS** Counts I and V–VII in full, as well as Counts II–IV to the extent as they allege that the District unlawfully failed to notify plaintiffs that their property had been seized at all. A separate Order shall issue this date.

Date: February 22, 2023

Royce C. Lamberth
United States District Judge