UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OLIVIA PARROTT, *et al.*,

    *Plaintiffs,*

v.

DISTRICT OF COLUMBIA,

    *Defendant.*

Case No. 1:21-cv-2930-RCL

### MEMORANDUM OPINION

Earlier this year, this Court dismissed plaintiffs' Fourth Amendment unreasonable seizure claims, Fifth Amendment takings claims, and common law tort claims against the District of Columbia. *Parrott v. District of Columbia*, No. 21-cv-2930 (RCL), 2023 WL 2162859, at *1 (D.D.C. Feb. 22, 2023). However, the Court declined to dismiss plaintiffs' Fifth Amendment due process claims. *Id.* After the Court's ruling, the District answered what remained of plaintiffs' amended complaint. Answer, ECF No. 48. The parties then met, conferred, and filed a joint statement offering their respective positions on discovery. Meet and Confer Statement, ECF No. 49. The Court decided not to bifurcate liability and class discovery and it set a schedule, which, as modified, calls for combined fact discovery to close by February 29, 2024. Am. Scheduling Order, ECF No. 61; *see also* ECF No. 52 (unamended). There are currently four discovery motions pending before the Court: plaintiffs' first motion to compel production of Metropolitan Police Department ("MPD") property books, ECF No. 55; plaintiffs' second motion to compel production of electronic databases, ECF No. 64; plaintiffs' motion for a protective order, ECF No. 65; and defendant's cross-motion for a protective order, ECF No. 68.

1

Upon consideration of the parties' briefing, the entire record, and the applicable law, the Court will **GRANT-IN-PART** and **DENY-IN-PART** plaintiffs' motion to compel production of MPD property books, **DENY** plaintiffs' motion to compel electronic databases, **DENY** plaintiffs' motion for a protective order, and **GRANT** defendant's cross-motion for a protective order.

## I.   BACKGROUND

The factual background of this case is set forth in this Court's previous Memorandum Opinion, which dismissed most of plaintiffs' claims. *See Parrott*, 2023 WL 2162859, at *1–3. The Court will assume familiarity with that Opinion and recount only those facts necessary to resolve the motions now before the Court. Plaintiffs are Olivia Parrott, Bardino Joyner, Dreyvon Iracks, and a putative class of similarly situated individuals whose property was seized by MPD for use as evidence in criminal cases in which they were not themselves defendants. *Id.* at *1. Plaintiffs allege that the defendant, the District of Columbia, failed to provide constitutionally adequate procedures to contest the deprivation of seized property and constitutionally adequate notice of available procedures for the return of property. *See id.* at *10, *12. The District denies these claims. Answer ¶¶ 386–413.

As relevant here, MPD maintains physical logbooks and electronic databases in which it stores information about property seized by MPD officers during investigations. Def.'s Opp'n to Pls.' First Mot. to Compel 1, ECF No. 58. This information may be relevant to plaintiffs' municipal liability claims and class certification, and plaintiffs accordingly have asked the District to produce complete copies of MPD's logbooks and databases. Pls.' First Mot. to Compel 3, ECF No. 55; Pls.' Second Mot. to Compel 9–12, ECF No. 64. The District is generally amenable to producing MPD's seizure records but not in the manner plaintiffs have requested them, as the District maintains that plaintiffs' specific requests are overly broad and unduly burdensome. *See, e.g.*,

Def.'s Opp'n to Pls.' Second Mot. to Compel 2–3, ECF No. 67. Both parties seek a protective order to guard against disclosure of these records but disagree over the proper scope and effect of the protective order. Pls.' Mot. for Protective Order, ECF No. 65; Def.'s Mot. for Protective Order, ECF No. 68. The four discovery motions before the Court stem from plaintiffs' unrequited requests for seizure data.

Plaintiffs' first motion to compel seeks production of photocopies of physical "property books" maintained by MPD "to record the details of vehicles, smartphones, and other property seized by the MPD in connection with investigations" after November 1, 2016. Pls.' First Mot. to Compel 1. Plaintiffs contend that these property books may list seizures (or contain certain information about seizures) not otherwise recorded in MPD's electronic databases. Pls.' First Mot. to Compel 2–3. The District opposes this request because MPD seizure data is already available in its electronic database, EvidenceOnQ, which the District contends will be significantly less burdensome to produce. Def.'s Opp'n to Pls.' First Mot. to Compel 4.

Plaintiffs' second motion to compel seeks production of all data relating to vehicles, smartphones, and currency seized as of or after November 1, 2018, and stored in MPD's electronic evidence database, EvidenceOnQ, as well as various documents allegedly required to interpret EvidenceOnQ data, copies of PDF documents stored as attachments in EvidenceOnQ, and exports from any other MPD databases that store seizure data. Pls.' Second Mot. to Compel 1–2. The District is prepared to produce EvidenceOnQ data but opposes the plaintiffs' specific request as overly broad and unduly burdensome. Def.'s Opp'n to Pls.' Second Mot. to Compel 2–3, 10–11.

Finally, the parties have filed dueling motions for protective orders governing the use and dissemination of confidential information. Both parties acknowledge that a protective order must be entered before the seizure data sought by plaintiffs may be produced. *See* Pls.' Mot. for

3

Protective Order 2, 5; Def.'s Mot. for Protective Order 1, 8. The crux of the parties' dispute is whether plaintiffs' counsel should be permitted to retain confidential information for use in future litigation. *See* Pls.' Mot. for Protective Order 3–4; Def.'s Mot. for Protective Order 2. Plaintiffs' counsel believes that retaining confidential information from this case would facilitate formulating discovery requests in future cases and aid judges deciding discovery issues. The District opposes this request and instead would require plaintiffs' counsel to dispose of or return confidential information at the close of litigation. However, the District would permit plaintiffs' counsel to retain work-product and other documents prepared based on confidential information. Def.'s Mot. for Protective Order 2.

These motions are now ripe for review.

## II.   LEGAL STANDARDS

### A. Motion to Compel

Parties may pursue discovery by submitting document production requests under Federal Rule of Civil Procedure 34. "When a party objects to a discovery request, the requesting party may—after first attempting to resolve the issue by conferring with the refusing party—file a motion to compel." *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021). Rule 37 permits a party to file a motion to compel discovery if, among other reasons, the opposing party "fails to produce documents . . . requested under Rule 34." Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iv). An incomplete answer or response is treated as a failure to respond. Fed. R. Civ. P. 37(a)(4).

The motion to compel is subject to a burden-shifting framework. The moving party bears the initial burden of showing that the requested information is relevant. *Lamaute*, 339 F.R.D. at 35. Relevance is construed broadly in the discovery context as "any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *United*

4

*States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The moving party also bears the burden of showing that the opposing party's response to their request is inadequate or incomplete. *Barnes v. District of Columbia*, 289 F.R.D. 1, 21 (D.D.C. 2012) (citing *Equal Rights Ctr. v. Post Properties, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007)). After establishing relevance and incompleteness, "the burden shifts to the party opposing discovery to show why the discovery should not be permitted." *Lamaute*, 339 F.R.D. at 35. "Courts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) when deciding whether to grant a motion to compel." *Barnes*, 289 F.R.D. at 5–6. Rule 26(b)(2)(C) authorizes the Court to limit discovery that is "unreasonably cumulative or duplicative, . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive[, or] is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 26(b)(1) in turn limits the scope of discovery to that "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). At bottom the party opposing discovery must "show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 27 (D.D.C. 2012).

### B. Motion for Protective Order

Federal Rule of Civil Procedure 26(c)(1) permits courts upon a showing of "good cause" to issue protective orders to guard against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Courts have "broad discretion . . . to decide when a

protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "[T]he 'good cause' standard . . . is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999). But the party requesting a protective order bears the burden of establishing that it should be granted. *See United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10, 12 (D.D.C. 2014); *Doe v. Provident Life & Accident Ins. Co.*, 247 F.R.D. 218, 221 (D.D.C. 2008). To satisfy this burden, the requesting party "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).

### III. DISCUSSION

The Court suspects plaintiffs could have avoided these motions had they been more willing to compromise on their expansive demands. That is not to suggest that plaintiffs' requests are without merit; they reflect understandable litigation positions. But as the Court's analysis will show, plaintiffs' requests are far too broad and burdensome for the Court to award the precise relief requested. For these reasons, the Court will deny plaintiffs' exceedingly broad motion to compel production of electronic databases. However, the Court will order the District to turn over a sample of property books so that plaintiffs may compare MPD's physical records against EvidenceOnQ to determine whether there is missing seizure data. The Court will deny plaintiffs' motion for a protective order and enter the District's proposed order instead. While the Court appreciates plaintiffs' public policy arguments, discovery requests should not be used to gather information for use in other proceedings. Further, plaintiffs' proposal would undermine the purpose of the protective order, which is to guard against the risk of harmful disclosures.

### A. Plaintiffs' Motion to Compel Property Books

Plaintiffs seek "a copy of each [physical] property book used by any element of the MPD on or after November 1, 2016." Pls.' First Mot. to Compel 3. "When MPD receives property as evidence . . . the seizing officer will record information about the seized property both in the physical property book . . . and in the property management database, EvidenceOnQ." Def.'s Opp'n to Pls.' First Mot. to Compel 4. "The [D]istrict has never opposed providing Plaintiffs" with records from EvidenceOnQ that identify instances in which MPD seized vehicles and cellphones. Def.'s Opp'n to Pls.' Second Mot. to Compel 1–2. Such information is ostensibly relevant to plaintiffs' municipal liability claims and expected motion for class certification. Because the District concedes the general relevance of seizure records stored in EvidenceOnQ and MPD's property books also contain seizure records, it follows that MPD's property books also contain generally relevant information. The question is whether the District has adequately shown that discovery should not be permitted because the plaintiffs' request "is burdensome, overly broad, vague or outside the scope of discovery." *Kellogg Brown*, 284 F.R.D. at 27.

The District argues that the property books would be "unduly burdensome and duplicative to produce." Def.'s Opp'n to Pls.' First Mot. to Compel 6. Although the Court agrees with plaintiffs that the District's projections as to the difficulty of production are overblown, it would be substantially easier to extract seizure data from EvidenceOnQ than to manually photocopy thousands of pages located at stations across the District. *See* Def.'s Opp'n to Pls.' Second Mot. to Compel 4 (explaining that MPD already maintains an electronic database containing the relevant information); *compare id.* at 1 (claiming photocopying property books would take "weeks if not months and would be a logistical nightmare") *with* Pls.' Reply to Def.'s Opp'n to Pls.' First Mot. to Compel 6, ECF No. 60 (arguing the task could be completed more quickly if properly delegated

across district stations). Additionally, EvidenceOnQ already serves as MPD's evidentiary database of record. *See* Griffin Decl ¶ 6, ECF No. 58-2. Property seized by MPD is recorded in EvidenceOnQ. Griffin Decl ¶ 6. Changes in the status of seized property, like being brought to court or released to an individual, are also recorded in EvidenceOnQ. Griffin Decl ¶ 6. Such changes are *not* recorded in the physical property books. Griffin Decl ¶ 6. So, the District's points as to burden and duplication are well taken, and support the conclusion that right now, producing all physical property books would be disproportional to the needs of the case.

Plaintiffs argue that there may be seizures (or information about seizures) that are recorded in the property books but not in EvidenceOnQ. Pls.' First Mot. to Compel 3. If that is true, then the property books are not entirely duplicative; some relevant information may exist only in the property books. The District asserts this possibility is merely "theoretical." Def.'s Opp'n to Pls.' First Mot. to Compel 6. But plaintiffs have substantiated this possibility more than the District may care to admit. *See* Pls.' Reply to Def.'s Opp'n to Pls.' First Mot to Compel 3–5; Rose Dep. 8:14–19, ECF No. 62-1. Plaintiffs represent that there is a three-step process when property is seized by an MPD officer.[1] Pls.' Reply to Def.'s Opp'n to Pls.' First Mot. to Compel 4. First, the seizing officer makes a data entry in the property book. Second, the seizing officer prepares a property record form.[2] Third, a property clerk enters information from the property record form

---

[1] Several of the factual details that follow appear for the first time in plaintiffs' reply. However, they respond to Robert Griffin's declaration—included with the District's opposition—that "[f]or property seized as evidence, the same information that would be found in the property books is contained within EvidenceOnQ." Griffin Decl. ¶ 8, ECF No. 58-2. Further, plaintiffs' opening brief alleged that "some seizures are recorded only in the property books" and that "gaps and deficiencies" exist due to MPD's reliance on separate paper and electronic databases. Pls.' First Mot. to Compel 3, 12–14. Plaintiffs' opening brief also cited a policy report documenting several of these alleged failures. PCB Policy Report, ECF No. 55-1. Although the District has expressly denied that "more updated information would be available in the property books than EvidenceOnQ," the District has not otherwise meaningfully rebutted plaintiffs' charge that certain seizures may be entirely missing from EvidenceOnQ. *See* Def.'s Opp'n to Pls.' First Mot. to Compel 6. The Court will permit discovery of a sample of property books on this basis alone and need not rely on facts raised for the first time in plaintiffs' reply. Nevertheless, the Court may in its discretion incorporate those additional facts, and it elects to do so here. *See Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005).

[2] Plaintiffs refer to this form as a "PD 81."

8

into EvidenceOnQ. In other words, the seizing officer who marks up the property book is not the same person who enters the electronic record into EvidenceOnQ, and the record entered into EvidenceOnQ is copied from the property record form, not the property book. Assuming this workflow description is accurate, if a property clerk fails to make an entry in EvidenceOnQ, or the seizing officer fails to prepare a property record form, or the property record form differs from the property book, then the property book may contain seizures (or information about seizures) that do not appear in EvidenceOnQ.

But mere speculation that EvidenceOnQ is missing seizure data will not suffice to compel production of every MPD property book. *See Barnes*, 289 F.R.D. at 25 (requiring "more than a mere 'theoretical possibility that more documents exist'" (quoting *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008))). As it stands, nothing about MPD's process for recording seizures—first in property books, then in property record forms, then in EvidenceOnQ—*assures* that any records will be lost. Nevertheless, it seems reasonably probable based on the arguments and evidence advanced by the parties that MPD's workflow will result in missing or mismatched entries such that plaintiffs are entitled to production of at least some property books for the purpose of verification. The District has not explained how its data entry workflows, which link the property books and EvidenceOnQ through manual data entry mediated by layers of personnel and paperwork, actually ensure this possibility remains merely theoretical. And while difficulties with production are relevant to "whether the burden or expense of the proposed discovery outweighs its likely benefit" and is disproportionate, when those difficulties stem from the very reason the requested documents would be additively helpful—to locate seizures that may have been lost due to MPD's manual data entry process—they cannot entirely excuse production. Fed R. Civ. P.

26(b)(1); *see Buie v. District of Columbia*, 327 F.R.D. 1, 14 (D.D.C. 2018) (explaining that disorganized record-keeping is not an excuse for failing to produce relevant documents).

The Court acknowledges that the property books are likely to be highly duplicative. And the Court accepts that producing *all* of the property books would be disproportionate to the likely frequency of discrepancies actually shown by plaintiffs. As a result, rather than grant or deny plaintiffs' request in its entirety, the Court will direct the District to produce a reasonable sample of property books so that plaintiffs may compare those records against data from EvidenceOnQ.[3] In conducting this comparison, plaintiffs should determine what number or percentage of seizures recorded in the sample of property books are actually missing from MPD's electronic database. Depending on the results, petitioners may move the Court for further relief, including production of additional property books.[4]

The Court will direct the parties to meet and confer to negotiate a reasonable set of samples. A reasonable sample may consist of a handful of property books selected from different district stations and spanning several months' worth of data. The Court expects the parties to agree on a reasonable sample without the need for further intervention from the Court. Failure to reach an agreement without court intervention will be viewed with disfavor.

---

[3] Although plaintiffs proposed this error-sampling method for the first time in their reply, Pls.' Reply to Def.'s Opp'n to Pls.' First Mot. to Compel 2, 19, the Court is well within its discretion to order such a remedy here, as it is effectively a subset of plaintiffs' original request for relief. *See Hussain v. Nicholson*, 435 F.3d 359, 363 (D.C. Cir. 2006) ("A district court has broad discretion in its resolution of discovery problems that arise in cases pending before it." (citations omitted)).

[4] The Court is not convinced that plaintiffs' counsel's issues with settlement administration in an unrelated case warrant compelling production of all property books here. Nor is it clear to the Court how the property books would facilitate the plaintiffs' review of PDF documents stored in EvidenceOnQ, given that EvidenceOnQ functionally serves as MPD's database of record. *See* Griffin Decl ¶ 6. If the PDF documents stored in EvidenceOnQ contain unnecessary information as plaintiffs suggest, then that only undermines plaintiffs' argument that the District should be compelled to produce those documents.

### B. Plaintiffs' Motion to Compel Electronic Databases

Plaintiffs seek "all data from all fields . . . contained in [EvidenceOnQ] relating to each vehicle or smartphone . . . that was already in the possession of MPD for investigation . . . as of November 1, 2018, or . . . was seized or taken for investigation" on or after that date. Pls.' Second Mot. to Compel 9. Plaintiffs also request relevant data from "other databases," "a data dictionary," and "every [writing] containing information about a data dictionary." Pls.' Second Mot. to Compel 10–12. Plaintiffs' request for data from EvidenceOnQ apparently includes PDF files stored on the platform.[5] Pls.' Second Mot. to Compel 6. The District opposes plaintiffs' broad requests but concedes the relevance of at least some of the seizure data stored in EvidenceOnQ and has offered to produce several fields. *See* Def.'s Opp'n to Pls.' Second Mot. to Compel 2–3. Plaintiffs were not receptive to this overture and now demand either all data from EvidenceOnQ or, in the alternative, all fields that were produced in an unrelated case, *Brown v. District of Columbia*, No. 13-cv-569 (CRC). *See* Pls.' Second Mot. to Compel 2–3. However, both parties agree that the District cannot produce EvidenceOnQ data until a protective order is in place. *See* Pls.' Mot. for Protective Order 2, 5; Def.'s Mot. for Protective Order 1, 8.

At the outset, the Court notes that plaintiffs' motion appears to exceed the scope of their original document requests. *See* Pls.' Second Mot. to Compel 5, 9–12. Plaintiffs seek records relating to currency seizures even though their request for EvidenceOnQ is explicitly cabined to "vehicle or smartphone" seizures. Pls.' Second Mot. to Compel 9. That is reason enough to deny the plaintiffs' motion as it relates to currency. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv); *see also Atlanta Channel, Inc. v. Solomon*, No. 15-cv-1823 (RC), 2020 WL 6781221, at *2 (D.D.C. Nov. 18, 2020)

---

[5] The Court will assume that PDFs fall within the scope of plaintiffs' original requests for documents.

11

("A party may file a motion to compel discovery if another party has failed to respond to a proper discovery *request*." (emphasis added)).

The Court will now turn to plaintiffs' request for all fields and PDFs stored in EvidenceOnQ. The moving party bears the burden of showing that the requested information is relevant. *Lamaute*, 339 F.R.D. at 35. Plaintiffs' only grounds for relevance are that the requested information will aid them in proving the elements of municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), and the requirements of class certification under Rule 23. Pls' Second Mot. to Compel 6. The District concedes that at least some seizure data is relevant. But plaintiffs have failed to articulate why "all fields" and PDFs in EvidenceOnQ are relevant or likely to lead to relevant information, let alone the fields produced in *Brown*.[6] Plaintiffs' request is broad and largely unqualified. Plaintiffs' showing of relevance must be commensurate with that breadth, though they need only satisfy the relevance standard of Rule 26. Plaintiffs have not made even that minimal showing.[7]

Plaintiffs conclusorily assert that "all fields" are relevant here because many were relevant in *Brown*. But plaintiffs elide any explanation to support that conclusion. Plaintiffs' come closer to the required showing when they list specific categories of information that they purportedly need: "a list of vehicles, smartphones, and other property seized by the MPD prior to the institution

---

[6] Plaintiffs' reply raised for the first time the argument that the District waived any objections to their document requests by failing to state their objections with specificity, submit affidavits or supporting evidence, or expressly refer to relevancy. Pls.' Reply to Def.'s Opp'n to Pls.' Second Mot. to Compel 10–12, ECF No. 79-1. Plaintiffs' motion does not refer to waiver at all and the District has had no chance to respond. *See* Pls.' Second Mot. to Compel. "Courts will generally not consider arguments raised for the first time in a reply brief." *Castaneira v. Mayorkas*, No. 22-cv-1485 (RCL), 2023 WL 4420237, at *4 n.1 (D.D.C. July 10, 2023). Consequently, plaintiffs' waiver arguments are themselves waived. In any event, the moving party bears the burden of showing relevance, *Lamaute*, 339 F.R.D. at 35, and plaintiffs have not made that minimal showing with respect to their request for "all fields."

[7] The Court's relevance-burden analysis overlaps with the District's overbreadth objection. For substantially the same reasons, the Court finds that plaintiffs' request for "all fields" is overly broad. *See Wagener v. SBC Pension Benefit Plan—Non-Bargained Program*, No. 03-cv-769 (RCL), 2007 WL 915209, at *6 (D.D.C. Mar. 26, 2007) (denying as overly broad a request that "seeks discovery beyond the scope of what is relevant to this case").

of a criminal prosecution; how the MPD classified the property and how or if the classification changed over time; when the property was no longer needed; when or if the MPD ever submitted a PD 81-C to the relevant prosecutor, and when or if the MPD ever released the vehicle." Pls.' Second Mot. to Compel 6–7. But plaintiffs never explain *why* these categories of information are relevant to *Monell* liability or class certification. More importantly, plaintiffs never explain why "all fields" and PDFs contained in EvidenceOnQ or previously produced in *Brown* are likely to fall within these categories.[8] Plaintiffs' original requests for production do not mention these categories at all, except for a brief reference to property record forms. The Court does not expect plaintiffs to articulate relevance field-by-field, but they should have at least explained the link between the kinds of fields they seek (i.e., the categories of information) and the legal requirements of *Monell* liability or class certification.[9] *See In re Kincaid*, No. 22-mc-67 (JEB), 2023 WL 6459801, at *2 (D.D.C. Oct. 4, 2023) ("While broad, the relevance standard 'is not without bite,' as courts will not allow 'exploration of matter which does not presently appear germane on the theory that it might conceivably become so.'" (citation omitted)); *see also* Fed. R. Civ. P. 34(b) (requiring requests for production to "describe with reasonable particularity each item or category of items to be inspected"). Plaintiffs decided to lodge a blanket request for "all fields" even though such requests are generally disfavored.[10] *See Doe v. Cabell Cty. Bd. of Educ.*, No. 3:21-cv-31,

---

[8] The Court will not assume that everything produced in *Brown* is relevant to *Monell* liability or class certification in this case.

[9] Nor are plaintiffs required to specify every field that they seek by name. Functional categories that satisfy the requirements of Rule 34 are acceptable. Such requests must be stated with "reasonable particularity." Fed. R. Civ. P. 34(b)(1).

[10] Plaintiffs' third request for documents states that "[t]his request . . . includes but is not limited to records corresponding to the fields on the PD 81 including notes or comments fields." Pls.' Second Mot. to Compel 9. This does not help plaintiffs because it does not justify the breadth of the request or limit its scope. At bottom, the request is for "all fields . . . relating to each vehicle or smartphone." Pls.' Second Mot. to Compel 9. It makes no difference that plaintiffs' already-broad request also includes fields corresponding to those on the PD 81. Additionally, the Court does not need to reach the question of whether plaintiffs' requests are unduly burdensome because they fail at the relevance and incompleteness steps of the analysis (as discussed *infra*) and are overly broad.

13

2022 WL 288193, at *4 (S.D. W. Va. Jan. 31, 2022) ("Broad production requests, such as those seeking all . . . content and data, fail the reasonable particularity test and are disfavored." (internal quotation marks omitted))). Plaintiffs then failed to provide meaningful justification to this Court. It is not enough to simply cite to an unrelated case in which the fields were relevant.

The better course would have been to expressly qualify "all fields" as all fields relating to certain specified categories of information. "All fields" by itself does little to cabin plaintiffs' request to information likely to be relevant. If instead the plaintiffs had requested "all fields" describing the particular circumstances under which a seizure occurred, the duration of that seizure, and the ultimate disposition of the seized property, the nexus to plaintiffs' "claim[s] or defense[s]" would have been clearer, and presumably plaintiffs would have been better equipped to articulate that nexus to the Court as part of their opening brief. Fed. R. Civ. P. 26(b)(1).

Additionally, the documents already produced by the District adequately equipped plaintiffs to make the required showing of relevance. The District has provided plaintiffs with an EvidenceOnQ user guide as well as front-end screenshots showing all EvidenceOnQ data fields.[11] Def.'s Opp'n to Pls.' Second Mot. to Compel 2. Although the District now represents that it does not possess a data dictionary, the District earlier indicated in its response to plaintiffs' fifth request for documents that "after the entry of an appropriate protective order, [it would] produce a data dictionary and non-privileged documents containing information about a data dictionary." Pls.' Second Mot. to Compel 12. This shows that even if the District could have done more to help plaintiffs translate their "functional list" of fields into something more definite and certain, and thereby potentially avoided the need for this motion, the District has not intentionally sought to

---

[11] The user guide explains EvidenceOnQ's features and capabilities in detail. Def.'s Opp'n to Pls.' Second Mot. to Compel 2.

keep plaintiffs in the dark as to potentially relevant seizure data.[12] *See* Pls.' Second Mot. to Compel 14–15. In fact, the District has already prepared a data extract that it is ready to produce to plaintiffs after entry of a protective order. Def.'s Opp'n to Pls.' Second Mot. to Compel 2–3. Plaintiffs allegedly rejected this proposed extract without explaining to the District why it was inadequate.[13] Def.'s Opp'n to Pls.' Second Mot. to Compel 11. Their opening brief and reply go little further in way of explanation. *See* Pls.' Second Mot. to Compel. Without more, plaintiffs cannot also meet their burden of showing inadequacy or incompleteness.[14] *See Barnes*, 289 F.R.D. at 21.

Plaintiffs' request to compel seizure data from "other databases" also fails. Pls.' Second Mot. to Compel 10. Setting aside that this request suffers from the same deficiencies identified *supra*, unlike with MPD's physical property books, here plaintiffs have not shown a more than "theoretical possibility" that there are other electronic databases containing relevant seizure data not also in EvidenceOnQ. *See Barnes*, 289 F.R.D. at 25. Plaintiffs need to show more before the Court will order the District to fish through other electronic databases for non-duplicated seizure records. *See Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997) (explaining

---

[12] The District's explanation that it does not currently possess a data dictionary is sufficient. Def.'s Opp'n to Pls.' Second Mot. to Compel 5 n.5. Plaintiffs apparently have not asked the Court to order the District to create one. Instead, they appear to believe that it justifies the breadth of their request. *See* Pls.' Reply to Def.'s Opp'n to Pls.' Second Mot. to Compel 7–8; *see also Wagener*, 2007 WL 915209, at *4 ("The defendant is not required to produce documents that do not exist.").

[13] Plaintiffs dispute that the District actually made this proposal before filing their opposition. Pls.' Reply to Def.'s Opp'n to Pls.' Second Mot. to Compel 12. In any event, the Court is satisfied that the District will produce at least these fields after the Court enters a protective order.

[14] As already noted, the District has conceded the relevance of seizure data generally and some of the fields stored in EvidenceOnQ. *See* Def.'s Opp'n to Pls.' Second Mot. to Compel 2–3. However, the District's decision not to earlier produce this data does not render their response to plaintiffs' request inadequate or incomplete. Both parties acknowledge that production is improper until a protective order is in place. *See* Pls.' Mot. for Protective Order 2, 5; Def.'s Mot. for Protective Order 1, 8. The protective order is still contested, and so the District has not yet had occasion to produce the fields under conditions that sufficiently avoid the risk of harmful disclosure.

that courts do "not abuse [their] discretion when [they] den[y] a discovery request that would amount to nothing more than a fishing expedition").

### C. The Parties' Motions for a Protective Order

The parties have submitted dueling protective orders governing the use and dissemination of confidential information. Plaintiffs' request differs from the District's principally in that it would permit plaintiffs' counsel to retain confidential information for use in future litigation. *Compare* Pls.' Proposed Protective Order 5, ECF No. 65-1 ("Plaintiffs' counsel may retain and show to any . . . District Court Judge . . . that such materials exist and have been provided by the District of Columbia in discovery in this case . . . .") *with* Def.'s Proposed Protective Order 12, ECF No. 68-2 ("Within 30 days . . . all persons to whom a party has given documents containing [confidential information] shall return or destroy such documents . . . ."). Plaintiffs seem to believe that the District's protective order "weakens civil rights litigants . . . because it allows the District to silo that information that each litigant or member of the bar knows while allowing the District access to information across the board." *See* Pls.' Mot. for Protective Order 8.

It is well established that "discovery requests should not be used to gather information for use in other proceedings." *Johnson v. District of Columbia*, No. 22-cv-3167 (JEB), 2023 WL 4685433, at *3 (D.D.C. July 21, 2023); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."); Fed. R. Civ. P. 26(b)(1) (limiting discovery to matters "relevant to any party's *claim or defense*" and "proportional to the needs of *the case*" (emphasis added)). Moreover, the District's proposed protective order appears tailored to mitigate plaintiffs' public policy concerns. For instance, the District's proposed order would permit plaintiffs' counsel to retain "compilations, subsets, opinions, or other reproductions

or summaries [of confidential information]" for use in future litigation. Def.'s Proposed Protective Order 9. Both parties would be free to use and disclose their own materials without restriction, including materials already in the public domain and lawfully obtained from other non-confidential sources. Def.'s Proposed Protective Order 8. And if a party wishes to use or disclose confidential information, it need only to obtain written authorization from the designating party. Def.'s Proposed Protective Order 9. Modifying the protective order after the end of litigation also remains an option. *See Alexander v. FBI*, 186 F.R.D. 99, 100 (D.D.C. 1998).

The Court is also sensitive to the fact "that the more widely confidential documents are disseminated, it becomes both more likely that those documents will be released, and more difficult for the Court to enforce the terms of its protective order." *Williams v. Taser Intern., Inc.*, No. 06-cv-51 (RWS), 2006 WL 1835437, at *2 (N.D. Ga. June 30, 2006). The Court is concerned that allowing plaintiffs' counsel to retain these confidential records indefinitely and use them in other cases without oversight by this Court or approval by the designating party would needlessly raise the risk of inadvertent disclosure. Given that plaintiffs' public policy arguments do not justify authorizing retention of confidential information in the face of the District's objections, the Court will not enter the plaintiffs' proposed protective order. The Court will enter the District's proposed order instead because it appears to be standard and does not contain the offending retention provision.

## IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT-IN-PART** and **DENY-IN-PART** plaintiffs' motion to compel production of MPD property books, **DENY** plaintiffs' motion to compel electronic databases, **DENY** plaintiffs' motion for a protective order, and **GRANT** defendant's cross-motion for a protective order.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: January 11, 2024

_____
Royce C. Lamberth
United States District Judge