## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **OLIVIA PARROTT,** *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:21-cv-002930-RCL** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration, or in the alternative, motion for leave to amend [107] is symptomatic of their broader failure to diligently litigate this case. Granting either of their requests at this late stage would be unwarranted and would significantly prejudice the District. As explained below, both requests should be denied because they are made too late and with too little merit.

First, Plaintiffs ask this Court to reconsider its ruling on the District's motion to dismiss because (1) the D.C. Circuit's opinion in *Asinor v. District of Columbia*, 111 F.4th 1249 (D.C. Cir. 2024), purportedly compels revision of the Court's analysis of their Fourth and Fifth Amendment claims; (2) the Court "misconstrued" their allegations in support of their Fourth Amendment claim; and (3) the Court erred in its analysis of Plaintiffs' takings claim. As an initial matter, Plaintiffs had ample time to raise these arguments previously and failed to do so. *Asinor* was decided more than six months ago, and the Court "construed" Plaintiffs' allegations more than two years ago. Indeed, on April 20, *2023*, Plaintiffs filed a notice stating their intent to file a motion for reconsideration "within the next three weeks approximately." That motion never came. Next, Plaintiffs represented to the Court on October 2, 2024, that they "may" need

to seek reconsideration of the motion to dismiss order based on *Asinor*.  They then did nothing for four months, eventually filing their motion with only three weeks left in fact discovery.  Regardless, Plaintiffs' reliance on *Asinor* is a red herring.  Rather than conflict with *Asinor*, this Court's analysis essentially predicted it.  In reality, Plaintiffs invoke *Asinor* solely in an attempt to cover up the fact that the "merits" of their motion for reconsideration have existed for more than two years.  But the motion is meritless nonetheless.

Second, anticipating that the Court will acknowledge the belated and flawed nature of their motion for reconsideration, Plaintiffs seek leave to amend so that they may resurrect the claims themselves.  The Court should reject the motion for leave to amend out-of-hand because it fails to comply with the local rules.  Local Rule 15.1 requires the party seeking leave to amend to attach the proposed amended complaint.  Plaintiffs fail to even acknowledge that requirement let alone comply with it.  Nor did they satisfy their obligation to confer before filing under Local Rule 7(m); indeed, counsel's 7(m) certification does not even feign compliance as to their request to amend the operative complaint.  Even if the Court considers the merits of this request, ample grounds exist to deny it—it comes more than two years after the Court's opinion on the District's motion to dismiss and more than six months after *Asinor*; it would add claims that are futile; and it would force the District to redo discovery.

## BACKGROUND

On March 15, 2022, Plaintiffs filed the Amended Complaint [18].  The District moved to dismiss [22], and on February 22, 2023, the Court granted the District's motion in part and denied it in part [45] (February 22 Order).  Less than two months later, Plaintiffs filed a "notice" [51] that stated their intent to seek reconsideration of the February 22 Order "within three weeks approximately."  Plaintiffs did not identify any basis for seeking reconsideration in their notice.

On May 31, 2023, the Court entered a scheduling order [52] setting November 30, 2023, as the close of fact discovery on liability and class issues.  On November 6, 2023, Plaintiffs, with the District's consent, moved to extend discovery until February 29, 2024, and the Court granted that motion [61].  On January 29, 2024, Plaintiffs, again with the District's consent, moved to extend discovery until June 28, 2024, and the Court granted that motion [87].  On June 3, 2024, without the District's consent, Plaintiffs moved for their third extension of discovery [88], seeking an extension until January 15, 2025.  After the District filed its opposition [90], explaining why Plaintiffs had not been diligent during the prior five months in litigating the case, the Parties agreed to compromise and jointly moved for an extension of discovery until October 28, 2024 [93]. The Court granted that motion [94], and set the close of discovery at October 28, 2024.

In September 2024, Plaintiffs approached the District about *another* extension of discovery.  In response to Plaintiffs' request for a six-month extension, the District proposed a three month extension.  *See* Def.'s Opp'n to Pls.' Mot. to Extend Discovery Deadlines [102] at 2. Plaintiffs rejected that proposal and moved for a six-month extension.  Pls.' Mot. to Extend Discovery Deadlines [101] (Pls.' Mot. to Extend).  In that motion, Plaintiffs argued that an extension was warranted for several reasons.  First, Plaintiffs argued that a deposition on September 25, 2024, "revealed" the names of several witnesses and that Plaintiffs needed additional time "to depose these witnesses."  *Id*. at 4.  Plaintiffs conducted a single deposition on October 23, 2024, and have not taken any others since then.  Second, Plaintiffs argued that *Asinor* "may" require Plaintiffs to seek reconsideration of the February 22 Order and asserted "that should *Asinor* warrant reconsideration of the Court's earlier Order, it would be much more convenient to all involved if discovery were still open and accommodations could more easily be

made for the wider set of issues that would then be in play." *Id*. at 5. Plaintiffs have now filed that motion for reconsideration, but did so knowing that discovery would close before the motion was fully briefed. Finally, Plaintiffs argued that the addition of new co-counsel would provide "Plaintiffs the resources this case demands and help move things along in a timely and expeditious manner." *Id*. at 6.

While the Court did not provide Plaintiffs with the six-month extension they requested, on October 28, 2024, the Court extended the close of fact discovery by more than four-and-a-half months to March 15, 2025 [106]. Between October 28, 2024, and February 12, 2025, the totality of Plaintiffs' discovery efforts are as follows: on November 12, 2024, the Parties had a meet-and-confer during which Plaintiffs were expected to identify what they perceived as outstanding discovery issues, but they were unprepared to do so; on November 14, 2024, the District sent a letter again requesting that Plaintiffs' identify purportedly outstanding discovery issues, Def.'s Ex. 1; on December 16, 2024, Plaintiffs sent a letter identifying purported deficiencies in the District's discovery responses and stated that they intended to file a motion to compel "as soon as practicable," Def.'s Ex. 2; and, on January 13, 2025, the District responded to the December 16 Letter, and for the most part, categorically rejected Plaintiffs' arguments, making clear that the Parties were at an impasse to the extent Plaintiffs intended to continue to pursue the disputed requests, Def.'s Ex. 3. Plaintiffs have never responded to the District's January 13 Letter.

On February 12, 2025, Plaintiffs served their sixth set of requests for production, with the District's responses due on the final day of discovery, and on February 13, 2025, Plaintiffs served their fourth set of interrogatories, with the District's responses due after the close of discovery. On February 27, 2025, Plaintiffs served a Rule 30(b)(6) deposition notice, and fifteen deposition notices for fact witnesses. The noticed dates included March 12, 13, and 14, which

presumably meant that counsel for Plaintiffs were available on those dates.  After conferral, Plaintiffs narrowed their list of fact depositions to four witnesses.  Other than one witness who is currently on extended leave, the District promptly confirmed that the other three witnesses were available on March 12, 13, and 14.  As of the time of this filing (approximately 9:20 p.m. on March 11), Plaintiffs have failed to confirm a deposition date and time for any witness.

Also on February 27, 2025, Plaintiffs filed the present motion.  Pls.' Mot. for Reconsideration of the Op. on Def.'s Mot. to Dismiss or, in the Alternative, Leave to Amend the First Am. Compl. [107] (Pls.' Mot.).

## LEGAL STANDARDS

### I.  <u>Motion for Reconsideration</u>

"[T]he judicial interest in finality typically disfavors reconsideration," and such motions should only be granted "as justice requires."  *Montgomery v. IRS*, 356 F. Supp. 3d 74, 79 (D.D.C. 2019), *aff'd*, 40 F.4th 702 (D.C. Cir. 2022).  "The 'as justice requires' standard may be met where the district court has 'patently' misunderstood the parties, strayed far afield of the issues presented, or failed to consider a controlling or significant change in the law or facts since the submission of the issue."  *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 9 (D.D.C. 2011) (citation omitted).  "Ultimately, the moving party has the burden to demonstrate that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied."  *Montgomery*, 356 F. Supp. 3d at 79 (D.D.C. 2019).  That is because "[t]he efficient administration of justice requires that there be good reason for a court to reconsider an issue already litigated by the parties: 'Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'"  *United States v. All Assets Held at Bank Julius*, 502 F. Supp. 3d 91, 95 (D.D.C.

2020), *aff'd sub nom. United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th

426 (D.C. Cir. 2022) (quoting *Isse v. Am. Univ.*, 544 F. Supp. 2d 25, 30 (D.D.C. 2008)).  In the

D.C. Circuit, "it is well-established that motions for reconsideration … cannot be used as an

opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle

for presenting theories or arguments that could have been advanced earlier."  *Estate of Gaither*,

771 F. Supp. 2d at 10 (quotations omitted).

## II.    <u>Motion for Leave To Amend</u>

Under Rule 15, if responsive pleadings have been filed and the opposing party does not

consent, a party may amend its pleadings "only with … the court's leave," which should be

granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Justice will not "require" a trial

court to grant leave to amend where there is "undue delay, bad faith, undue prejudice to the

opposing party, repeated failures to cure deficiencies, or futility [of the proposed amendment]."

*Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999).  "[U]nder Rule 15, 'the

non-movant generally carries the burden in persuading the court to deny leave to amend.'"

*Robinson v. District of Columbia*, 283 F.R.D. 4, 6 (D.D.C. 2012) (quoting *Nwachukwu v. Karl*,

222 F.R.D. 208, 211 (D.D.C. 2004)).  The decision to grant or deny leave to amend is committed

to the "sound discretion" of the trial court.  *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d

213, 215 (D.C. Cir. 2010).

### ARGUMENT

## I.    <u>Plaintiffs Have Failed To Show That "Justice" Requires Reconsideration of the February 22 Order.</u>

Plaintiffs' motion for reconsideration should be denied because: (1) *Asinor* had no impact

on the Court's analysis of the District's motion to dismiss; (2) the Court did not misconstrue

Plaintiffs' allegations in support of their Fourth Amendment claim; (3) the Court did not err in

dismissing Plaintiffs' takings claim; and (4) no clarification of the Court's ruling on Plaintiffs' procedural due process claim is necessary.

A.    **The *Asinor* Decision Does Not Undermine the Court's Conclusion, It Reinforces It.**

Plaintiffs' headline for why the Court should reconsider its opinion is that *Asinor* constitutes "an intervening precedential opinion that has altered case law for this circuit." Pls.' Mot. at 1. Plaintiffs argue that the facts in *Asinor* "are strikingly similar" and that the *Asinor* decision "bears directly on Plaintiffs' Fourth Amendment claims and touches on Plaintiffs' Fifth Amendment claims." *Id*. at 14. But what Plaintiffs strikingly omit is how *Asinor* actually bears on this Court's prior decision. All they argue is that "the Court should reconsider its prior holdings on both Plaintiffs' Fourth Amendment claim and their Fifth Amendment takings claim in light of the *Asinor* decision." *Id*. at 15. In other words, they never explain what aspect of the Court's decision, if any, runs contrary to *Asinor* such that the Court ought to revisit its prior opinion. There is a very simple explanation: This Court's analysis and decision are fully consistent with what the D.C. Circuit subsequently held in *Asinor*. As such, there is no basis for this Court to revisit that prior decision.

As Plaintiffs recount, in the motion to dismiss briefing, the District argued that "where an initial seizure of property was reasonable, the government's failure to return the items does not state a separate Fourth Amendment claim of unreasonable seizure." Def.'s Mem. in Supp. of Mot. to Dismiss First Am. Compl. [22-1] (Def.'s Mem.) at 10 (quoting *Bennett v. Dutchess Cty.*, 832 Fed. App'x 58, 60 (2d Cir. 2020)); *see also id.* at 11 (collecting cases from the 1st, 7th, and 6th Circuits, as well as an opinion in this district by Judge Cooper); *but see id.* at 11 n.2 (noting that the 9th Circuit had held otherwise). Plaintiffs, in contrast, argued that "[e]ven a seizure reasonable at its inception can become unreasonable because of its duration." *See, e.g.*, Pls.'

Opp'n to Def.'s Mot. to Dismiss First Am. Compl. [32] (Pls.' Opp'n Mem.) at 8–9. The Court considered these arguments and ultimately sided with *Plaintiffs* on this question, holding that "a seizure of property for use as evidence that is valid at its inception may become unreasonable if it outlasts its initial justification." February 22 Order at 11 (citing *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019)). However, the Court went on to clarify that even though the Fourth Amendment *could* apply to property held after a reasonable seizure in *some* circumstances, Plaintiffs' claim in this case "goes far beyond what is cognizable as a matter of Fourth Amendment law, even under *Smith*." *Id*. at 12. As the Court held, "[i]t must be reasonable, at a minimum, for the government to retain property seized as evidence for as long as it is pertinent to an ongoing, lawful criminal investigation or prosecution." *Id*. at 13. Summing up, the Court reasoned that, based on "the allegations in the operative complaint, taken as true," "plaintiffs do not state a claim that those ongoing seizures, which were reasonable at their inception, became unreasonable because of their duration." *Id*. at 14.

Approximately a year and a half later, the D.C. Circuit issued its ruling in *Asinor*. Factually, the *Asinor* cases involved property seized pursuant to lawful arrests, but without any associated criminal investigation or related criminal charges filed. 111 F.4th at 1251–52. Ultimately, the D.C. Circuit held that "the Fourth Amendment requires that any continued retention of [] personal property … must [] be reasonable." *Id*. at 1251. The D.C. Circuit added, however, that the government "can reasonably retain contraband or evidence in an ongoing criminal investigation or trial," and that "[n]othing in our holding limits the government's ability to used seized effects for legitimate law-enforcement purposes." *Id*. at 1260–61.

In essence, then, this Court accurately anticipated the Circuit's holding in *Asinor*, by rejecting the District's argument that the Fourth Amendment is categorically inapplicable to

retention of property, and proceeding to analyze whether Plaintiffs had stated a claim that such continued retention of property was unreasonable. In other words, the Court has already considered Plaintiffs' Fourth Amendment claims under the doctrine which has now been laid out in *Asinor*. And *Asinor*, of course, says absolutely nothing about the specific factual circumstances of Plaintiffs' claims. To the contrary, *Asinor* featured property that was retained without any criminal investigation or charges, while this Court accurately observed that "all of plaintiffs' seized and retained property was pertinent to an ongoing criminal investigation or prosecution." February 22 Order at 14. As *Asinor* has no bearing on the actual reason for which Plaintiffs' Fourth Amendment claims were dismissed, and thus does not constitute a "controlling … change in the law … since the submission of the issue," *Estate of Gaither*, 771 F. Supp. 2d at 9, reconsideration should be denied.

**B.    The Court Correctly Construed Plaintiffs' Fourth Amendment Claim.**

Once Plaintiffs' misplaced reliance on *Asinor* is dispatched, it becomes the case that Plaintiffs are seeking reconsideration of a more than two-year-old decision. In other words, every argument addressed by the District below could have been made more than two years ago—and before the Parties were on the cusp of completing fact discovery. Justice requires rejecting Plaintiffs' belated motion for reconsideration, not rewarding them for their years-long delay.

Plaintiffs' alternative argument for reconsideration of the dismissal of their Fourth Amendment claim is that the Court "misinterpreted" their allegations, Pls.' Mot. at 1, in that "[t]he Court erred when interpreting [their] Fourth Amendment claim as asserting a *per se* rule that the government had no evidentiary interest in all seized property after processing or having a reasonable opportunity to process evidence," *id*. at 15. Now, they seek to clarify, "the Plaintiffs

pleaded that the District has a policy or custom of holding property, initially seized and retained

as evidence, well beyond when it was reasonable to do so." *Id*.  They conclude that "[a]fter the

government processes evidence or a reasonable time has passed to do so, the government's

legitimate investigatory or protective purpose should end, absent a reasonable governmental

interest in keeping the property." *Id*. at 19.

       Plaintiffs' arguments are clearly and plainly foreclosed.  For one, Plaintiffs made

precisely the same points in their opposition to the District's motion to dismiss.  *See* Pls.' Opp'n

Mem. at 11 ("The District has not articulated any justification for retaining the vehicles and the

smartphones past the point where they were processed for potential evidence."); *id*. at 15

("[O]nce a vehicle is processed for evidence and the evidence is preserved the government has

no further need to retain the vehicle.") (citing *Krimstock v. Kelly*, 464 F.3d 246, 255 (2d Cir.

2006)).  Because the Court has already considered and rejected this precise theory, it should

decline to reconsider it.  *Estate of Gaither*, 771 F. Supp. 2d at 10.

       To the extent that Plaintiffs now attempt to season these repeated arguments with the fact

that the criminal investigations and prosecutions related to their property were of third parties,

and not of Plaintiffs themselves, *see e.g.*, Pls.' Mot. at 18–19, that is plainly an argument which

they already presented, *see* Pls.' Opp'n Mem. at 14 (urging that "great weight" should be

accorded to the interests of the Plaintiffs as "innocent owners" of the seized property); *id*. at 16

(recounting the facts of the seizure of Ms. Parrott's vehicle, including that the arrestee was a

different person).  Perhaps Plaintiffs believe they can reargue their point more persuasively by

emphasizing these facts, but that is not a legitimate basis for a motion for reconsideration.  *See*

*Estate of Gaither*, 771 F. Supp. 2d at 9 (rejecting motion for reconsideration which "raises

arguments that should have been, but were not, raised in their underlying Motion"); *see also All*

*Assets Held at Bank Julius*, 502 F. Supp. 3d at 98 ("Judges are not like pigs, hunting for truffles buried in briefs or in the record.") (quoting *Jeffries v. Barr*, 965 F.3d 843, 861 (D.C. Cir. 2020)).

In any case, even if the Court were to consider these additions to Plaintiffs' opposition (which was, again, filed more than two years ago), they would not require a different result. The Court's decision did not in any sense rely on whether the owner of seized property was also the target of a pending criminal investigation or the defendant in a criminal matter. Instead, the Court held that "the allegations in the amended complaint belie any notion that the property seized was not pertinent to *an* ongoing investigation or prosecution." February 22 Order at 14 (emphasis added). Indeed, the Court fully recognized that none of the named Plaintiffs were directly targeted by the cited investigations and prosecutions. *Id*. On this point, the Court's holding was far more nuanced than Plaintiffs' motion presents it. Plaintiffs attempt to paint the Court as having held that "a piece of evidence has evidentiary value until a prosecutor says otherwise—even when there is no arrest, no charges filed, there is no investigatory purpose, and where the owner of the property is a third party." Pls.' Mot. at 18. The Court said no such thing. Rather, it held only that it is reasonable for the government "to retain property seized as evidence for as long as it is pertinent to an ongoing, lawful criminal investigation or prosecution." February 22 Order at 13. Thus, the Court plainly left open the possibility that, in circumstances unlike Plaintiffs' own cases—for example, in cases like *Asinor*—the retention of property might *not* be reasonable, no matter if "a prosecutor says otherwise." As such, Plaintiffs' protestation that the Court's holding leaves "prosecutors [as] the arbiter of whether property can be returned," Pls.' Mot. at 19, is a red herring, and should be disregarded as facially untrue, inapplicable, and no real basis to reconsider.

C.    **The Court's Takings Clause Analysis Was Correct.**

Plaintiffs also seek to revive their Fifth Amendment Takings Clause claim.  First, they argue that *Asinor* requires its resuscitation.  Second, they argue that already rejected legal theories should do the same.  Neither argument has merit.

1.    ***Asinor* Provides No Basis For Reconsidering the Court's Taking Analysis.**

Plaintiffs correctly concede that *Asinor*, at best, only touches on the Takings Clause "sparingly."  Pls.' Mot. at 20.  In fact, it did not make any ruling whatsoever with respect to the Takings Clause.  Rather, *Asinor* merely identified *Tate v. District of Columbia*, 627 F.3d 904 (D.C. Cir. 2010) as a case that the District had argued demonstrated the lack of a Fourth Amendment claim for unduly retained property; however, the D.C. Circuit observed that the circumstances were so different that "*Tate* sheds little light on this case."  111 F.4th at 1260. *Asinor* plainly did not set forth any new interpretation of the Takings Clause through its invocation of *Tate*.  Accordingly, there is no reason to read *Asinor* as "controlling" law that requires reconsideration of this Court's Takings Clause analysis. *See Estate of Gaither*, 771 F. Supp.2d at 9.  Indeed, Plaintiffs' argument to the contrary does not actually discuss the holding in *Asinor* at all.  It instead consists wholly of a discussion of *Tate*—arguments that could have been made in their opposition, which already addressed *Tate*.  *See* Pls. Opp'n Mem. at 54 (arguing that "*Tate* is distinguishable because it does not address the seizure of property in connection with criminal investigations").

Even if considered, Plaintiffs' reliance on *Tate* is misplaced.  Plaintiffs correctly note that in *Tate* the D.C. Circuit held that there was no unlawful taking and therefore no compensation due, but they go on to make the completely unsupported leap that "[i]f the taking occurred without due process, then a taking claim lies."  Pls.' Mot. at 21.  To the contrary, as this Court

held, "every Circuit to consider the question has held that the seizure and retention (or even destruction) of property pursuant to a valid exercise of the police power can never constitute an unlawful taking, even outside the forfeiture context." February 22 Order at 28 (collecting cases). As to seizure, the Court correctly noted that "the initial seizure of that property was lawful," *id*. at 30, and as to retention, Plaintiffs' Fourth Amendment attack on the District's police power was unavailing. *Id*. Simply put, whether Plaintiffs have adequately alleged that the District does not afford them an adequate procedure under due process to seek the return of their property has nothing to do with whether the District had a valid basis for utilizing the police power to seize and retain property.

### 2.    Plaintiffs' Fail To Justify Revisiting the Court's Takings Holding.

Expanding on this theme, Plaintiffs then shift their scope to attack the Court's takings analysis on its own terms. First, Plaintiffs take particular exception to the notion that their property "was taken or kept for a criminal prosecution," and that they therefore had given the Court no reason to hold that the continued retention of such property could constitute a seizure prior to the termination of an associated criminal case. Pls.' Mot. at 21. Once again, Plaintiffs overstate the Court's actual holding. The Court correctly held that "the allegations in the amended complaint belie any notion that the property seized was not pertinent to an ongoing *investigation* or prosecution." February 22 Order at 14 (emphasis added).

Next, Plaintiffs urge the Court to reconsider its analysis on the basis of a trio of circuit court opinions. *See* Pls.' Mot. at 22–24 (citing *Baker v. City of McKinney*, 84 F.4th 378 (5th Cir. 2023), *reh'g en banc denied* 93 F.4th 251 (Feb. 14, 2024); *Slaybaugh v. Rutherford Cnty.*, 114 F. 4th 593, 597 (6th Cir. 2024), *reh'g en banc denied* Oct. 16, 2024; and *Yawn v. Dorchester Cnty.*, 1 F.4th 191, 195 (4th Cir. 2021)). Besides the fact that each of these cases are from outside this

Court, none of them actually supports Plaintiffs' legal theory, or contradicts this Court's holding.[1]

First, Plaintiffs cite *Baker*, a case in which the Sixth Circuit found there was no taking and denied *en banc* review, with the Supreme Court also denying certiorari. Nevertheless, Plaintiffs urge the Court to consider Justice Sotomayor's statement concurring in denial of certiorari in which she quotes the background principle of *Armstrong v. United States*, 364 U.S. 40, 49 (1960) that the "Takings Clause was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Pls.' Mot. at 22 (citation omitted). This citation is not novel law; Plaintiffs had the opportunity themselves to address the underlying holding of *Armstrong* in their prior briefing. *See* Pls.' Opp'n Mem. at 53.

Similarly, Plaintiffs point to *Slaybaugh* as a case in which "[t]he Sixth Circuit also [] rejected a categorical 'police power' exception to the Fifth Amendment," Pls.' Mot. at 23, and cite *Yawn* for the proposition that the Fourth Circuit rejected the same "notion that the use of the police power immunizes the government from a takings claim," *id*. But even with these new citations, Plaintiffs are merely shadowboxing against the District's motion to dismiss, *not* the Court's actual holding in the February 22 Order. While the District did argue that use of the police power could not, as a categorical rule, give rise to a taking, the Court held that it "need not accept the District's argument in every particular." February 22 Order at 28. And as a result, the Court did *not* dismiss Plaintiffs' Takings Claim on the sole basis that there was a *per se* rule that

---

[1]    The Court should also specifically decline to consider *Yawn* because it was issued over a year before Plaintiffs' motion to dismiss opposition brief was filed, and thus was fully available for them to argue at that time, rather than saving it for now. *See Estate of Gaither*, 771 F. Supp. 2d at 10.

use of police powers are not takings.  Rather, the Court assessed that, even under caselaw such as *Frein v. Pa. State Police*, 47 F.4th 247 (3d Cir. 2022), in which the Third Circuit did not find any such absolute bar to a takings claim, Plaintiffs' allegations in *this case* do not state a claim.  *See* February 22 Order at 29–30.  In any case, Plaintiffs completely fail to engage with persuasive holdings in other Circuits which clearly indicate, under more similar factual contexts, that the actions at issue here are not takings.  *See, e.g.*, *Lafaye v. City of New Orleans*, 35 F.4th 940, 943 (5th Cir. 2022) ("[T]o allege a cognizable takings claim, a plaintiff must challenge action that would have been legal if only it had been compensated."); *Ostipow v. Federspiel*, 824 Fed. App'x 336, 342 (6th Cir. 2020) ("The weight of authority holds that claims emanating from the use of police power are excluded from review under the Takings Clause."); *Lech v. Jackson*, 791 Fed. Appx. 711, 717 (10th Cir. 2019) ("[W]hen the state acts to preserve the safety of the public, the state is not, and, consistent with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate affected property owners for pecuniary losses they may sustain in the process.") (quotations omitted)); *Johnson v. Manitowoc County*, 635 F.3d 331, 336 (7th Cir. 2011); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332–33 (Fed. Cir. 2006).

In sum, even courts that have raised questions concerning the government's ability to hold private property pursuant to the police power recognize that there are clearly circumstances in which such actions are not takings.  Plaintiffs themselves seem to recognize that, making the obvious concession that their argument "is not to say that the government should be prevented from holding cars and cell phones that may be necessary for an investigation or prosecution." Pls.' Mot. at 24.  But that was the essence of this Court's actual conclusion two years ago, since

15

"each of the plaintiffs' property is or was being retained as evidence in a criminal proceeding that is ongoing or still in contemplation."  February 22 Order at 29–30.

### D.    No "Clarification" of the Court's Due Process Analysis Is Warranted.

Plaintiffs' final argument, which seeks to revive certain aspects of their due process claim, is clothed in the guise of merely seeking "clarification" as to the scope of the Court's holding.  But "[t]he general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend."  *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018) (citation omitted).

Plaintiffs, basically, seek the Court's permission to pursue "money damages under § 1983 for an alleged deprivation of due process rights continuing beyond the date that any criminal case was charged." Pls.' Mot. at 25.  But the Court was clear:  Ms. Parrott had plausibly stated a claim only for a challenge to the retention of her property for the period before the institution of a criminal proceeding.  The entire crux of the Court's analysis on this point was that Superior Court Rule of Criminal Procedure 41(g) "does not apply—at least not reliably—where no criminal case has ever been brought before the Superior Court."  February 22 Order at 16; *see also id*. at 17 (evaluating "whether Superior Court Rule 41(g) is an available remedy at all . . . where no criminal case has been charged").  As such, the Court noted that Ms. Parrott has "standing at least to pursue money damages under § 1983 for an alleged *temporary* deprivation of her due process rights," *id*. at 16 n.5 (emphasis added), referring to the "delay of approximately three months between the seizure and the institution of the criminal case in Superior Court," *id*.  As the District argued in its motion to dismiss brief, Rule 41(g) provides an adequate remedy for the return of property, including when a criminal case has been instituted. *See* Def.'s Mem. at 29 (citing *Cousart v. Metro Transit Police Chief*, 101 F. Supp. 3d 27, 28

16

(D.D.C. 2015); *Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980); *Jenkins v. District of Columbia*, Civil Action No. 16-118, 2017 WL 6211103, at *4 (D.D.C. Mar. 28, 2017); *Baird v. Holton*, 806 F. Supp. 2d 53, 58 (D.D.C. 2011)).

Tacitly conceding the clear outline of the Court's holding, Plaintiffs resort to another swing at Rule 41(g), arguing that reconsideration would be warranted because "[e]ven assuming Rule 41(g) is an adequate remedy in cases involving continued retention of a criminal defendant's vehicle, it is not adequate in cases involving seizures and prolonged retentions of vehicles owned by innocent third parties like Plaintiffs." Pls. Mot. at 26; *but see All Assets Held at Bank Julius*, 315 F. Supp. 3d at 99 ("[S]uch a motion [for clarification] cannot open the door to re-litigating a matter that the court has considered and decided.") (quotations omitted). Plaintiffs offer absolutely no support for this proposition. In fact, the protections of Rule 41(g), such as "prompt access to a neutral magistrate and notice of their opportunity to be heard by that magistrate," Pls. Mot. at 26, are fully available to a third party just the same as to a criminal defendant. *See, e.g.*, *Jenkins*, 2017 WL 6211103, at *1–2 (noting that two of the plaintiffs were third parties to the criminal prosecutions for which their property was seized). And it is not the least bit odd that third parties are not afforded "prompt notice of the basis for the charges" when they are not the ones being charged at all. Pls.' Mot. at 26. Nor do Plaintiffs cite any case suggesting that the District owes them the right to counsel for assistance in reclaiming their property; the Sixth Amendment right to counsel applies to "the accused," not to anyone who may be aggrieved in some other manner by the proceeding. *See* U.S. Const. amend. VI. This point is emblematic of Plaintiffs' flawed conclusion, that it would be "absurd" if "the property rights of criminal defendants merit greater protection than those of innocent owners;" there are simply

different constitutional provisions protecting the rights of criminal defendants, and Plaintiffs are not criminal defendants. Pls.' Mot. at 27.

Next, regarding the dismissal of Plaintiffs' notice claims, Plaintiffs confusingly ask the Court to clarify that ruling, although they "do not challenge [it] here." *Id*. at 28. The necessity of the Court doing so is left unstated. Rather, the Court conclusively held that Plaintiffs had plausibly stated a claim to the extent that there was alleged to be insufficient notice of what procedures were available to Plaintiffs to seek the return of their property, because it was uncertain whether Rule 41(g) would apply, but that Plaintiffs had failed to state a claim that they had not received notice of the seizure itself. *See* February 22 Order at 22–26. Because they failed to adequately allege that they had not received notice of the seizure, it is obviously not the case that any purported failure of the District to have a policy of providing notice "was the cause the violation of the constitutional rights of Ms. Parrott, Mr. Joyner, and Mr. Iracks and the other class members." Pls.' Mot. at 27 (quoting Am. Compl. ¶ 393). *Maldonado v. District of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) is not on point here because, there, the plaintiffs alleged that despite a policy of providing notice, they did not get it; here, regardless of the policies regarding notice, Plaintiffs *did* get notice, or at least failed to state a claim that the District had failed any obligation to provide it. February 22 Order at 23–25 (noting that the District was not required to give immediate notice, and not enough time elapsed before Plaintiffs became aware of the seizures to impute a failure on the District's part to give notice within a reasonable time). To the extent Plaintiffs are concerned about a lack of notice about "available remedies," Pls'. Mot. at 28, that aspect of their notice claim is clearly live, insofar as the pivotal question is whether Rule 41(g) applies to Plaintiffs or not. *See* February 22 Order at 26.

II.    <u>**Plaintiffs' Motion for Leave to Amend Should Be Denied.**</u>

    A.    <u>**Leave to Amend Is Not Warranted Under Rule 15(a).**</u>

Lastly, Plaintiffs offer the passing suggestion that, "[i]f the Court believes that the Complaint, as currently drafted, cannot support [their] understanding of Counts I or V, then Plaintiffs would respectfully request leave to file an amended complaint clarifying the nature of this claim [*sic*]." Pls.' Mot. at 29. Leave should be denied.

Under Rule 15(a), leave to amend may be denied where there has been "undue delay," "bad faith or dilatory motive on the part of the movant," or "undue prejudice to the opposing party by virtue or allowance of the amendment." *Philipp v. Stiftung Preussischer Kulturbesitz*, Civil Action No. 15-00266, 2021 WL 3144958, at *6 (D.D.C. July 26, 2021), *aff'd*, 77 F.4th 707 (D.C. Cir. 2023). All three apply here.

First, "[l]eave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint." *Id.* at *7; *see also Savignac v. Jones Day*, 341 FRD 120, 124 (D.D.C. 2022); *Heller v. District of Columbia*, 290 FRD 1, 4 (D.D.C. 2013); *Unique Industries, Inc. v. 965207 Alberta Ltd.*, 764 F. Supp. 2d 191, 207–08 (D.D.C. 2011). As explained above, at best, Plaintiffs have possessed the basis for their motion for leave to amend for at least six months, but in reality, they have known the basis for more than two years.

Second, the timing of Plaintiffs' motion is, at a minimum, curious, as it comes when Plaintiffs have failed to do what they told the Court they would do—imminently—in their October 2, 2024 motion to extend discovery. That is, Plaintiffs have failed to diligently litigate this case. Conveniently, if Plaintiffs were granted leave to amend, which would presumably be accompanied by *another* request to extend discovery, any extension of discovery to account for

amendment of the Complaint would effectively excuse their lack of diligence concerning

discovery during the last 12 months.

Third, the District would suffer undue prejudice if Plaintiffs were allowed to amend their

Complaint to add new claims as fact discovery was about to close.  The claims that Plaintiffs

propose to add, while similar to the existing claims in that they involve seized property

generally, are fundamentally different from the existing claims in terms of discovery.  If

Plaintiffs had sought leave to amend, say, two years ago, then the District could have conducted

discovery into all claims at the same time, which obviously would have been more efficient.  If,

for example, Plaintiffs were allowed to revive their Fourth Amendment and Takings Clause

claims, they would presumably seek additional discovery concerning MPD policies and

procedures and the District would likely have to go back to the same individuals and have those

individuals conduct separate searches when that could have been avoided.  Plaintiffs conceded as

much when they argued in their motion to extend discovery that any motion for reconsideration

should be resolved sooner rather than later because "it would be much more convenient to all

involved if discovery were still open and accommodations could more easily be made for the

wider set of issues that would then be in play."  Pls.' Mot. to Extend at 5.

Finally, as outlined above, none of Plaintiffs' legal arguments, even if considered, would

justify reversal of the Court's prior ruling in dismissing those claims.  The only new concrete

allegation they raise in this section of their brief is that "the case involving Ms. Parrott's car has

ended."  Pls.' Mot. at 29–30.  But the mere status of a criminal matter is something the Court can

take judicial notice of if necessary.  *See Lewis v. Gov't of D.C.*, 195 F. Supp. 3d 53, 56 n.3

(D.D.C. 2016).  Plaintiffs offer no other corroborating factual support pertaining to this

amendment, such as the time period that has elapsed since that case concluded, or any efforts on

Ms. Parrott's part to seek the property's return through Rule 41(g) or any other method.  In the absence of such necessary factual development, leave to amend should be denied.  *See Asinor*, 111 F.4th at 1261 ("Moreover, even when there the government no longer has a valid reason to retain lawfully seized property, we do not suggest that it must always return the property instantaneously.").  Plaintiffs mention "additional facts supporting their claim discovered during depositions and the discovery process," Pls. Mot. at 13 n.6, but they do not explain what the facts are, much less why any such facts would justify amendment in the face of legal futility.  This alone is grounds to deny the motion.

### B.    The Court Should Deny Leave to Amend for Failure To Comply with the Local Rules.

Plaintiffs' request for leave to amend should also be denied because Plaintiffs have failed to comply with the local rules of this Court.  Local Rule 15 requires that "[a] motion for leave to file an amended pleading shall attach, as an exhibit, the copy of the proposed pleading as amended."  *See also Strumsky v. Washington Post Co.*, 922 F. Supp. 2d 96, 101 (D.D.C. 2013).  Here, Plaintiffs failed to file an amended pleading along with their motion to amend the Complaint and failed to provide any explanation of their proposed amendments beyond "clarifying the nature of [Counts I and V]" and the fact that "the case involving Ms. Parrott's car has ended."  Pls.' Mot. at 29–30.  Without a proposed amended complaint, the Court cannot "evaluate the merits of [the] request for leave to amend."  *Johnson v. District of Columbia*, 49 F. Supp. 3d 115, 122 (D.D.C. 2014); *see also Alston v. Flagstar Bank, FSB*, 609 Fed. App'x 2, 4 (D.C. Cir. 2015) (affirming denial of motion for leave to amend complaint where plaintiff did not include amended complaint with filing).

Additionally, Plaintiffs failed to comply with Local Rule 7(m).  For non-dispositive motions, Local Rule 7(m) requires counsel "to discuss the anticipated motion with opposing

counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." Plaintiffs' counsel contends that they "made opposing counsel aware of Plaintiffs' intention to file for reconsideration in light of the *Asinor v. District of Columbia* decision," Pls.' Mot. at 33, but do not suggest that they complied with Rule 7(m) with respect to their motion for leave to amend.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion for reconsideration and deny their motion for leave to amend.

Dated: March 11, 2025.                    Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
BRENDAN HEATH [1619960]
HELEN M. RAVE [90003876]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 805-7512
richard.sobiecki@dc.gov

*Counsel for Defendant*

22