# EXHIBIT 1

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Office of the Attorney General

**ATTORNEY GENERAL**
**BRIAN L. SCHWALB**

**Civil Litigation Division**
**Equity Section**



November 14, 2024

<u>**VIA EMAIL**</u>

William Claiborne
ClaiborneLaw
Suite 300
717 D Street, NW
Washington, D.C. 20004
*Counsel for Plaintiffs*

Re:   *Parrott, et al. v. District of Columbia*, Case No. 1:21-cv-02930-RCL (D.D.C.)

Dear Counsel:

During the Parties' discussions concerning Plaintiffs' most recent request for an extension of the discovery deadline, which was ultimately granted in part, Plaintiffs took the position that there were many outstanding issues with regard to their discovery requests. In response, the District explained that it was not aware of any remaining issues and requested that Plaintiffs identify the issues that they believed were outstanding. Plaintiffs ultimately proposed a meet and confer so that they could identify the purportedly open issues. To facilitate the Parties' discussion, the District requested that Plaintiffs provide a list of topics that Plaintiffs intended to raise during the meet and confer. Plaintiffs failed to provide that list, nor did they provide any type of agenda. As a result of Plaintiffs' failure, the November 12, 2024 meet and confer was not a productive use of the Parties' time. Plaintiffs raised issues in a random and haphazard fashion and then expected the District to respond in real time despite having been denied the opportunity to adequately prepare. Ultimately, Plaintiffs agreed to provide a list of issues that they believe remain outstanding, and the District awaits the promised list. The District summarizes what was discussed during the November 12, 2024 meet and confer below.

- Plaintiffs claimed that the District had not identified the databases that are used to track property seized by MPD, had not identified the fields available in said databases, and had not identified any individuals who are knowledgeable about said databases.

As we explained during the meet and confer, Plaintiffs' claims are not accurate. Plaintiffs have been aware for more than a year that EvidenceOnQ is the database that MPD uses to track seized property, and the District identified the fields available in EvidenceOnQ to Plaintiffs more than

six months ago.  The District also identified for Plaintiffs the individual most knowledgeable at MPD in how EvidenceOnQ works (Commander Sean Conboy) and Plaintiffs then deposed Cmdr. Conboy.  To the extent Plaintiffs believe that the Department of Forensic Sciences (DFS) has any relevance to this litigation, the District identified for Plaintiffs in June 2024 an individual who was knowledgeable about how DFS tracks and stores property.

Further, Plaintiffs served a Rule 30(b)(6) notice on the District on June 13, 2024, that included topics relating to databases used to track seized property.  The District responded on June 28, 2024, agreeing to produce witnesses who would address many of Plaintiffs' identified topics, and invited Plaintiffs to participate in a meet and confer to move that process forward.  Plaintiffs never responded.  When the District proposed to Plaintiffs that, to the extent they believe that still lack certain information about the identified databases, a Rule 30(b)(6) deposition would be the most efficient course to address those concerns, Plaintiffs rejected that approach.  Plaintiffs did not provide a reason for their rejection, other than their perceived right to conduct discovery in any way that they see fit.  The District disagrees with Plaintiffs' understanding of the Federal Rules.  Contrary to Plaintiffs' belief, they have no right under the rules to depose any District employee they choose regardless of whether that individual has any knowledge of the specific claims at issue.

As it stands, Plaintiffs have failed to identify any information responsive to an existing request, relevant to their remaining procedural due process claim, and missing from the District's productions.  Plaintiffs only apparent grievance is that they do not understand the general operation of EvidenceOnQ as well as they would like.  To the extent Plaintiffs expect the District to make additional District employees, who have no personal knowledge related to the underlying facts of Plaintiffs' claims, available for deposition ostensibly to discuss EvidenceOnQ, the District will not do so.  As the District explained, that approach makes no sense:  The witness in that scenario (as well as the District) has no idea what questions Plaintiffs intend to ask and could only ever answer based on his or her own personal knowledge, informed by his or her own individual touchpoints with the department's policies and procedures, which could be limited in a plethora ways that would make the testimony unusable by either side, *if* he or she is able to answer at all.  Discovery is not a game of battleship that entitles Plaintiffs to depose random District employees until they "hit" on one that can answer their questions.  If Plaintiffs are adamant about additional deposition practice, the District remains willing to discuss a Rule 30(b)(6) deposition.  We will entertain a list of proposed 30(b)(6) topics any time prior to February 13, 2025; after that, the burden on the District to identify and prepare a witness or witnesses would be presumptively disproportionate.

- Plaintiffs claimed that the District had not produced any names, addresses, or social security numbers associated with property seized by MPD.

As we explained during the meet and confer, Plaintiffs' claim is not accurate:  The District has already produced names and addresses in EvidenceOnQ that are associated with seized property.  After conceding that their initial claim was inaccurate and acknowledging that the District has already produced those names and addresses, Plaintiffs pivoted to a claim that the names and addresses provided are insufficient because it is unclear to Plaintiffs whether the names provided in connection with seized property are the actual owners of the seized property.  In response, the

District explained that it had provided all information contained in EvidenceOnQ on that front and that understanding the circumstances surrounding a specific piece of seized property would require an individualized inquiry. Notably, Plaintiffs did not identify any support for their implicit claim that the District has not already identified the owners of the seized property.

When asked why the names and addresses of individuals whose property had been seized were relevant to Plaintiffs' procedural due process claim, such that additional discovery on this subject would be justified, Plaintiffs were unable to identify any relevance. Instead, Plaintiffs argued that they needed to identify putative class members in order to determine if the claims of the named Plaintiffs are "typical" of the putative class members' claims. Plaintiffs' relevance argument, however, does not hold water. Plaintiffs appear to misunderstand the purpose of class certification. If Plaintiffs need to investigate the facts surrounding the seizure of property from each putative class member to know if each class putative class member is or is not a member of the putative class, then class certification is obviously not appropriate. Indeed, if that is Plaintiffs' theory of typicality, we would appreciate Plaintiffs confirming in writing so that we can move to strike the class claims now.

- Plaintiffs claimed that the District had not identified cases in D.C. Superior Court that involved motions for the return of property.

As we explained during the meet and confer, Plaintiffs' claim is not accurate: The District produced a list of cases in which motions for the return of property had been filed on December 1, 2023. Plaintiffs then pivoted to a claim that the produced list did not identify situations where (1) a motion for the return of property was filed and (2) there was no existing criminal matter into which it could be filed. That claim was inaccurate as well. As the District reminded Plaintiffs, they received a detailed explanation concerning the produced spreadsheet, which included an explanation about how to identify the situations where motions had been filed where there was no existing criminal matter. *See* December 12, 2023 email from Mr. Sobiecki to Mr. Claiborne. Plaintiffs then asked the District to produce all documents associated with those cases, and the District explained that Plaintiffs had the same access to documents in those cases as it did—the publicly available docket. Plaintiffs responded by noting that several cases were sealed and by demanding that the District produce those documents. As the District had explained previously (on several occasions), the District does not have special or privileged access to documents in a sealed case. In order to obtain those documents, a motion to unseal would need to be filed in D.C. Superior Court. The District also reiterated its willingness to join Plaintiffs in any motion to unseal. Plaintiffs disagreed that any motion to unseal was necessary and instead took the position that, because the D.C. Superior Court is a part of the District government, the District can simply demand that the clerk's office provide it with sealed filings. The Parties agreed to disagree on that point, but the District is of course willing to review any authority Plaintiffs have in support of their position.

Plaintiffs also requested that the District update the spreadsheet produced on December 1, 2023, to account for any recently filed motions for the return of property. The District agreed to do so.

- Plaintiffs claimed that they are entitled to all documents concerning all seizures of property identified by the District in discovery, including all documents relating to any related criminal investigations.

In response, the District noted that Plaintiffs were not seeking relevant documents and that the demand for literally *everything* would be unduly burdensome as well given that Plaintiffs' request concerns more than 10,000 items of property. When asked why those documents were relevant, Plaintiffs stated that they were relevant to determining whether MPD had a valid basis to seize the property. When asked how the validity of the seizure was relevant to Plaintiffs' procedural due process claim, Plaintiffs had no explanation. Unless Plaintiffs can articulate how discovery into the validity of the seizure of their property and the property of the putative class members is relevant to their procedural due process claim, the District will not produce that information.

To the extent Plaintiffs believe that any other discovery issues are outstanding, please provide a detailed list by November 20, 2024, otherwise we will assume that there are none. Further, if you believe we have misstated anything concerning the Parties meet and confer, we look forward to your correction by the same date.

Sincerely,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

By:    */s/ Richard P. Sobiecki*
       Richard P. Sobiecki
       Assistant Attorney General

Cc:    Helen M. Rave, Assistant Attorney General
       Brendan Heath, Assistant Attorney General