# EXHIBIT 2

Adrian F. Snead
asnead@porterwright.com

Porter Wright
Morris & Arthur LLP
2020 K Street, NW
Suite 600
Washington, D.C. 20006

Direct: 202.778.3023
Fax: 202.778.3063

www.porterwright.com

**porter**wright

December 16, 2024

Richard P. Sobiecki
Helen M. Rave
Brendan Heath
Assistant Attorney General
Office of the Attorney General for the District of Columbia
400 6th Street, NW
Washington, DC 20001
Richard.Sobiecki@dc.gov

**RE: Ongoing Discovery Disputes, Parrott, et al. v. DC, Case No. 21-cv-29302**

Dear Rich:

We are reaching out for the final time in an attempt to resolve outstanding discovery issues before we ask the Court to intervene.  We have previously responded to your questions in emails, including those of June 28 and September 19.  Plaintiffs also addressed some of your objections in Mr. Iracks's motion for protective order.  *See* ECF Nos. 95 (Plaintiffs' motion), 100 (District's opposition), 104 (reply). We have also had numerous telephone and Zoom calls where we have tried to explain the issues to the District.

## I.    SURVIVING CLAIMS

To set this out, we want to ensure the District understands our claims. There are three remaining claims after the Court's Order [ECF 46] on Defendants Motion to Dismiss.  The Court dismissed Counts II, III, and IV "only insofar as they allege that defendant unlawfully failed to notify plaintiffs of the fact that their property had been seized."  Therefore, the following claims survive:

**Count II:** "The District deprived Ms. Parrott, Mr. Joyner, and Mr. Iracks and the other class members of their property when it seized their vehicles and their smartphones for use in criminal investigations." Amend. Compl. [ECF 19] at ¶ 388.  The District violated Plaintiffs Fifth Amendment Due Process rights by failing to provide Plaintiffs with notice:

(a)   Of which agency seized the vehicle;

(b)   For what purpose the property was seized (e.g., as evidence or for asset forfeiture);

(c)   The regular procedures for the return of property and what remedies were available to owners who wished to regain their property,

December 16, 2024
Page 2

    particularly that a Rule 41(g) hearing was available to them (if it, in fact, was).

(d) Of the fact that the District agency had completed processing Plaintiffs property;

(e) Of the fact that a prosecution related to their property was instituted, if the prosecution was initiated more than three days after the seizure of their property.

(f) Alternatively, that the Fifth Amendment required the District to have a policy of providing all the notice in paragraphs (a)--(e), but the District had no such policy.

*Id.* ¶¶ 389–93.

**Count III:** "The District deprived owners of their property rights in their vehicles, smartphones, and other property by seizing it and holding it long after it was needed for any evidentiary purposes." The District violated Plaintiffs Fifth Amendment's Due Process rights by:

(a) Failing to provide plaintiffs with notice of their right to prompt post-deprivation hearings;

(b) Failing to provide plaintiffs with prompt post-deprivation hearings;

(c) It is the pattern, practice, and policy of the District to seize and retain indefinitely property and, in some cases, to keep such vehicles without providing prompt post-seizure hearings and without notice of such hearings;

(d) The Fifth Amendment requires the District to provide notice of prompt post-deprivation hearings and provide such hearings, but the District neither established nor had such a policy; and/or

(e) The "District's laws authorizing the seizure and retention of vehicles and smartphones to recover "potential evidence" from them is unconstitutional because it lacks a provision for prompt post-seizure hearings because the District bears the burden of providing the prompt post-seizure hearings and justifying the retention past the time needed to process the property for 'potential evidence.'"

*Id.* ¶¶ 395–403.

**Count IV:** "The District seized Ms. Parrott's, Mr. Joyner's, and Mr. Iracks' and the other class members' vehicles and smartphones for use in criminal investigations and held them for months and years or never gave them back even when they were no longer needed as potential evidence because they had no evidentiary value or because the District through its agents had retrieved all the potential evidence in the vehicles and the smartphones or they had had a reasonable amount of time in which to do so." The District violates Due Process in two ways:

(a) The District's initial seizure of property; and

(b) The District's Refusal to return property when such property is no longer needed. This deprivation is aggravated by the District forcing property owners to file 41(g) motions or wait until MPD allows the property to be released, even if the property has been processed or is otherwise no longer needed.

*Id.* ¶¶ 404–13.

December 16, 2024
Page 3

## II.  OMNIBUS ISSUES.

There are at least three omnibus issues that must be settled: (1) the date range for production, (2) updating discovery responses, and (3) privilege logs.

The District attempts to cabin Plaintiffs' requests to November 5, 2018, forward.  November 5, 2018, appears chosen because it is three years before Plaintiffs' complaint—the time of the statute of limitations.  Plaintiffs are entitled to and need documents *predating* this period to demonstrate D.C.'s pattern or practice of failing to provide notice.[1] D.C.'s refusal to provide documents predating November 2018 is wholly inappropriate and, we believe, sanctionable because it has been intentional and used to deprive Plaintiffs of the necessary information to make their case. Plaintiffs have asked for documents dating back to 2010.  To expedite initial production, please begin producing documents as of November 5, 2015.  While we are not amending our requests, we believe producing documents starting from November 5, 2015, will allow both sides to ascertain whether additional date rangers are necessary.

The District has also failed to update its discovery responses, many of which were first sent to plaintiffs many months ago.  Plaintiffs' first RFPs and Interrogatories are over a year old.  The District must update these responses and include the Bates ranges of produced documents responsive to each RFP.

Third, the District still needs to produce a privilege log.  As the District claims multiple privileges, including law enforcement privilege, we ask that you produce a privilege log within two weeks.

Finally, the District needs to update the initial disclosures to identify by name any witnesses likely to have discoverable information, or that the District may use to support its claims or defenses, and a copy or a description by category and location of documents and electronically stored information in the possession, custody, or control of the District that the District may use to support its claims or defenses. *See* 6 Moore's Federal Practice - Civil § 26.22 (2024). The District did not identify any witnesses by name in the initial disclosures.

Your delay, at this point, is pure gamesmanship. To avoid further undue delay and because we have discussed these issues over the phone several times, <u>we request a response *in writing* (email is fine and preferable) within *72 hours* of receipt of this letter stating</u>: (1) Discovery the District

---

[1] Plaintiffs must show that the District had a policy or practice of violating due process rights. *See, e.g., Garcia v. Harris County*, No. 4:23-CV-0542, 2024 U.S. Dist. LEXIS 53464, at *11 (S.D. Tex. Mar. 26, 2024).  This also requires plaintiffs to demonstrate that D.C. "knowingly ignored a practice that was consistent enough to constitute custom." *Rubio v. District of Columbia*, 23-cv-719 (RDM), 2024 U.S. Dist. LEXIS 122603, at *28 (D.D.C. July 12, 2024) (citing *Hurd v. District of Columbia*, 997 F.3d 332, 338 (D.C. Cir. 2021)) (cleaned up). Plaintiffs also must establish that "facially similar past wrongdoing" occurred which "establish a plausible custom." *Leach v. District of Columbia*, 2022 U.S. Dist. LEXIS 58702, 2022 WL 1316436, at *13 (D.D.C. May 3, 2022).

December 16, 2024
Page 4

continues to objects to; (2) discovery the District does not object to and will produce; and (3) any limitations on the scope of any additional production.

## III.    DOCUMENT REQUEST DEFICIENCIES

### I.    Plaintiffs' First Set of Document Production Requests

#### <u>1st RFP Request No. 1</u>

The District is long delinquent on discovery related to the three originally named plaintiffs plus two additional identified owners.  That information must be produced immediately.

> **RFP No. 1.** With respect to each item of property owned by each IDENTIFIED OWNER including each Named Plaintiff, taken and detained by the MPD for investigation or for civil forfeiture or for any other reason, produce all DOCUMENTS referring to or relating to such property, including but not limited to all police paperwork filled (or populated in a database or computer) out in connection with the seizure, taking, and detention, and handling of the property, and the results of any NCIC, WALES, or similar queries respecting such property, and, including (in an Excel spreadsheet with the data entry field names as headers) all data entries made about such property (or whatever computerized booking database the MPD uses to store booking data about each IDENTIFIED OWNER).

This RFP boils down to all documents of whatever kind, including ESI, in the District's possession or available to the District through common databases (some of which are identified), related to a named plaintiff or an identified owner.  These documents are clearly relevant to our claims and your defenses.

The District's objections are summarized below, as are our responses.  Ultimately, the District stated that it would only produce records for named plaintiffs.  Not only does that fails to meet the request, but the District never provided information about Mr. Joyner.  The District's objections are inappropriate, and it must immediately produce the requested documents.

The District objected to this interrogatory on four grounds:

- Unduly burdensome in part because we ask for all documents regardless of duplication or cumulativeness and to the extent it asks the District to create documents.
  - The District is welcome to de-duplicate any directly duplicative documents.  This is standard procedure in civil discovery.  The fact that the District raises this argument is a sign of obstructionism.  It is unclear what the District means by "cumulativeness".  We are happy to discuss that, but it should not delay a complete rolling response.
- Vague because "taken and detained by MPD for investigation or for civil forfeiture or any other reason."

December 16, 2024
Page 5

- The objection is absurd on its face.  Each word has a precise meaning, and the last clause of the sentence, "for any other purposes," clarifies that property taken for *any other purpose* falls within the scope of the request**.**
  - This is directly relevant to our claims because each piece of property may or may not be related to a suspect or defendant in a papered prosecution in the Superior Court and, therefore, relevant to our claims or your defenses that property owners did or did not receive notice of their right to a hearing and did not have the ability, in fact, to have a hearing even if they had requested one unless there was a papered case.
  - We are willing to discuss limiting the scope of "any property;" however, you have to make a proposal and begin producing the relevant documents, particularly those related to the named plaintiffs and the "Identified Owners" who are also class members.
- Vague and ambiguous because it is not clear what "and the results of NCIC, WALES, or similar queries respecting such property" means.
  - This is, on its face, absurd.  We are naming some of the databases used by MPD to identify property related to a case or a person.  Plaintiffs have no ability to independently search these databases.  Providing the queries and results is well within the scope.
- Proportionality and vagueness objections with respect to William Green and Averil Morrison, the "Identified Owners," and the excuse that the District Court could not identify them "without additional information."
  - We are in class discovery and are entitled to discovery related to potential class members.  This is an improper objection. We are also entitled to discovery about them pursuant to F.R.C.P. 34(a)(1).
  - What has the District done to identify them?  What additional information is needed?  You have never answered either question or asked for responsive information.
  - To the extent you have any persons with those names in the case for the class period, their information is responsive.
  - A protective order has been entered in the case.

The District must immediately produce all requested Documents related to the original three named plaintiffs as well as the two Identified Owners.

To the extent the District believes responsive documents in databases outside of EvidenceOnQ are not appropriate for production, the District must so state and provide sufficient identifying information so that Plaintiffs can raise the District determination with particularity to the Court.

Plaintiffs need for information about other databases which have ESI or pdf "attachments" with data about vehicles and smartphones taken during the class period is especially compelling because EvidenceOnQ does not appear (or the District has not produced) have data fields corresponding to information sought pursuant to this discovery request.  Examples include a field

December 16, 2024
Page 6

indicating that a vehicle or a smartphones was related to a papered Superior Court prosecution; a field indicating that the defendant inspected or was given reasonable opportunity to inspect property that might be subject to Superior Court Rule 16; or for that matter a field indicating that the individual identified with a piece of property is that property's actual owner, not simply the person from who it was seized.

Both Commander Conboy and Ms. Robinson testified in their depositions that the District has other databases to store information about property taken as "evidence" or for civil forfeiture. Plaintiffs may be able to use fields in those databases as "proxies" for fields lacking from EvidenceOnQ, the same way Plaintiffs have used fields such as "CCN number" cross-referenced with a Superior Court database data export for a field indicating whether a piece of property was related to a papered Superior Court prosecution.

Therefore, Plaintiffs need to know as much as they can about the District's property databases to try to develop such "proxies" for data points for which no field exactly corresponds.

The District's repeated demands that Plaintiffs provide specific fields they are asking for underscores why the District must produce data dictionaries for each database it uses. Without those data dictionaries, plaintiffs are blind as to the information the District may have or be able to produce but simply is not. It will also help Plaintiffs narrow requests.


**1st RFP Request No. 2**

> **RFP No. 2.** With respect to each item of property owned by each IDENTIFIED OWNER including each Named Plaintiff, taken and detained by the MPD for investigation or for civil forfeiture or for any other reason, if the person from whom taken or seized was different than the IDENTIFIED OWNER, produce all DOCUMENTS referring to or relating to each person, whether by name, Social Security number, PDID number, arrest number, or any other means of identification, including all police paperwork filled (or populated in a database or computer) out in connection with each such person's arrest, and all radio runs and related documentation, and the result of any NCIC, WALESA, or similar queries respecting each such person's prior arrest record, and, including (in an Excel spreadsheet with the data entry field names as headers) all data entries made about each such person in CJIS or LEADS (or whatever computerized booking database the MPD currently uses to store booking data about each such person).

This RFP boils down to all documents of whatever kind, including ESI, in the District's possession or available to the District through common databases (some of which are identified), related to property owned by an Identified Owner but taken from the possession or custody of another person. For example, Ms. Averil's vehicle was seized from the custody of her daughter. The District must produce information that determine the reason for the seizure and detention

December 16, 2024
Page 7

and whether the property was related to a papered Superior Court prosecution, and possibly for other reasons.

The District made the same objections to RFP No. 2 as to RFP No. 1.  We refer the District to its objections to RFP No. 1.  The District must begin producing the requested information immediately.

To the extent the District believes responsive documents in databases outside of EvidenceOnQ are not appropriate for production, the District must so state and provide sufficient identifying information so that Plaintiffs can raise the District's determination with particularity to the Court.

**1st RFP Request Nos. 3 and 4**

RFP No. 3 requests a data export from EvidenceOnQ, and RFP 4 asks for the same data export from any other database holding data about such property. Plaintiffs are entitled to such discovery —a data export of each field in any database (EvidenceOnQ, RMC (MPD arrest database), DSF database, etc. with data about Mr. Iracks' property including name and address— pursuant to F.R.C.P. 34(a)(1)(A).

> **RFP No. 3.** Please produce all data from all fields (including notes/comment fields and auto-filled fields) contained in EVIDENCE ON CUE relating to each vehicle or smartphone (1) that was already in the possession of the MPD for investigation or as evidence or civil forfeiture or for a forfeiture determination as of November 1, 2018, or (2) that was seized or taken for investigation or as evidence or for civil forfeiture or for any other reason on or after November 1, 2018. This request for all data from all fields in EVIDENCE ON CUE includes but is not limited to records corresponding to the fields on the PD 81, including notes or comments fields. Please produce the records on a flash drive, CD-ROM, or DVD-ROM in one or more Excel spreadsheets, or in one or more ASCII delimited text files, along with the corresponding field names (i.e., column headers).

> **RFP No. 4.** If there have been other databases in use on or after November 1, 2018 containing information about property seized or taken and detained for investigation or as evidence or for civil forfeiture or for a forfeiture determination, please make the same data production for that database on a flash drive, CD-ROM, or DVD-ROM in one or more Excel spreadsheets, or in one or more ASCII delimited text files, along with the corresponding field names (i.e., column headers[).]

In response to RFP No. 3, the District made similar boilerplate objections to those it made to RFP No. 1—overly broad, unduly burdensome, vague, not proportional—to both RFPs.  The District again stated that it did not understand what "taken and detained for investigation" meant. It then stated that it would only respond after clarification by counsel and, even then, "the District will *consider* producing responsive, non-privileged documents. . . ."  The Federal Rules of Civil Procedure do not allow a party to "consider" producing documents—they must be

December 16, 2024
Page 8

produced.    Additionally, we still have not received a privilege log from you.  Please produce one immediately.

In response to RFP No. 4, the District made the same general objections—overly broad, unduly burdensome, vague, not proportional—but did produce a user manual from EvidenceOnQ as well as screenshots.  However, the District did not produce a technical manual for EvidenceOnQ or training materials.  Moreover, the list of fields on the search is limited to fields the data entry personnel would see, and Plaintiffs request is broader.  Plaintiffs believe there are hidden fields such as audit fields that indicate changes to records (*e.g.*, changes to classifications of data). We ask that you produce all for all relevant databases.  Additionally, Plaintiffs ask to inspect EvidenceOnQ as an MPD user would use it.  If the program is web-based, a unique username and password would suffice.

Plaintiffs are aware of the following databases, which may contain information relevant to this case.  If they do, the District must respond with the requested information.  These are:
- **EvidenceOnQ;**
- **Mark43 RMS** launched at MPD and 40+ other D.C. agencies in August 2015. This is the MPD's "records management system";
- **DFS database**;
- **Evidence Technicians database (used by evidence technicians);**
- **Axion** photo database (holds pictures, videos, and other digital info of relevant property).

For each database from which the defendants provide records, please provide all manuals relating to the operation of the database and the use of the database by persons making entries into the database.

To the extent the District believes responsive documents in databases outside of EvidenceOnQ are not appropriate for production, the District must so state and provide sufficient identifying information so that Plaintiffs can raise the District determination with particularity to the Court.

If the District still maintains that the requests are overbroad because they relate to all fields rather than designated fields, please provide Plaintiffs with either a list of all possible fields or a printout of all fields in EvidenceOnQ, a data dictionary (Request No. 5), and information related to the other databases the District uses (which would be responsive to Interrogatory No. 1, 3rd set of Interrogs.).

## <u>1st RFP Request Nos. 5–8</u>

Requests 5 thru 8 related to EvidenceOnQ have been partially responded to.  Plaintiffs are still missing the data dictionary (Request No. 5).  The District took the position that it does not possess a data dictionary in its briefing for a motion for a protective order and in opposing Plaintiffs' motion to compel.  If this is the District's position, it must put such a position in

December 16, 2024
Page 9

writing in response to discovery and include what search it conducted before coming to that conclusion and what definition of data dictionary it used.

> **RFP No. 5.** Produce for **EVIDENCE ON CUE** (including all constituent programs) and any other software or other computerized property inventory management systems that were used by MPD []to record and account for property in MPD's custody at any time during the period from January 1, 2010 up to the date of production[.] [I]n accordance with this request, a data dictionary (i.e., a listing of all tables and their relations, the accompanying descriptions for the tables, and the names and descriptions of all data fields in each table[,] including both the field names visible to persons entering data and the programmer names [i.e. names not visible normally but available on the back end that may use codes to mean the visible names]) and produce every WRITING containing information about a data dictionary for **EVIDENCE ON CUE.**

The District made broad objections—which we disagree with—but ultimately stated that it would produce the data dictionary and any non-privileged documents containing information about a data dictionary for EvidenceOnQ…."  We are still waiting for the data dictionary.  While the District claims it does not have a data dictionary, it still has an obligation to produce whatever it does have.  The EvidenceOnQ database can generate a list of fields.  This is different from screenshots.  We need a list of all fields along with the meaning of any codes entered into any field.  If this cannot be done, the District <u>must</u> produce an affidavit or declaration from a person knowledgeable about how the system runs and is programmed—that is, someone other than just a user who is almost certain to have only limited knowledge—*before any 30(b)(6)* deposition.

Plaintiffs sent the District portions of the 30(b)(6) deposition transcript (with page and line numbers) from the *Brown/Hoyte* case in which Mr. Carter, the District's 30(b)(6) deponent, explained by reference to the EvidenceOnQ manual, that a list of fields in EvidenceOnQ could be generated as a report. Plaintiffs also referenced the applicable sections in the current EvidenceOnQ user's manual explaining how a list of fields in EvidenceOnQ could be generated out of EvidenceOnQ as a report. The District's only response was an email from Mr. Sobiecki stating, "I am not seeing in these deposition excerpts where Mr. Carter explains how it is easy to generate a list of all available fields in EoQ." Email dated January 25, 2024. But the standards governing the District's obligation to produce the report of fields is not whether Mr. Sobiecki understands Mr. Carter's explanation. The District needs to produce the list of fields or produce an affidavit or offer evidence that reveals the nature of the alleged burden of production. *DL v. District of Columbia*, 251 F.R.D. 38, 44 (D.D.C. 2008).

Moreover, even if the District cannot generate a list of fields out of the databases, Plaintiffs propounded an Interrogatory asking for the names of the fields ("programmer names," names used on headers of Excel spreadsheets, and field names seen by the data entry people) and their functions.  Interrogatory No. 1 of the 3d Set of Interrogatories.

December 16, 2024
Page 10

**1st RFP Request No. 6**

> **RFP No. 6:** Produce every WRITING containing lesson plans or instructions for MPD personnel (including civilian personnel) **relating to** the use of **EVIDENCE ON CUE**, or any other computerized property inventory management system which has been used to track and monitor property in MPD custody which has been proposed or which has been in effect or which has been used at any time from January 1, 2010 until production in accordance with this request.

This request seeks all training manuals or instructions for EvidenceOnQ and any other database used by the District to catalog or inventory property.  It is directly relevant to Plaintiffs' due process claims as it will demonstrate whether Plaintiffs' property was captured by MPD, when it was seized, and the disposition of that property.

The District once again used boilerplate objections but then agreed to produce all non-privileged information.

So far, all the District has produced for EvidenceOnQ is a user's manual, not a technical manual that lists all fields including hidden fields such as Folder_Move_Date which is the field that indicates when the District released a vehicle. At this time, we request that any remaining document be produced with a privilege log.

**1st RFP Request Nos. 7–8**

These requests seek technical information on the operation, modification, etc. of EvidenceOnQ and manuals or other information regarding the creation, generation, or running of standardized reports by EvidenceOnQ.  Defendants have produced screenshots and a user's manual (as opposed to a tech manual), which is incomplete and does not satisfy the request.

Defendants must produce all relevant EvidenceOnQ manuals and update their discovery to unambiguously state—and provide corresponding Bates ranges—that it has produced all manuals, information, and training materials requested by Request Nos. 7 and 8.

**1st RFP Request No. 9**

This request seeks screenshots from databases used for data entry.  The District has produced some screenshots.  However, it failed to produce screenshots on click-down menus from the screens themselves for different categories.  We request that you update this request, provide Bates-stamp numbers for the documents previously produced and responsive to this request, and also produce screenshots of all drop-down menus so that we receive a complete set of screenshots for all options available to those conducting data entry.

December 16, 2024
Page 11

We need all the "codes" used in each field and an explanation of the codes. For example, the column named "WHLocation" in the spreadsheet with Bates # DC-2021-cv-2930-00003701 is populated with codes, e.g., A30202S031.

**1st RFP Request Nos. 10–12**

These requests ask for information related to the WACIIS system.  The District must update its responses, provide Bates numbers for produced documents, and confirm it has produced all responsive information.

There is no request No. 13.

**1st RFP Request Nos. 14–16**

These requests seek information related to MPD training and policies about the seizure of property.  The District has produced limited information.  This is insufficient.  The District must complete its productions and update its discovery responses, including the Bates ranges for documents responsive to each request.

**Request No. 14.**  Plaintiffs requested all documents "containing a statement of policy or practice," including Special and General Orders, Circulars, etc. "relating to or referring to the seizure, detention, accounting [] of property coming into the custody of MPD…."

The District said it would produce documents "sufficient to show the policy or practice concerning the seizure, detention, and handling of the seized property in effect or published for the period of November 1, 2018" to the date of production.  This does not appropriately respond to the discovery request.

Requests 15 and 16 ask for lesson plans and the policies and practices of MPD related to property seizure and retention.  The District, again, stated that it would only produce responsive documents "sufficient to show the policy or practice concerning the seizure, detention, and handling of the seized property in effect or published for the period of November 1, 2018."  The request is broader.  The District produced certain policies.  However, it has not updated its response to confirm that it has produced all relevant documents.

**1st RFP Request Nos. 17–18**

These requests encompass additional MPD policies that may overlap with previously requested documents.  However, the requests are specific, asking for documents related to the Narcotic and Special Investigations Division and property seized for investigation or evidence.

The District objected on relevance groups to No. 17 and stated that it would not produce additional documents in response to No. 18 because it is duplicative of number 16.

The documents are relevant to Plaintiffs claims because any differences between policies may support Plaintiffs claims or the District's defenses.

December 16, 2024
Page 12

While 16 and 18 are similar, they are not the same.  The District must provide responses, including Bates ranges, for each request.

**1st RFP Request No. 19**

Request No. 19 focuses on the District's methods and record keeping in its communications with the DC Attorney General's office and the U.S. Attorney's Office related to the release of property.

> **RFP No. 19:** Produce every **WRITING** relating to any tracking procedures that MPD uses to ensure that releases are obtained from the prosecuting authority for property used in investigations or as evidence.

The District objected that the production was overbroad and feigned not understanding what "prosecuting authority" and "to ensure that releases are obtained" mean.  Despite these "flaws," the District agreed to produce documents "sufficient to show policies or practices concerning the handling [of] property seized as evidence or in the courts of the investigation and the release of that property. . . ."

The District failed to respond to the request.  The request did not seek "policies or practices" alone, but all responsive documents, including actual documents exchanged between MPD and prosecutors, including emails discussing relevant documents.  It has now become clear that the District had no system for returning property.  Therefore, the District must fully respond to this RFP and produce *all* relevant responsive documents.

Both Commander Conboy (ECB of MPD) and Ms. Robinson (court liaison division with the Metropolitan Police Department) explained how the District's agencies communicate internally with each other via email about property and requests for release and the transmission of PD 81-Cs and other related issues and they also testified how the ECB and the Court Liaison Division communicate with the District's prosecutors via email about property and requests for release and the transmission of PD 81-Cs and other related issues.

**1st RFP Request No. 20**

> **RFP No. 20:** Produce a copy of each WRITING the District has received from each owner of property in which the owner released and altered any right to sue the District in connection with property seized or detained by the District for civil forfeiture or a determination during the period starting January 1, 2010 to the present.

The District used many of the same boilerplate objections and objected to producing documents "unrelated to the claims of the named plaintiffs."  These objections are absurd.  This is class discovery, and Plaintiffs are entitled to discovery regarding class claims.  Here, the requested documents go directly to class issues.  The District stated that it would "consider" producing documents after "clarification" by Plaintiffs.

December 16, 2024
Page 13

This is inappropriate. The District is required to produce all responsive non-privileged documents, which are long overdue. To the extent, the District requires clarification, the District must request what clarification it is seeking and do so immediately.

We have also discussed part of this issue before. As we have explained before, as discovered in the *Brown/ Hoyte v. Government of the District of Columbia*, 15-1369 (CRC) litigation, the District at times conditions vehicle releases upon execution of a legal releases by owners and others to whom the District released property. The District must produce any such release, which are clearly responsive to this request.  .

**1st RFP Request No. 21**

> **RFP No. 21:** Produce every **WRITING** which evidences or memorializes the introduction or offer of introduction of a vehicle as evidence in any judicial proceeding in Superior Court on or after [November 1, 2018] to the present.

The District provided the same boilerplate objections—overbroad, burdensome, not proportional—and then feigned not to know "what is meant by 'judicial proceeding,' 'evidences or memorialized the introduction or offer of introduction" of a vehicle as evidence. This may work for an eighth-grade mock trial, but the District has no excuse. The requested documents are directly relevant to whether Plaintiffs had notice and an opportunity to be heard. Therefore, the District must produce the documents.

Judge Lamberth expressly doubted whether the District retained vehicles to offer as "evidence" in court proceedings. *Parrott v. District of Columbia*, 2023 U.S. Dist. LEXIS 29856, *18 (D.D.C. 2023). Commander Conboy had no knowledge of the District keeping vehicles to offer in court proceedings.

**1st RFP Request No. 22**

> Request No. 22: Produce a copy of each property book used by any element of the MPD on or after November 1, 2016.

We will address a sample of the property books after we get complete productions of data exports from the relevant databases. Judge Lamberth recognized that the request for a sample of the property books was an "error-sampling method." *Parrott v. District of Columbia*, 2024 U.S. Dist. LEXIS 5752, *15 (D.D.C. 2024). It only makes sense to conduct the "error-sampling" on a complete production of data exports.

## II.    Plaintiffs' Second Set of Requests For Production of Documents

**2nd RFP Request No. 1**

> **Request No. 1:** For each court proceeding identified in Interrogatory Number 1 herein, produce copies of all court documents and MPD records, communication, and other documents relating to the court proceeding or the property, including ESI and PDF images from the Superior Court docketing system.

December 16, 2024
Page 14

As the text of the Interrogatory indicates, this document request relates to Interrogatory Number 1 (discussed below in the section on interrogatories). Interrogatory Number 1 asked the District to identify using certain data points each "Superior Court Rule of Criminal Procedure Rule 41(g) [motion] filed by the owner of property that was seized in connection with a criminal investigation or prosecution, **where the owner was not a defendant in the prosecution in which the motion was filed**."

Instead the District provided an Excel spreadsheet (converted to PDF format)  list of all Rule 41(g) motions filed without breaking out Rule 41(g) motions filed by owners who were not defendants in papered Superior Court prosecutions. The District did not produce the names of the movants as the Interrogatory specified. This is an important data point if the motion were filed by an owner who was not the defendant.

The District used its common boilerplate objections and objected because the documents are "publicly available."  It further objected that seeking MPD records was "overbroad," without providing any explanation.  Finally, it objected "to the extent this Request is seeking documents relating to criminal investigations" because such documents "have no relevance to Plaintiffs' only remaining claim."

The District's objections are off-base.  First, the D.C. Superior Court is part of the District for purposes of Discovery.  *See Barnes v. District of Columbia*, No. 06-315 (RCL), 2013 U.S. Dist. LEXIS 207911, at *28 (D.D.C. Feb. 28, 2013) ("After reviewing the relevant case law, the Court finds that the Superior Court is an agency or body of the District of Columbia government.")

Second, the District, through its access to the Superior Court Clerk's Office and its government-to-government relationship with the U.S. Attorney's Office, is in a far better position to search and obtain the requested records, which may or may not be public, given sealing order, complex legal proceedings, and the Superior Court's very poor public case search functions.  The District must respond in full to this request.

In response to 1st Interrogs. Interrogatory No. 1, the District produced a PDF version of an Excel spreadsheet containing what the District represents is a list of Rule 41(g) motions filed during the class period. But, the production is dated December 1, 2023 and requires updating. The District agreed in the last teleconference to update the production within a week, a deadline that has long passed.

The data export from Superior Court was in an Excel format.  The District, frustratingly, produced it in a non-native PDF format.  This was improper.  An ESI production may not be produced in a format that degrades searchability. *Covad Communs. Co. v. Revonet, Inc.*, 267 F.R.D. 14, 19 (D.D.C. 2010). So please make an updated production immediately in Excel format.

Producing a PDF of a list of motions filed in response to Interrogatory # 1 does not satisfy F.R.C.P. 33(d) because "the burden of deriving or ascertaining the answer [is not] substantially the same for either party."

December 16, 2024
Page 15

The "images" or pdf documents attached to the Superior Court docket are not equally available to the parties. We had paralegals try to download papers including orders from the motions on the District's Exhibit 1 and many of the images are not available remotely or even from terminals at the courthouse. Moreover, papers under seal are not available to Plaintiffs.

The District refused to produce motions papers and orders in sealed motions but since there is a protective order in place this is not a well-founded objection. A protective order addresses privacy concerns for documents under seal. See *M.J. v. District of Columbia*, 2020 U.S. Dist. LEXIS 272293, *11 (there is a protective order limiting the permitted uses of confidential information solely to litigation and providing that such information must be returned to the producing party or destroyed once the action has concluded); *Meyer v. Cnty. of San Diego*, 2024 U.S. Dist. LEXIS 3935; *Reyes v. City of L.A.*, 2020 U.S. Dist. LEXIS 268004 (C.D. Cal. 2020). The Superior Court is part of the District for purposes of discovery and liability. *See Barnes v. District of Columbia*, No. 06-315 (RCL), 2013 U.S. Dist. LEXIS 207911, at *28 (D.D.C. Feb. 28, 2013) ("After reviewing the relevant case law, the Court finds that the Superior Court is an agency or body of the District of Columbia government."). Therefore, the District must produce the documents or seek permission from the Superior Court in each case to produce the documents.

Plaintiffs need for the District to produce the motions papers is especially compelling because in the response to First Interrogatories, Interrogatory No. 1 the District refused to identify each "Superior Court Rule of Criminal Procedure Rule 41(g) [motion] filed by the owner of property that was seized in connection with a criminal investigation or prosecution, **where the owner was not a defendant in the prosecution in which the motion was filed**." Instead the District provided a "data dump" list of all Rule 41(g) motions filed without breaking out Rule 41(g) motions filed by owners who were not defendants in papered Superior Court prosecutions. This was and is inappropriate.

## III.    Plaintiffs' Third Set of Requests For Production of Documents

These RFPs require the District to produce documents that will be used in its Defense. The District has yet to produce a single document in response to this RFP. The District must produce documents in response to this RFP and respond appropriately.

### 3rd RFP No. 1

> **Request No. 1:** Produce all documents which relate, reflect, or refer to the grounds of, and substance of, each defense, affirmative or otherwise, that the District is asserting in this action.

Beyond the boilerplate objections, the District refused to respond to this RFP or produce any documents because the District did not understand Plaintiffs' legal theories. The District answered this RFP on February 26, 2024, and has not updated its response. The District is required to answer the RFP to the extent it understands the request. If the District wants additional clarity, Plaintiffs will at least put forward the following legal theory: the District failed to provide those from whom it seized property with adequate notice of their rights, including a right to seek redress in Court.

December 16, 2024
Page 16

The District further failed to have any legal process for individuals to file a motion with the Superior Court to obtain their property unless the District brought criminal charges against a Defendant with whom the property is associated.

The District did not plead affirmative defenses in its Answer as it was required to do under F.R.C.P. 8(c) and Circuit law so the need for response to this document request is especially compelling. *Lennon v. US Theatre Corp*, 920 F.2d 996, 1000 (D.C. Cir. 1990) (failure to plead affirmative defenses amounts to waiver). Plaintiffs are not waiving their waiver rights. If this is not produced, we will file a motion for the Court seeking an order that the District has waived all affirmative defenses.

### 3rd RFP Request No. 2

> **Request No. 2:** Produce all documents, including emails that relate, reflect, or refer to a request by or on behalf of any owner or defendant in a criminal case in Superior Court, for return of a vehicle or a smartphone or currency taken or seized by the Metropolitan Police Department and all documents generated by the request such as responses or documents relating to the request.

The District said it was overly broad because it contained no time limit. Citing the Court's Order [ECF No. 83], it objected to the request because it asked for documents related to the seizure of currency and seizure of property of defendants or for other reasons, as outside the scope of the case. The District noted that it produced a list of 14,000 vehicles and smartphones from EvidenceOnQ for the period of November 1, 2018, thru November 1, 2023, but complained that it would be too burdensome to produce any documents related to that property. Ultimately, the District refused to produce any documents pending clarification from Plaintiffs on "what is being requested." It would then "consider" producing relevant documents.

The District's overbreadth concerns are without merit. The District seizes property. It has a responsibility to care for that property and return the property to its owners or use the property as evidence or seek forfeiture of the property. That documents related to such property might be found throughout the MPD's databases and emails does not defeat Plaintiffs need for the documents. Plaintiffs are entitled to all such documents to further class and merits discovery. This evidence goes straight to the District's culpability or defense. The MPD has IT specialists who help run its email system. It surely can run searches of relevant inboxes, starting with the most relevant first, and produce emails related to the 14,000 pieces of property previously identified. While this might be tedious, it is required. The District could lessen its burden through technical means, such as consulting outside data experts.

The District's response came on February 24, 2024. In the intervening nine months, the District has not produced relevant documents. It must do so immediately and on a rolling basis.

### 3rd RFP Request No. 3

> **Request No. 3:** All emails and other documents of any kind relating to the transmission of PD 81-C between the MPD and any prosecutor such as the U.S. Attorney or the District of

December 16, 2024
Page 17

> Columbia [A]ttorney General's office[,] including the District agency which prosecutes civil forfeitures.

The District first complained that the request was overbroad because there was no time limit. The District continued, stating that,

> Even if it were limited to the time period relevant to this case, Plaintiffs' request would include any documents concerning a PD 81-C for those 14,000 items, in addition to any other types of property seized and property seized for civil forfeiture. It would be unduly burdensome and disproportionate to the needs of this case for the District to search files and email inboxes of dozens of custodians to locate documents related to a PD 81-C for thousands of items.

Citing the Court's Order [ECF No. 83], it objected to the request because it asked for documents related to the seizure of "other types of property" for civil forfeiture.

The District is way off base here. First, the District must respond to the extent it can. It has previously responded using a date range of November 1, 2018, to November 5, 2023, and it should do so here.

Second, the District cannot hide behind its own woefully dysfunctional tracking system for PD 81-Cs. The fact that the District has to search "email inboxes of dozens of custodians" is a symptom of its own dysfunction and disorganization.

Nor is the fact that Plaintiffs request PD 81-Cs for items initially taken and categorized as for something other evidence but eventually returned to an owner. If the property was forfeited, no PD-81C would be necessary. However, that is relevant to plaintiffs' claims that due process was violated and rebut the District's defense that due process was not violated.

In response to this RFP, the District produced 11 pages comprising three PD 81Cs and four property records. If the District is willing to proffer that of the 14,000 identified pieces of property, these are the only PD-81Cs and property records, then Plaintiffs may be willing to forgo pushing for further production at this point in the case. Otherwise, all requested responsive documents must be produced as they relate to Plaintiffs class claims and the District's potential defenses as to any class member.

**3rd RFP Request No. 4**

> **Request No. 4:** All notices or other writings to any person indicating that any agency of the District of Columbia has taken or seized their property in connection with a civil forfeiture or has taken or seized their vehicle or smartphone or any other electronic device in connection with a criminal investigation or classified as "evidence" on a PD 81.

The District's objection to this request is very similar to its objection to Request No. 3. We will not repeat our arguments here but, instead, refer you to the above.

December 16, 2024
Page 18

As for the District's objection that Plaintiffs notice claims were dismissed, and thus the notices provided are irrelevant—that is simply a bridge too far. As the District itself admits, the current part of Plaintiffs claim is that the District "failed to provide . . . constitutionally adequate notice of available procedures for the return of property." The contents of each requested document will either help prove or disprove Plaintiffs claims. They will also establish whether Plaintiffs represent a class of similarly situated individuals.

The District's targeted search is insufficient and has not updated its responses to include specific bates ranges. The District must produce the remainder of the requested documents and update its response.

### 3rd RFP Request No. 5

> **Request No. 5:** All notices or writings to any person relating to the property described in the previous document request informing the person that their property taken for civil forfeiture or in connection with a criminal investigation or classified as "evidence" on a PD 81 may be picked up or otherwise is ready for release to the owner.

The District's objection to this request is very similar to its objection to Requests No. 3 and No. 4. We will not repeat our arguments here.

The District's targeted search is insufficient and has not updated its responses to include specific bates ranges. The District must produce the remainder of the requested documents and update its response.

## IV.    Plaintiffs' Fourth Set of Requests for Production of Documents

Pursuant to further discussions, the District produced documents responsive to Plaintiffs' RFPs Nos. 3 and 4 of Plaintiffs First RFPs but argued that RFP Nos. 3 and 4 did not cover PDFs "attached" to the databases. This led to Plaintiff propounding Plaintiffs' Fourth Set of Requests for Production of Documents.

These requests are clear and ask for relevant documents. Plaintiffs also know from the Carter and Conboy depositions that the documents related to a piece of property are "attached" to EvidenceOnQ. Examples include the PD 81 (the property record) and the PD 81-C (release form). Department of Forensic Service documents must also be produced.

The District must immediately produce this material.

### 4th Amend RFP Request No. 1

> **RFP No. 1:** With respect to each vehicle or smartphone taken and detained by the District for investigation or as "evidence" or civil forfeiture or for a forfeiture determination (1) that was already in the possession of the MPD for investigation or as evidence or civil forfeiture or for a forfeiture determination as of November 1, 2018, or (2) that was seized or taken for investigation or as evidence or for civil forfeiture or for

December 16, 2024
Page 19

any other reason on or after November 1, 2018, produce all "documents or electronically stored information" referring to or relating to each such vehicle or smartphone. As used herein the terms "documents or electronically stored information" have the same meanings as the terms in F.R.C.P. 34(a)(1)(A).

Produce each data export from a spreadsheet in an Excel spreadsheet with column headers showing the field names the data entry person sees and also the logical or programmer names.

Produce all code tables and interpretive documents needed to interpret the data.

Produce all documents in PDF format.  If documents are ordinarily maintained in a form other [than] PDF[,] produce the documents in the form ordinarily maintained with the software needed to view them or in a form that does not degrade reviewability or searchability.

The District objected.

Before going point by point, it is important to reiterate why Plaintiffs propounded this request. The District contended that Plaintiff's First Requests for Production Nos. 3 and 4 did not request PDF documents attached to EvidenceOnQ and other relevant databases. Plaintiffs, therefore, propounded this RFP to expressly request those PDF documents (attached to EvidenceOnQ and the other relevant databases as well as ESI (records from fields) in the databases).

- The District's objections began with an argument about what the case is about—from the District's perspective.
  - This was both irrelevant and inappropriate.
- It then objected that this request was duplicative of RFP 3 from Plaintiffs' First RFPs.
  - The objection is in bad faith and the District is knowingly playing games.
  - The District objected to RFP 3 of Plaintiffs' First Set of RFPs because "taken for investigation" was vague, and did not understand it.  It also expressly stated that, "the District *will not* produce documents in response to this Request at this time, but subject to clarification and the entry of an appropriate protective order will *consider* producing responsive documents. . . ."  (Emphasis added).
  - The instant RFP expands on RFP 3 by clarifying what documents Plaintiffs seek: vehicle or smartphone taken and detained by the District for investigation or as "evidence" or civil forfeiture or for a forfeiture determination.
  - The RFP was propounded in response to the District's objection.  It is not, in fact, duplicative because it expands on RFP 3 and provides clarification.  The District did not object "to the extent" it is duplicative, it simply objected *because* it is duplicative (which it is not).
- The District's burden objected was based on Plaintiffs request for all documents related to the approximately 14,000 cars and cell phones taken from their owners without due process.
  - Plaintiffs are entitled to every document related to property taken by the District.

December 16, 2024
Page 20

- ○ The District never specifies what category of documents it would agree to produce and what documents are out of bounds.
- ○ Discovery is burdensome by its nature. It is common for Defendants to produce hundreds of thousands and even millions of documents in litigation. Document management and search software such as Relativity exist because of this. Either the Distric's lawyers have never litigated real cases or they are gas lighting Plaintiffs and intend to gaslight the Court.
- The District contends that Plaintiffs request for documents related to evidence taken for investigation, evidence, civil forfeiture, or for a forfeiture determination is overly broad because the Court has limited this to claims about evidence taken from owners who were not the subject themselves of a criminal case.
  - ○ The District should know that discovery during the liability and class phase is very broad. Plaintiffs are allowed to inquire, especially here, into evidence taken for other purported purposes, as the District has yet to state that all property is immediately classified and never reclassified. That is, that property "taken as evidence" is taken as such at the instant it is seized rather than it be taken for any number of reasons and then later classified as evidence or reclassified as evidence or something else. These documents are both relevant to the purported class and help *exclude* individuals from the class whose property was never classified as evidence.
  - ○ To the extent the District claims it only needs to produce evidence of "putative class of similarly situated individuals whose property was seized by MPD for use as evidence in criminal cases in which they were not themselves defendants," the District must produce those documents *immediately* or state that all documents have been produced." This does not waive Plaintiffs' request for all responsive documents, however.
- The District objects that "documents associated with the underlying circumstances of the seizure of 14,000 items of property are not relevant to any arguments or defenses at the class certification and summary judgment stage."
  - ○ Such evidence is relevant to Plaintiffs' procedural due process claim, which requires Plaintiff to show that (1) the property was seized and that (2) a class member never received notice of their rights to file a Rule 41(g) motion. In order to do so, Plaintiff needs all Documents related to a piece of property as those documents will show that the property owner was or was not contacted and demonstrate to what extent the property owner had to go to retrieve their property or if it was simply too much trouble and the property remains in MPD custody or was considered abandoned.
  - ○ Such evidence is relevant to class certification in order to demonstrate the Rule 23(a) issues and predominance under Rule 23(b). They are also expressly appropriate. As we have repeatedly stated, the scope of discovery on class issues is broader than the scope of discovery on merits issues.
  - ○ The responsive documents are also related to the District's defenses to both class certification and liability. If the Judge decides that the District may offer defenses

December 16, 2024
Page 21

> to establish that it would have been entitled to hold vehicles even if it had
> provided prompt post deprivation hearings then Plaintiffs need discovery on this
> defense.

Further, in the EvidenceOnQ data exports provided by Defendants, there are records consisting
of codes. For example, the column on spreadsheet has the following header, "WHLocation,"
with codes such as: "A30202S031 A30212S031 A30208R021 A30213M011". Because the
District has failed to provide a data dictionary and has not provided any explanation, these codes
are undecipherable to Plaintiffs.

Because this RFP requests all documents related to each cell phone and vehicle seized, it would
necessarily encompass contact information for each owner. To our knowledge, the District has
not produced that information. It must do so immediately. If it has already been produced, the
District needs to provide a Bates range.

The District *must* produce or provide explanations, including a data dictionary, so that plaintiffs
can understand the header name and relate it to each column's data. This request includes but is
not limited to a data dictionary listing for each field the table, programmer name and data entry
name and all code tables needed to interpret any data produced, including any data dictionary or
any portion of a data dictionary that can be generated out of or printed out of the database.

### 4th Amend. RFP Request No. 2

> **RFP No. 2:** All records from all fields (including metadata) from any case in any Superior
> Court docketing database which is related to or involves any vehicle or smartphone covered
> by the Class definition in this case. The request includes but is not limited to a data
> dictionary listing for each field the table, programmer name and data entry name and all
> code tables needed to interpret any data produced, including any data dictionary or any
> portion of a data dictionary that can be generated out of pr printed out of the database.

The District gave the same boilerplate objections and then claimed Plaintiffs had not provided a
class definition. The Class Definition is stated in paragraphs related to each count and
reproduced at the beginning of this letter. In short, it is anyone from whom the District seized
property, particularly a cell phone or vehicle, during the class period (November 1, 2018, to the
present).

This is a specious objection. The District has been making data exports from EvidenceOnQ
based on the class definition of the lack of a prompt post-deprivation hearing claim and the lack
of notice claims since the original data export in response to document Request No. 3. For
purposes of this request, the District should use the definition in RFP No. 3: "each vehicle or
smartphone (1) that was already in the possession of the MPD for investigation or as evidence or
civil forfeiture or for a forfeiture determination as of November 1, 2018, or (2) that was seized or
taken for investigation or as evidence or for civil forfeiture or for any other reason on or after
November 1, 2018"

December 16, 2024
Page 22

The District complains that it would be unduly burdensome to determine which Superior Court cases related to each of the 14,000 pieces of identified property.  That burden is of the District's own making, and it must answer the Request.  Such information is vital to Plaintiffs as it will demonstrate whether owners received a notice and an opportunity to be heard in each instance.  Once again, the District, through its relationship with the Clerk's office, the USAO, and the DC AG has significantly more resources to search case dockets and files than Plaintiffs.

Moreover, Plaintiffs have spent a great deal of time coming up with strategies for the District to identify such property in connection with interrogatories Nos. 1 and 2 of Plaintiffs' First Interrogatories. The District can employ those strategies and with its superior knowledge and access doubtless come up with strategies of its own to identify property related to papered Superior Court prosecutions. To support any objection the District must produce an affidavit from a person with knowledge to support the District's objections. *DL v. District of Columbia*, 251 F.R.D. 38, 44 (D.D.C. 2008).

Finally, the District stated that it would only produce documents once it conferred with Plaintiffs. It still has not done so.  The District must produce all documents on a rolling basis, starting immediately.

### 4th Amended RFP Request No. 3

RFPs No. 3 requests information related to each database from which information is produced.

> **RFP No. 3:** For each database from which the defendants provide records, please provide all manuals relating to [the] operation of the database, and use of the database by persons making entries into the database.

This would include EvidenceOnQ, whatever database the Superior Court uses, and the databases to track cases and evidence used by the USAO and DC AG's office.  The District gave its standard objections and then pointed to the production of three sets of documents: an EvidenceOnQ brochure, an EvidenceOnQ user manual, and screenshots.  The District produced nothing related to other databases.

The user manual is not a technical manual.  The brochure is advertising.  And the screenshots are insufficient.  The District must fully respond to this request and produce any additional technical manuals available under its contract with EvidenceOnQ or provide a declaration from the company stating that no such manual exists.

### 4th Amended RFP Request No. 4.

This request was misworded.  The request should have read: "For each database from which the defendants provide records, please provide a data dictionary listing for each filed in the database used to store information about persons from whom a car or cell phone was seized, the name of the table of each field containing records, the programmer name and the data entry name of each field containing records, and all code tables needed to interpret any data produced."

December 16, 2024
Page 23

Please respond to this interrogatory expeditiously.

## 4th Amended RFP Request No. 5

> **RFP No. 5:** All ESI and Documents containing instructions to owners of property seized for investigation or as "evidence" or for forfeiture determinations by the District or any agency of the District for investigations or as "evidence" or for forfeiture determinations about how to recover property.

After its standard boilerplate objections, the District complained that Plaintiff's forfeiture claims were dismissed. This is not the case. Court II charges that the District failed to notify owners of, among other things, the purpose of the seizure. Forfeiture is one possible purpose. Therefore, the District is absolutely incorrect in objecting to this RFP on the grounds that it asks for information related to forfeiture.

Next, the District complains that Plaintiffs' request is "overbroad and unduly burdensome" because it asks for "instructions given to individuals." The District believes that it would be "unduly burdensome for the District to search thousands of files and email inboxes to find communications containing instructions about seized property." Indeed, that is generally called *discovery*! The District has a choice—it can either conduct the search and produce whatever documents it can find or it can admit the District had a pattern and practice of never providing information to owners about their rights to a prompt hearing before a court after their property was seized. The choice is the District's.

Finally, the District points to a number of documents it produced. Unfortunately for the District, the production is only a set of emails with counsel for Mr. Iracks and a small number of other emails regarding Ms. Parrott. This is wholly insufficient as a response to this request.

The District must begin producing responsive documents immediately.

## 4th Amended RFP Request No. 6

> **RFP No. 6:** All Documents relating to the District's seizure and retention of smartphones and the District's procedures for obtaining data from the smartphones, including any filtering protocols, and under what circumstances the District [is] permitted to retain smartphones and the data on them.

The District made the same boilerplate objections—burdensome, vague, ambiguous, and because of the law enforcement privilege. The District also claimed the information is "irrelevant" because it seeks "all documents concerning the seizure and retention of any smartphone in any case, including those that do not involve the seizure of property as evidence from an individual who is not a criminal defendant."

It is hard to say how wrong it is to object to the production of directly relevant evidence. These documents go to the heart of this case and *must be produced immediately.*

December 16, 2024
Page 24

The District pointed out a limited number of general policies it produced. However, only one relates directly to cell phones. The District must update this response so Plaintiffs can understand if more documents and policies are in the District's possession responsive to this request.

The District's assertion of the "law enforcement privilege" is not well-founded because the Judge entered a robust protective order in the case which protects and information the District claims would be covered by the privilege. Moreover, the needs an affidavit from a high-ranking MPD person with technical knowledge to support any such privilege. Without such an affidavit explaining why the privilege applies we cannot evaluate the claim or privielege. Finally, privileges are governed by federal law and this privilege does not overcome a request for relevant discovery in a § 1983 case.

## IV.    INTERROGATORY DEFICIENCIES

Plaintiffs and the District have discussed Plaintiffs interrogatories many times. The District must answer each interrogatory completely and within the next week. We will walk through each interrogatory and address the District's objections. If the District has further questions, we ask that you send them in writing as soon as practicable.

### A. Plaintiffs' First Set of Interrogatories

### <u>1st Interrogs. Interrogatory No. 1</u>

> **Interrogatory No. 1:** If you contend that a Superior Court or Judge has since January 1, 2015 granted a motion for the return of property for a vehicle or a smartphone pursuant to Superior Court Rule of Criminal Procedure Rule 41(g) filed by the owner of property that was seized in connection with a criminal investigation or prosecution, where the owner was not a defendant in the prosecution in which the motion was filed, state each Superior Court number for the court proceeding in which the motion was filed and the date of the [] motion was filed, and the name of the owner of property for whom the motion was filed.

The District objected because counsel for the District claims staff would have to look through each case to answer the interrogatory. Instead, it produced a spreadsheet stating the owner, case number, and disposition where available on the face of the docket.

First, we have never received an affidavit from a knowledgeable person with an explanation supporting counsel's statement so we cannot evaluate it.

Next, this is only a partial response to the interrogatory. Plaintiffs' claims and the District's defenses will be significantly impacted by whether Rule 41(g) post-deprivation hearings were available to property owners, especially in non-papered cases, and whether they were, in fact, used. To the extent the District knows or can discover if any Rule 41(g) motions were filed by non-defendants, particularly in non-papered cases, the District must answer the interrogatory with that information.

December 16, 2024
Page 25

The key here is *who* the claimed owner of the property was and whether they filed a Rule 41(g) motion. It is stunning that the District cannot easily trace whether an owner requested their property back or had to file an action in Court. Nevertheless, this is civil discovery, and the District has an obligation to respond to this interrogatory with something more than "here, you go look for yourself." The District *must* identify who filed the motion, whether the filer was the claimed owner, the disposition (or lack thereof), and it must update the spreadsheet it previously produced. The District should also produce along with the spreadsheets

- All docket sheets of cases in which Rule 41(g) motions were filed and the motions papers and orders that are stored as pdf attachments in the Superior Court docketing database.
- All papers and orders filed under seal.
- The rest of the motions papers and the orders relating to the Rule 41(g) motions on the spreadsheet.

As discussed above, the Superior Court is an agency of the District, and the District has unique access to its clerk's office, and sealed documents are subject to a Protective Order entered in this case. The District must fully respond to this interrogatory.

**1st Interrogs. Interrogatory No. 2**

> **Interrogatory No. 2:** With respect to all currency, or each vehicle or smartphone: (1) that was already in the possession of the MPD for investigation or as evidence or for civil forfeiture or for forfeiture determination as of November 5,2018, or (2) that was seized or taken for investigation or as evidence or for civil forfeiture or for a forfeiture determination on or after November 5, 2018, please state the date on which the District seized the vehicle or smartphone or currency, why the vehicle or smartphone was initially seized, how MPD classified the vehicle or smartphone or currency at seizure, how the classification changed over time if it did, the owner of the vehicle or smartphone or currency, the Superior Court case number in connection with which the vehicle or smartphone or currency was seized or retained, the dates on which the MPD requested a PD 81-C, and the date on which the District finally disposed of the vehicle or smartphone or currency (for example, by retaining the [vehicle] or smartphone or currency, selling it, returning it to the owner, judicially forfeiting the vehicle or currency [or smartphone]).

The District objected and refused to respond. Specifically, the District asserted that the Interrogatory seeks information "that is not relevant to Plaintiffs' procedural due process claims, *e.g.*, information about property seized for forfeiture and seizures of currency." The District also objected that this interrogatory is somehow duplicative RFP No. 3. Further, the District claimed it would be too burdensome and irrelevant "for the District to attempt to identify the criminal matter, if any, associated with the seizure of property and for the District to attempt to determine fi and when a PD 81-C was requested for several thousand items of property." Little could be further from the truth.

As we have already stated, the remaining claims encompass property seized for all purposes. Count III specifically includes not just smartphones and cars but "other property." Additionally,

December 16, 2024
Page 26

Plaintiff does not have to take the District's word that its responses to a different discovery request will provide the answer to this Interrogatory. For example, Plaintiffs have not identified any produced document that discusses whether a piece of property was seized for one purpose but then transferred for another purpose. The District must either answer this interrogatory or respond with clear directions on how exactly Plaintiffs can obtain the answer from previously produced documents.

Finally, and most importantly, the District cannot claim that PD 81-Cs are irrelevant or that it would be burdensome to track *if* a criminal case was filed. These issues are at the heart of Plaintiffs claims. Without a PD 81-C, the District will not release property–it's own witnesses and discovery have confirmed this. And, without a papered case, a PD-81 C is incredibly difficult to obtain and can only be obtained through MPD.

The District's opposition here is obstructionist. The District must immediately answer this interrogatory.

As with all of the District's other objections, at this point this is just a statement of counsel. The rules require the District to support its objections with an affidavit from a knowledgable person so the Court and Plaintiffs can evaluate the objections.

## B. Plaintiffs' Second Set of Interrogatories

### 2nd Interrogs. Interrogatory No. 1

> **Interrogatory No. 1:** List each defense, affirmative or otherwise, that the District is asserting in this action, and describe the factual bases of each defense, affirmative or otherwise, that the District is asserting in this action.

The District must update this response.

The District did not plead affirmative defenses in its Answer as it was required to do under F.R.C.P. 8(c) and Circuit law, so the need for response to this Interrogatory is especially compelling. *Lennon v. US Theatre Corp*, 920 F.2d 996, 1000 (D.C. Cir. 1990) (failure to plead affirmative defenses amounts to waiver). Plaintiffs are not waiving their waiver rights. If the District does not make an adequate response, we will file a motion for the Court seeking an order that the District has waived all affirmative defenses.

## C. Plaintiffs' Third Set of Interrogatories

These interrogatories seek information that will allow Plaintiffs to fully understand and decipher the District's various databases where property seized by MPD is available and how such property is coded within the system. The District's continued failure to answer these interrogatories is nothing more than obstructionism. The District must respond promptly.

December 16, 2024
Page 27

**3rd Interrogs. Request No. 1**

> **Interrogatory No. 1:**  For each database storing data points about property covered by the class definition[,] state the name of each field in the database (including all names for each field[,] including the logical names and data entry names that data entry people see on a data entry screen), the reason or purpose of the field, whether the field is in use, and identify every field in which codes are used and explain the codes.

The District's objections focus primarily on the District's feigned lack of understanding about what is being asked for.  The District argues that "data points" and "class definition" are ambiguous.  The District is taking extreme liberties, and regardless, the District is still required to answer based on their understanding of the terms.

As Plaintiffs have pointed out above, the Class Definition is stated in paragraphs related to each count and reproduced at the beginning of this letter.  In short, it is anyone from whom the District seized property, particularly a cell phone or vehicle, during the class period (November 5, 2018, to the present).

The District referred plaintiffs to three pages of screenshots from EvidenceOnQ but provided no other answer.  This is insufficient.  Plaintiffs are entitled to explanations of what each data entry field means, whether it is used, and the codes used for every field.  For example, the District produced spreadsheets from EvidenceOnQ.

Those spreadsheets contain many columns, each with a unique name.  Some of those names are obvious, but others are not.  The databases can generate a list of fields that is a partial response, and so the District should produce that. As stated in Plaintiffs' analysis of the District's response to 4th RFP Request No. 1, the District *must* produce explanatory materials.  For example, Commander Conboy mentioned a field in EvidenceOnQ that indicates when property in the custody of the Evidence Control Division is taken to, "court property office."  That field does not exist in the spreadsheets we were given.

Any updated response should include a sword declaration by the CTO or other senior IT staff stating the limitations of EvidenceOnQ.

Additionally, the District's witness testified that there are other databases beyond EvidenceOnQ where information about property is stored.  For example, Commander Conboy suggested that the Evidence Control Division maintains records of inspections by defense counsel.  The District must have records of any inspections of property by any individual in order to maintain chain of custody information.  If the Evidence Control Division has copies of "viewing letters" or emails from prosecutors telling Evidence Control Division to let the defense team look at property, then their database is responsive to this interrogatory and those records are responsive to Plaintiffs first set of RFPs number 3 and 4 and must be produced.  Additionally, fields in EvidenceOnQ where such inspections are recorded must also be produced.

December 16, 2024
Page 28

### 3rd Interrogs. Interrogatory No. 2

> **Interrogatory No. 2:**    For each item of property covered by the Class definition, if you contend that the District needed to keep the property beyond 30 days of seizing it or "recovering" it, state why the District needed to retain the property more than 30 days, state each principle fact in support or why the District needed to retain it, and explain why the property could not be returned to the owner at least conditionally, or otherwise "[subject to] reasonable conditions to protect access to the property and its use in later proceedings."

The District again feigns ignorance of what constitutes the class and uses that excuse not to answer the interrogatory. Further, the District claims that it would be too burdensome "for the District to go through thousands of items [in the spreadsheets it produced], and identify which ones were kept more than 30 days, and provide narrative responses about why the District needed to retain the property more than 30 days." The District then complains that this would only be relevant to damages. Ultimately, the District refused to respond.

First, it is quite easy to determine how long each piece of property has been kept using a simple Excel formula. Second, the reason the property is kept may be vital to the District's defense. Moreoever, Plaintiffs need to know whether the seizure was supported by probable cause or whether some exigency supported the warrantless search or whether a purported inventory search was in fact an evidentiary search. The District must either waive this argument or answer the interrogatory. Moreover, the heart of Plaintiffs' claims are that (1) the only justification for a warrantless search was to prevent the loss of "potential evidence" in the vehicles and smartphones (items and trace evidence such as fingerprints and DNA in and on vehicles and data and trace evidence in and on smartphones), Am. Compl. ¶ 37, and (2) the District kept property longer than was needed, or never gave it back.

### 3rd Interrogs. Interrogatory No. 3

> **Interrogatory No. 3:**    For each item of property covered by the Class definition, if you contend that the District would have been entitled to retain the property even if it had provided prompt post deprivation hearings for owners to recover the property, explain why the District needed to retain the property more than 30 days, state each principle fact in support or why the District needed to retain it, and explain why the property could not be returned to the owner at least conditionally, or otherwise "[subject to] reasonable conditions to protect access to the property and its use in later proceedings."

The District's objections to this interrogatory are almost carbon copies of its objections to Interrogatory 3. The only additional objections are the law enforcement privilege and the District's statement that it cannot produce documents because "in many cases decisions relating to the release of property are made by the U.S. Attorney's Office for the District of Columbia." We read this as the District waiving any defense related to this interrogatory. If the District disagrees, then it must answer the interrogatory and it must provide a privilege log.

December 16, 2024
Page 29

The explanation for the preceding Interrogatory applies here.

### 3rd Interrogs. Interrogatory No. 4

> **Interrogatory No. 4:**   For each item of property covered by the Class definition, identify the property and identify by which category of the three categories of person or agency listed on "Attachment A: Responsibilities for Processing Incidents and Crime Scenes GO" of the MPD General Order "Crime Scene Response and Evidence Collection" it was processed. "Identify the property" means to describe using the data points on the MPD Form PD 81.

The District made many of the same objections to this interrogatory as it did to the previous interrogatories in Plaintiffs' Third Set.  There is no reason to explain why each argument is baseless.

The classification the MPD gives vehicles and smartphones and other property seized as "evidence" provides information about whether the District could have satisfied any preservation obligations under Rule 16 (e.g., for property that was only photographed but not otherwise processed the District could have satisfied any preservation obligations under Rule 16 by photographs).

Discovery has matured; there is no reason for the District to continue delaying its response. This Interrogatory is relevant to ascertaining the District's need to keep property for inspection by defendant.  If the District does not answer the interrogatory, any argument the District might make based on information and discovery that should have been produced or used to Answer this interrogatory should be waived.

### 3rd Interrogs. Interrogatory No. 5

> **Interrogatory No. 5:**   Identify by name and contact information (including social security number) of every person having information about how each database and email system used to store information about property described in the Class definition works including but not limited the data administrator for each such database or email system. Database administrator as used herein means the person or persons responsible for maintaining, securing, and operating the database and ensuring that data is correctly stored and retrieved, and other typical Database administrator functions.

The District would not respond.  It claimed the interrogatory would be overly burdensome to answer because it would encompass nearly all MPD employees.  The District also objects that the information sought by this interrogatory is similar to information subject to Plaintiffs' 30(b)(6) deposition.

The first objection may help limit the scope of the District's answer, but none of the District's objections absolves it from answering.  It is no excuse that Plaintiffs may cover similar information in the 30(b)(6).  The District still must answer this interrogatory.  Plaintiffs are not

December 16, 2024
Page 30

only entitled to the answers, but it will also allow Plaintiff to choose whether or not to depose these individuals.  There is no rule allowing the District to ignore discovery because they don't feel like answering.

The District's counsel has represented there are District employees with information equal or greater to information possessed by the vendor.  The District must produce the name and contact information for these individuals, and identify whether or not they still work for the District.  The District must answer this information by identifying those individuals, such as the CTO and his staff, who are most knowledgeable about EvidenceOnQ and how evidence is stored and tracked.

### 3rd Interrogs. Request No. 6

> **Interrogatory No. 6:**  Identify by name and contact information (including social security number) of every person having information about how the District stores information about which Superior Court case any property coming into the possession of the District is related for example fin, as "evidence", or for forfeiture determinations or civil forfeiture.

The District's objections to this are nearly identical to Interrogatory 5.  For the same reasons stated in Interrogatory 5, the District must respond.

In conclusion, the District has substantially skirted its discovery obligations.  We intent to move the Court, as soon as practicable, to compel the District's discovery responses.  In order to narrow the issues for the Court, we ask that you respond within 72 hours and let us know which of the discovery requests you intend to answer *in full* and for which you will maintain your objections.


Very truly yours,

/Adrian F. Snead

Adrian F. Snead

AFS:RD