# EXHIBIT 3

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
Office of the Attorney General

**ATTORNEY GENERAL**
**BRIAN L. SCHWALB**



**Civil Litigation Division**
**Equity Section**

January 13, 2025

<u>**VIA EMAIL**</u>

Adrian F. Snead
Porter Wright Morris Arthur LLP
2020 K Street, NW
Washington, D.C. 20006
*Counsel for Plaintiffs*

Re:   *Parrott, et al. v. District of Columbia*, Case No. 1:21-cv-02930-RCL (D.D.C.)

Dear Counsel:

We are writing in response to your December 16, 2024 letter.

**I.     SURVIVING CLAIMS**

With regard to Plaintiffs' procedural due process claims, the Court summarized those claims:

> Plaintiffs' procedural due process claims are split across Counts II-IV and VI, *see* Am. Compl. ¶¶ 386-413, 428-36, but they essentially involve three theories. First, plaintiffs argue that the District violated their due process rights by failing to provide a procedure by which they could retrieve their property before a criminal case was charged. Second, they argue that the District violated their due process rights by failing to give them prompt notice that MPD had seized their property or of any procedures available to retrieve it. Third, in Count VI only, they argue that the District violated Mr. Joyner's and Mr. Iracks's due process rights by failing to make a postdeprivation procedure available to them while holding their property both as evidence and for potential civil forfeiture.

Mem. Op. [45] at 14–15.  The Court unambiguously dismissed claims based on the third theory: "The Court agrees with the District that Count VI does not state a standalone claim specific to individuals whose property is being held both as evidence and for civil forfeiture." *Id*. at 15. But the Court "[did] not dismiss Counts II-IV of the amended complaint insofar as they allege an unconstitutional lack of procedures available to contest a deprivation of property," *id*. at 21–22,

and "[did] not dismiss Counts II-IV of the amended complaint insofar as they allege constitutionally inadequate notice of available procedures for the return of property," *id*. at 26. Accordingly, Plaintiffs' two remaining claims concern whether (1) Plaintiffs had sufficient procedures available to them to contest the deprivation of their property and (2) Plaintiffs had sufficient notice of the procedures available to them to contest that deprivation. To the extent Plaintiffs are pursuing discovery, it should relate to one of those two issues.

Further, this case remains a putative class action in which, at Plaintiffs' request, discovery on the merits was bifurcated from discovery on damages. While the District acknowledges that Plaintiffs may seek limited discovery related to their anticipated motion for class certification, Plaintiffs have no right—nor would it make any sense—to seek discovery relating to the merits of every single potential class member's claims. If Plaintiffs' position is that they cannot determine whether they can establish the requirements of Rule 23 without detailed discovery into the merits of each potential class member's claims, then that only serves to prove that class certification is inappropriate.

## II.     OMNIBUS ISSUES

### A.     Date Range for Production

As an initial matter, Plaintiffs have been aware that the District has been using November 5, 2018, as the starting point for its production of certain categories of documents for more than a year and never raised any concerns. However, Plaintiffs now assert, without any explanation, that they need documents from 2010 to the present "to make their case." December 16 Letter at 3. Parrott's alleged deprivation of property occurred on August 22, 2019. Am. Compl. ¶ 198. Iracks's alleged deprivation of property occurred on October 18, 2021. *Id*. ¶ 284. With regard to those Plaintiffs (in addition to former Plaintiff Joyner), the District has not withheld any documents based on their date. And, with regard to EvidenceOnQ, Plaintiffs only requested information as of November 1, 2018, which the District agreed to use as its starting point. Therefore, Plaintiffs' current demand that the District use November 5, 2015, as the starting point for its document production is inconsistent with Plaintiffs' own requests. To the extent there are specific categories of documents that Plaintiffs believe are relevant covering the time period between November 5, 2015, and November 5, 2018, the District invites Plaintiffs to identify those categories of documents, and the District will evaluate those requests on a case-by-case basis. But Plaintiffs have failed to explain why documents pre-dating November 2018 are relevant, especially when Plaintiffs themselves determined that information in EvidenceOnQ is only relevant beginning in November 2018.

### B.     Updating Discovery Responses

Plaintiffs assert that the District has "failed" to update its discovery responses. December 16 Letter at 3. Plaintiffs' assertion, of course, presumes that the District's responses require updates, but that presumption appears to be based entirely on when Plaintiffs' requests were

2

propounded. The District has no reason to believe that it is not currently in compliance with Rule 26(e).[1]

With regard to Plaintiffs' demand that the District catalogue which documents were produced in response to which request, the District will not do that absent an explanation as to why that is necessary. Document production in this case has been minimal and it should be self-evident to Plaintiffs which documents were produced in response to which requests. Further, Plaintiffs' repetitive and opaque discovery requests would make such an effort unduly burdensome. Unless Plaintiffs have an actual reason for making this demand, the District will not entertain their make-work request.

### C. Privilege Log

The District has withheld one document on the basis of attorney work-product, but a version of that document has already been produced that did not contain attorney work-product. The District has also withheld a small number of PD-81Cs because they concerned juveniles. The District is prohibited by law from disclosing information concerning juveniles without a court order. However, given that the District has already produced thousands of PD-81Cs that do not pertain to juveniles, in addition to any PD-81Cs concerning Plaintiffs, the District does not see why under these circumstances that the Parties would undertake the burden of seeking court orders relating to the release of this information, which would likely require separate efforts for each juvenile. The District will provide a log identifying the withheld documents prior to the close of discovery.

## III. DOCUMENT REQUEST DEFICIENCIES

### A. Plaintiffs' First Set of Document Requests

#### 1. RFP Request No. 1

Plaintiffs' discussion of Request No. 1 ignores what this case is about: the possession of Plaintiffs' property by MPD as evidence and the procedures available to Plaintiffs to challenge MPD's possession of their property as evidence. As Plaintiffs are already aware, the only avenue available for an individual to challenge the District's possession of his property as evidence is by filing a motion in D.C. Superior Court pursuant to Criminal Rule of Procedure 41(g). Notice of Rule 41(g) is provided by publication of the Criminal Rules on the D.C. Superior Court's website. This Request has nothing to do with those issues.

---

[1] Plaintiffs misread Rule 26(a)(1)(A)(i). That section does not require a party to identify "any witness likely to have discoverable information," as asserted by Plaintiffs. It only requires disclosure of witnesses that a party is likely to rely on in support of its claims or defenses. Plaintiffs also appear to have overlooked Rule 26(e)(1)(A). If a witness that a party is likely to rely on to support its claims or defenses becomes known to the opposing party, Rule 26 does not require a party to go through the meaningless formality of updating its initial disclosures.

3

As Plaintiffs are well aware, the District has already produced all documents in its possession identified after a reasonable search concerning the property of Parrott, Iracks, and Joyner that relate to the seizure of that property and efforts to have the property returned. While Plaintiffs' claim that the District never provided any information about the seizure of former Plaintiff Joyner's vehicle, December 16 Letter at 4, that claim is not accurate. The District has produced many documents concerning the seizure of Joyner's vehicle and efforts to have his vehicle returned to him as is readily apparent from the face of the documents. *See* DC-2021-cv-2930-00002713–2846.

But the District will not entertain Plaintiffs' demand that it produce "all documents of whatever kind" relating to Plaintiffs' property, especially given that Plaintiffs do not have any remaining claims concerning the validity of the seizure or retention of their property. For example, as Plaintiffs know, Parrott's vehicle was seized because it was used in the commission of a crime. Documents concerning MPD's investigation into that crime have absolutely no bearing on Plaintiffs' procedural due process claims.

Plaintiffs' arguments concerning EvidenceOnQ have been discussed by the Parties ad nauseum. EvidenceOnQ is MPD's primary system for tracking seized property. The District long ago provided Plaintiffs with an export from EvidenceOnQ that included *all* available data fields. The District has explained to Plaintiffs many times that MPD does not track on a system-wide basis which vehicles or smartphones are related to a papered Superior Court prosecution. Further, Plaintiffs questioned Detective McCarthy extensively about that subject and Detective McCarthy repeatedly explained that the only way to definitively determine whether seized vehicles and smartphones were related to a papered Superior Court prosecution would be to conduct a case-by-case analysis. The District has also repeatedly explained to Plaintiffs that MPD does not have a specific system set up to track when a criminal defendant inspected property and that it does not possess information about a piece of property's actual owner. Taking Parrott again as an example, although she alleges that she is the "owner" of the vehicle that was seized from her, she also alleges that the vehicle is not registered in her name, rather, it is registered to her mother. *See* Am. Compl. ¶ 229. Presumably, Parrott is asserting that her mother registered the vehicle by attesting to the D.C. DMV that she had power of attorney for Parrott, whose name presumably appears on the certificate of title. When MPD seizes a piece of property, and it seizes thousands of pieces of property each year, it does not conduct an extensive investigation into who the *actual* owner of the property may be. Regardless, the discovery sought by Plaintiffs has nothing to do with their ability to contest the seizure of their property or their notice of those procedures.

To the extent Plaintiffs have sought discovery that is actually relating to their procedural due process claims, the District has worked with them in good faith to provide that discovery. For example, Plaintiffs allege that Rule 41(g) is only available to challenge the seizure of property if a criminal case has been initiated in Superior Court. To that end, the District investigated its ability to identify for Plaintiffs which pieces of property were related to criminal cases, and the District provided Plaintiffs with all information it could reasonably obtain—without conducting a case-by-case analysis for thousands of pieces of property—that would enable Plaintiffs to make that determination.

4

Finally, to the extent Plaintiffs believe that there is still *information* they need, they should focus on identifying that information and end their myopic focus on fields.

       **2.**     **RFP Request No. 2**

The District incorporates its response to Request No. 1. To reiterate, the District has already produced to Plaintiffs all documents concerning the actual seizure of their property along with their efforts to seek the return of that property. The District has already produced to Plaintiffs an export from EvidenceOnQ that identifies thousands of vehicles and cellphones that have been seized by MPD since November 1, 2018, along with all information contained in EvidenceOnQ about those seizures (with the exception of social security numbers). The District has already produced to Plaintiffs information reasonably available to it that identifies which pieces of property are related to criminal prosecutions.

The District will not respond to Plaintiffs' demand that it produce information concerning why property was seized from putative class members. *See* December 16 Letter at 6. As discussed above, the reason why any individual's property was seized is not relevant to Plaintiffs' procedural due process claims.

       **3.**     **RFP Request Nos. 3–4**

The District incorporates its above responses. To reiterate, the District has already produced all available fields of data from EvidenceOnQ, which is the database that MPD uses to track seized property. Efforts to obtain the same information from other databases would be unduly burdensome and not proportional to the needs of the case. Further, Plaintiffs fail to identify any information missing from EvidenceOnQ that both would be found in other databases and would be relevant to their procedural due process claims. For example, Plaintiffs demand that the District search the Axion database for pictures and video of seized property. Yet Plaintiffs fail to explain how pictures or video of seized property has anything to do with their claims.

Lastly, the District has time and again informed Plaintiffs that it has already produced to them all documents in its possession in the nature of manuals, data dictionaries, etc., that relate to EvidenceOnQ.

       **4.**     **RFP Request No. 5**

The District incorporates its above responses. In addition, the District has already identified for Plaintiffs the individual at MPD most knowledgeable about the operation of EvidenceOnQ (Commander Conboy), and Plaintiffs have already deposed Commander Conboy. Further, as explained above, Plaintiffs' focus on obtaining a list of all fields from EvidenceOnQ misses the point. If there is information Plaintiffs believe that is relevant to their procedural due process claims that they are seeking, they should identify that information.

Plaintiffs also continue to misrepresent the content of the deposition testimony of Jerrell Carter, which was taken nearly nine years ago and in a case involving entirely different claims. Plaintiffs claim that Carter explained in his testimony "how a list of fields in EvidenceOnQ could

be generated out of EvidenceOnQ as a report." December 16 Letter at 9. The District has included the testimony referenced by Plaintiffs below and invite Plaintiffs to identify where Carter does so.

> Q: So, looking back at Exhibit 2, the big user manual, so we are going to start on page 27. So, this is Chapter 4, it's entitled, "Queries." Would you mind reading that first paragraph there?
>
> A: "With the powers and flexibility of the EvidenceOnQ desktop application, it can search the system quickly and easy, because every field on the print file screen is searchable, you can search by any criteria or any combination of fields. You can also search by date, by location, by scanning, as a group, or by creating your own customized search."
>
> Q: Thank you. So, is it -- you are saying then that any field on the screens that we talked about are searchable?
>
> A: Yes.

Deposition of Jerrell Carter at 89:4–22 (Mar. 1, 2016). Carter, literally, never uses the word "report" once in the testimony despite Plaintiffs' claim to the contrary. Regardless, Plaintiffs' focus should be on whether EvidenceOnQ can provide them with information relevant to their claims, not on the theoretical capabilities of EvidenceOnQ.

### 5. RFP Request No. 6

The District incorporates its above responses.

### 6. RFP Request No. 7–8

The District incorporates its above responses.

### 7. RFP Request No. 9

The District incorporates its above responses. The District agrees to provide Plaintiffs with an explanation of the meaning of the headers in the export from EvidenceOnQ that was produced to Plaintiffs. The District will also investigate the feasibility of capturing screenshots of the drop down menus.

### 8. RFP Request No. 10–12

The District incorporates its above responses. Further, these Requests concern the seizure of property for civil forfeiture. Plaintiffs' claims do not concern the seizure of property for civil forfeiture. Even if these Requests sought relevant information, as stated in the District's objections, the Requests reference and rely on deposition testimony that was not provided to the District.

### 9. RFP Request Nos. 14–16

The District incorporates its above responses. In addition, Plaintiffs' abridged summary of its Requests fails to accurately convey the extreme breadth of those Requests. The District maintains its objection that the scope of these Requests is overbroad, unduly burdensome, and not proportional to the needs of the case.

Given that Plaintiffs have not previously raised any concerns with the District's responses to these Requests, the District will investigate and confirm that it has provided the documents it agreed to produce. However, Plaintiffs still appear to miss the point. For example, Request No. 16 seeks documents relating to MPD's processing of evidence. MPD's processing of evidence has no relevance to the litigation at this stage because the processing of evidence has nothing to do with Plaintiffs' ability to challenge the seizure of their property under Rule 41(g).

### 10. RFP Request Nos. 17–18

The District incorporates its above responses. Request No. 17 concerns property seized for forfeiture, which is not a relevant issue in this case. And, although Plaintiffs assert that Request Nos. 16 and 18 seek different categories of documents, Plaintiffs fail to explain how the Requests are in any way different. If Plaintiffs are able to actually articulate the supposed differences between these Requests, the District will consider Plaintiffs' explanation, then reevaluate the sufficiency of its productions.

### 11. RFP Request No. 19

The District incorporates its above responses. According to Plaintiffs, the District should interpret Request No. 19 as requiring it to produce every single document, including all emails, that were exchanged between any U.S. Attorney's Office employee or any Office of the Attorney General employee and any MPD employee concerning any piece of property from November 5, 2015, through the present. The District declines to do so. The District has already searched for and produced those documents to the extent they relate to Plaintiffs' property.

Further, any procedures relating to the tracking of property have nothing to do with Plaintiffs' ability to challenge the seizure of their property or their notice of any available procedures.

### 12. RFP Request No. 20

The District incorporates its above responses. Not only is property seized for forfeiture not relevant to this litigation, but this Request is clearly overbroad and unduly burdensome given that it demands that the District search for property releases covering nearly 15 years.

### 13. RFP Request No. 21

The District incorporates its above responses. As an initial matter, the District notes that Plaintiffs quietly attempt to narrow the scope of this Request to November 1, 2018, to the

7

present, from April 1, 2010, to the present, which further undermines their argument that November 5, 2015, should for some reason be the appropriate starting date for document production. December 16 Letter at 13. Regardless, Plaintiffs' argument in support of this Request makes no sense. This Request is not limited to *Plaintiffs'* property. It concerns *any* vehicle offered as evidence. It is unclear how a different vehicle owned by a different person would impact "whether Plaintiffs had notice and an opportunity to be heard." *Id*.

Even assuming this Request sought relevant information (it does not), it is plainly unduly burdensome and not proportional to the needs to the case. To respond, the District would need to identify every vehicle seized as evidence, then conduct a case-by-case analysis to determine if at any stage in that prosecution the vehicle was not just admitted as evidence, but offered as evidence.

Further, Plaintiffs again miss the point. A vehicle being held as evidence in connection with a criminal prosecution would not be held for the sole purpose of being introduced as evidence itself. It would also be held so that the defendant could inspect it and could also be held so that any additional testing that might be relevant could be performed.

### 14. RFP Request No. 22

No response is required at this time.

### B. Plaintiffs' Second Set of Requests for Production of Documents

Plaintiffs' discussion of what has transpired between the Parties concerning this Request is again grossly inaccurate and misleading.

First, as the District has explained to Plaintiffs many times, it has no ability to determine which motions for return of property were filed by individuals who were not criminal defendants absent a case-by-case analysis using information that is equally available to Plaintiffs.

Second, as the District has explained to Plaintiffs many times, it has no greater ability to obtain publicly available court documents than Plaintiffs.

Third, as the District has explained to Plaintiffs many times, the Office of the Attorney General has no ability to simply override a Court order sealing a case. The District has repeatedly informed Plaintiffs that a motion must be filed to allow the Parties to access those records, and the District has repeatedly offered to join Plaintiffs in that effort. Thus far, Plaintiffs have refused those offers.

### C. Plaintiffs' Third Set of Requests for Production of Documents

### 1. RFP Request No. 1

Plaintiffs again misrepresent the record. Plaintiffs claim that "[t]he District did not plead affirmative defenses in its Answer." December 16 Letter at 16. It plainly did. *See* Answer [48].

8

The District has no additional documents to produce in response to this Request at this time, but will supplement its production as necessary.

### 2. RFP Request No. 2

The District maintains its objections to this Request. Even though this Request does not seek relevant documents, the District has already produced the requested documents relating to Plaintiffs. Plaintiffs' demand that the District search the inboxes of hundreds of individuals using thousands of search terms is plainly overbroad, unduly burdensome, and not proportional to the needs of the case.

### 3. RFP Request No. 3

Plaintiffs yet again misrepresent the record. As explained in the District's response to this Request, which Plaintiffs fail to acknowledge, the District stated that it would produce documents relating to the named Plaintiffs. But, as Plaintiffs are obviously aware, the Parties engaged in further discussions regarding this Request, and the District agreed to produce PD-81Cs that it was able to collect using EvidenceOnQ. Accordingly, the District produced more than 3,000 PD-81Cs on October 4, 2024. Plaintiffs' claim that the District has only "produced 11 pages comprising three PD 81Cs and four property records" is therefore incorrect.

### 4. RFP Request No. 4

The District incorporates its above responses, and stands on its prior response and objections to this Request. However, Plaintiffs' aversion to accuracy continues. Plaintiffs argue that the District took the position that "the notices provided are irrelevant," and then attack that strawman by stating that "[a]s the District itself admits, the current part of Plaintiffs claim [sic] is that the District 'failed to provide . . . constitutionally adequate notice of available procedures for the return of property.'" December 16 Letter at 18. However, this Request does not concern "notice of available procedures for the return of property." What the District actually stated was that "this Request seeks irrelevant information to the extent it seeks information about the notice of seizure itself" because "[t]his Court dismissed Plaintiffs' claims concerning notice of seizure."

### 5. RFP Request No. 5

The District incorporates its above responses, and stands on its prior response and objections to this Request.

## D. Plaintiffs' Fourth Set of Requests for Production of Documents

### 1. RFP Request No. 1

The District incorporates its above responses, and stands on its prior response and objections to this Request.

9

### 2. RFP Request No. 2

The District incorporates its above responses, and stands on its prior response and objections to this Request.

### 3. RFP Request No. 3

The District incorporates its above responses, and stands on its prior response and objections to this Request.

### 4. RFP Request No. 4

The District incorporates its above responses, and stands on its prior response and objections to this Request. As noted above, the District has already produced to Plaintiffs everything it has in the nature of a "data dictionary," and the District agrees to provide Plaintiffs with an explanation of the meaning of the headers in the EvidenceOnQ export that was produced to Plaintiffs.

### 5. RFP Request No. 5

The District incorporates its above responses, and stands on its prior response and objections to this Request.

As to the search that the District conducted to identify documents relevant to Plaintiffs' own property, Plaintiffs have known for ages the custodians and search terms that the District used to identify responsive documents. Plaintiffs never raised any concerns about the parameters of that search. To the extent Plaintiffs wanted the District to conduct a more expansive search, they should have raised that with the District. While the District remains willing to consider suggestions from Plaintiffs as to the scope of that search, the District will of course have to take into account the belated nature of such suggestions when assessing the burden associated with any additional searches.

### 6. RFP Request No. 6

The District incorporates its above responses, and stands on its prior response and objections to this Request. Tellingly, despite Plaintiffs' bluster, they fail to explain how information relating to obtaining data from cellphones is "directly relevant" to whether Plaintiffs had a constitutionally adequate remedy to challenge the seizure of their property.

With regard to the documents the District stated it would produce, the District will determine whether it has any additional documents to produce, and if so, will produce those documents by January 24, 2025.

## IV. INTERROGATORY DEFICIENCIES

### A. Plaintiffs' First Set of Interrogatories

#### 1. Interrogatory No. 1

The District incorporates its above responses, and stands on its prior response and objections to this Interrogatory.

#### 2. Interrogatory No. 2

The District incorporates its above responses. As Plaintiffs are aware, since the District's response to this Interrogatory, the District has produced a voluminous export from EvidenceOnQ of all reasonably available information relating to seized vehicles and cellphones; it has produced all reasonably available information that identifies which seized vehicles and cellphones are related to criminal cases; and it produced all PD-81Cs that were obtainable from EvidenceOnQ. Further, Plaintiffs fail to explain how the information they are seeking is at all relevant to *their* procedural due process claims or motion for class certification.

### B. Plaintiffs' Second Set of Interrogatories

As noted above, Plaintiffs' claim that the District did not plead any affirmative defenses is simply wrong. Further, Plaintiffs' reliance on *Lennon v. U.S. Theatre Corp.*, 920 F.2d 996 (D.C. Cir. 1990), is misplaced. *Lennon* was discussing the waiver of affirmative defenses after a final judgment had been issued in district court. An applicable case would be *Barnes v. District of Columbia*, 270 F.R.D. 21, 22–23 (D.D.C. 2010) (RCL). There, the plaintiffs requested that the defendant "[s]tate each affirmative defense on which you intend to rely and please describe each document and deposition transcript and other evidence on which you intend to base each defense." In response, the defendant directed the plaintiffs to its answer, stated that it had already produced all documents that supported its affirmative defenses, and stated further that it "reserves the right to assert additional defenses as further information becomes available." *Id*. The plaintiffs moved to compel on the ground that the defendant's response was not sufficient. *Id*. The court denied the motion to compel because "[u]nder the law of this Circuit, defendant does not yet have to raise these defenses. It may wait until the summary judgment stage or possibly the pretrial statement stage to assert all of its defenses." *Id*.

### C. Plaintiffs' Third Set of Interrogatories

#### 1. Interrogatory No. 1

The District incorporates its above responses, and stands on its prior response and objections to this Interrogatory. In addition, Plaintiffs claim that they need all records of inspections of property by defense counsel, presumably, "to make their case." Yet, Plaintiffs never explain how the details surrounding the inspection of property by defense counsel is in any way relevant to their remaining claims. It is time for Plaintiffs' fishing expeditions, which appear to be aimed solely at manufacturing discovery disputes, to end.

    **2.**    **Interrogatory No. 2**

The District incorporates its above responses, and stands on its prior response and objections to this Interrogatory.

    **3.**    **Interrogatory No. 3**

The District incorporates its above responses, and stands on its prior response and objections to this Interrogatory.

    **4.**    **Interrogatory No. 4**

The District incorporates its above responses, and stands on its prior response and objections to this Interrogatory.

    **5.**    **Interrogatory No. 5**

The District incorporates its above responses, and stands on its prior response and objections to this Interrogatory.

    **6.**    **Interrogatory No. 6**

The District incorporates its above responses, and stands on its prior response and objections to this Interrogatory.

Sincerely,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

By:    */s/ Richard P. Sobiecki*
       Richard P. Sobiecki
       Assistant Attorney General

Cc:    Helen M. Rave, Assistant Attorney General
       Brendan Heath, Assistant Attorney General