# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**OLIVIA PARROTT**, *et al.*,

    *Plaintiffs,*

  v.

**DISTRICT OF COLUMBIA,**

    *Defendant.*

Case No. **1:21-cv-2930-RCL**

## MEMORANDUM OPINION

Before the Court is the plaintiffs' Motion to Reconsider this Court's Memorandum Opinion dismissing in full Counts I and V–VII of the Amended Complaint and dismissing in part Counts II–IV. The plaintiffs specifically ask for reconsideration of their Fourth and Fifth Amendment claims, relying in large part on the recent D.C. Circuit opinion in *Asinor v. District of Columbia*, 111 F.4th 1249, 1251 (D.C. Cir. 2024). The plaintiffs also ask this Court to "clarify" several of its holdings. In the alternative, the plaintiffs seek leave to further amend their Amended Complaint under Federal Rule of Civil Procedure 15(a)(2). For the reasons that follow, the requests presented in the plaintiffs' Motion will be **DENIED**.

## I.  BACKGROUND

The Court's Memorandum Opinion dismissing most of the plaintiffs' claims sets out the factual background of this case. Mem. Op., ECF No. 45. The Court will assume familiarity with that Opinion and provide only a brief recounting of the facts necessary to resolve the instant Motion. Pls.' Mot., ECF No. 107. Three named plaintiffs bring claims on behalf of a putative class alleging that their personal property was confiscated by the District of Columbia Metropolitan Police Department ("MPD") in violation of their Fourth and Fifth Amendment

1

rights.[1]  Each of the named plaintiffs alleges MPD confiscated their vehicle as evidence in a criminal case in which they were not themselves accused.  While none of the plaintiffs was a defendant or even a witness in the criminal cases, they each had the misfortune of owning property that was in the wrong place at the wrong time.

### A. Factual Background

Plaintiff Olivia Parrott owns a Volkswagen Passat, which she had parked in front of her house on the afternoon of August 22, 2019.  Am. Compl. ¶ 203, ECF No. 18.  Ms. Parrott emerged from the residence around 11:00 p.m. that evening when she heard gunshots fired outside, and she saw her car parked where she had left it earlier that afternoon.  *Id.* ¶ 210.  From her vantage point, however, she could not see that her car was now riddled with bullet holes from the gunshots she had just heard.  *Id.* ¶¶ 204–05.  When she left home the next morning at around 7:00 a.m., her car was no longer parked there.  *Id.* ¶ 216.  Unbeknownst to Ms. Parrott, MPD had confiscated the car overnight because they determined it contained evidence—the bullet holes along with blood splatter—in connection with the shooting of Melvin Simmons.[2]  *Id.* ¶ 212.  MPD also confiscated three iPhones Ms. Parrott owned that were in the car at the time MPD confiscated it.[3]  *Id.* ¶ 217, 221.

Plaintiff Bardino Joyner was a resident of South Carolina in early 2020 when he lent his truck to his brother.  *Id.* ¶¶ 263–64.  For unspecified reasons, Mr. Joyner's brother then lent the truck to a third party without Mr. Joyner's knowledge,[4] and the truck somehow found its way to

---

[1] The plaintiffs' common-law claims were dismissed in the Court's earlier Order.  They do not seek reconsideration of that dismissal.

[2] Mr. Simmons was Ms. Parrott's boyfriend at the time.  Am. Compl. ¶ 212.

[3] It is unclear whether MPD knew that the iPhones were in the car at the time they confiscated it.  *See* Am. Compl. ¶ 214 (omitting the phones from a description of items found by MPD at the scene).

[4] The Amended Complaint states that the car was parked in Southeast Washington, DC by someone unknown to "Mr. Tyson."  Am. Compl. ¶ 265.  The Court has searched the record and found no other mention of a "Mr. Tyson" and assumes this was a typo on the part of plaintiffs' counsel.

Washington, D.C., where it was parked on a street in Southeast D.C. in May 2020. *Id.* ¶ 266. Having classified the truck as evidence of a crime, MPD towed the truck and marked it for potential civil forfeiture. *Id.* ¶ 267.

Plaintiff Dreyvon Iracks owns an SUV that was towed by MPD from a Maryland parking lot after MPD issued a BOLO, or "look-out," for the vehicle. *Id.* ¶¶ 284–85.

An important fact ties all three of the named plaintiffs together and is critical to understanding the Court's Memorandum Opinion: Each plaintiff ascertained the location of their vehicle *within twenty-four hours* of its confiscation by MPD. Ms. Parrott used "an app" on one of the iPhones she left in her car to discover the locations of both the iPhones and her car at the D.C. Forensics office the morning after they were confiscated by MPD. *Id.* ¶¶ 217–18. Ms. Parrott did not know where the items were for a period of, at most, eight hours—from 11:00 p.m. the night of the shooting until shortly after 7:00 a.m. the morning after the shooting. *Id.* ¶ 216. Mr. Joyner, meanwhile, alleges that his lawyer started communicating with MPD "almost as soon as MPD took the vehicle." *Id.* ¶ 269. And Mr. Iracks alleges that he was able to obtain *pro bono* representation from an attorney he "ran into" at the D.C. Superior Court while seeking information on the whereabouts of his SUV. The attorney subsequently helped him "locate and retrieve his vehicle." *Id.* ¶ 286.

Despite the relative ease with which the plaintiffs discovered the location of their confiscated property, recovering the seized vehicles proved no small task. MPD allegedly held Ms. Parrott's car for a period spanning more than two years, from August 2019 to September 2021.[5] *Id.* ¶ 198. And MPD allegedly still retains the three iPhones owned by Ms. Parrott as of

---

[5] Although the plaintiffs state that August 2019 to September 2021 represents a period of "20 months," the Court presumes that this, too, was a typo or oversight on their part. The other possibility is that the plaintiffs meant that twenty months passed from November 2019, which is the date that someone was finally charged in the shooting that implicated the car, to September 2021. But even so, that period is only twenty-two months, not twenty.

the filing of the Amended Complaint. *Id.* ¶ 201; Pls.' Mot. 30. Mr. Joyner's car was seized in May 2020, and he did not recover it until May 2021. Am. Compl. ¶ 283. And Mr. Iracks's car, which MPD seized in October 2021, was released to him after "nearly a year." Pls.' Mot. 17.

**B. Procedural History**

Based on these events, the plaintiffs' brought a lawsuit against the District of Columbia. The Amended Complaint lists seven counts against the District. Am. Compl. ¶¶ 48–61, ECF No. 18. Count I alleges that MPD's seizure of the plaintiffs' property violated the Fourth Amendment's protection against unreasonable seizure. While conceding that the seizures were initially constitutional, the plaintiffs allege that the *retention* of their property "became unreasonable under the Fourth Amendment after the vehicles and smartphones were searched and were processed for any evidentiary value they might have."[6] *Id.* ¶ 363. Counts II–IV and VI collectively allege procedural due process violations. Count II claims that the District violated the plaintiffs' procedural due process rights by "fail[ing] to provide notice at seizure, after processing [the] vehicle for evidence, and after a prosecution was instituted." *Id.* ¶¶ 386–94. Count III claims that the District violated the plaintiffs' procedural due process rights by "fail[ing] to provide prompt post seizure hearings and notice of the hearings." *Id.* ¶¶ 395–403. Count IV claims that the District violated the plaintiffs' procedural due process rights by failing to "[r]eturn . . . [p]roperty when no longer needed by the District." *Id.* ¶¶ 404–13. And Count VI claims that the District violated the plaintiffs' procedural due process rights by "fail[ing] to provide notice and prompt post seizure hearings for vehicles and smartphones classified as 'evidence' and also seized for forfeiture

---

[6] Count I also alleges that MPD has a policy or custom of retaining "potentially discoverable material" longer than the Fourth Amendment permits. Am. Compl. ¶ 62. This claim apparently stems from an interpretation of MPD General Order 601.2. *See id.* ¶ 364. But as the Court noted in a footnote in the Memorandum Opinion, the plaintiffs misinterpret MPD General Order 601.2 because the rule deals with "Potentially Discoverable Material," which by MPD's definition does include tangible evidence like the plaintiffs' cars or phones. Mem. Op. 9 n.3. The plaintiffs have not sought reconsideration of this holding, and the Court will therefore not address it here.

determinations." *Id.* ¶¶ 428–36. Count V alleges that the vehicles and iPhones were seized without just compensation in violation of the Takings Clause of the Fifth Amendment. *Id.* ¶¶ 414–27. And Count VII alleges a common-law tort for "wrongful detention of property."[7] *Id.* ¶¶ 437–44.

On February 22, 2023, the Court granted in part and denied in part the District's motion to dismiss. Order of Feb. 22, 2023, ECF No. 46. The Court dismissed Counts I and V–VII "in full," and Counts II–IV "insofar as they allege that the defendant unlawfully failed to notify plaintiffs of the fact that their property had been seized." *Id.* Counts II–IV would proceed on a narrower theory than the plaintiffs had articulated.

> i.    *Dismissal of Count I*

The Court dismissed the plaintiffs' Fourth Amendment claim that the length of time that their property was held by the District rendered the initially lawful seizure unconstitutional (Count I), albeit on a different basis than the one offered by the District. The Court rejected the District's argument that the Fourth Amendment "has nothing to say about the length of time for which seized property [may be] retained" by the government. *Id.* at 11. Although the D.C. Circuit had not, at the time of the motion, spoken to the issue, the Court relied on one of its own rulings in an earlier case, which held that "seizure of property for use as evidence that is valid at its inception may become unreasonable if it outlasts its initial justification." *Id.* (citing *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019) (Lamberth, J.)).[8]

After rejecting the narrow understanding of the Fourth Amendment advanced by the District, the Court also rejected the plaintiffs' Fourth Amendment arguments because they sought too broad a rule. Specifically, the Court took the plaintiffs to be asking for a rule that "any retention

---

[7] The plaintiffs do not seek reconsideration of the Court's dismissal of their common-law claims here.
[8] The Court found additional support for its *Smith* decision in both a Ninth Circuit opinion and in an earlier decision by Judge Chutkan. Mem. Op. 11 (first citing *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), and then citing *Avila v. Dailey*, 246 F. Supp. 3d 347 (D.D.C. 2017)).

of a vehicle or smartphone seized as evidence after it has been 'processed' or a reasonable time for 'processing' has passed, is *per se* unconstitutional." Mem. Op. 12. But as the Court noted, there are plenty of circumstances where the government's retention of personal property after "processing" could be reasonable for Fourth Amendment purposes. *Id.* at 12–13. Ultimately, the Court held that "[i]t must be reasonable, at a minimum, for the government to retain property seized as evidence for as long as it is pertinent to an ongoing, lawful criminal investigation or prosecution." *Id.* at 13.

  ii.  *Partial Dismissal of Counts II-IV*

  Second, the Court dismissed Counts II–IV, the plaintiffs' procedural due process claims, "insofar as they allege that the defendant unlawfully failed to notify plaintiffs of the fact that their property had been seized." *Id.* at 16. The Court distilled the plaintiffs' claims in these Counts to three essential theories, two of which are relevant here. First, the plaintiffs claimed that the District violated the plaintiffs' procedural due process rights by failing to provide a procedure by which the plaintiffs could retrieve their property *after* deprivation but *before* the filing of criminal charges. After analyzing D.C. Superior Court Rule 41(g)[9]—the one possible procedure that might have satisfied due process—the Court held that the Rule is not "reliably applicable" to property that has been confiscated by the government in relation to an investigation in which no criminal charge has been brought. Mem. Op. 21. The Court therefore allowed the plaintiffs to proceed on the first theory presented by Counts II–IV "insofar as they allege an unconstitutional lack of procedures available to contest a deprivation of property" *prior to the filing of criminal charges.* *Id.* at 22.

---

[9] Rule 41(g) states in full that: "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." D.C. Super. Ct. R. Crim. P. 41(g).

Second, the plaintiffs claimed that the District failed to provide plaintiffs *prompt notice* either that MPD had seized their property or that procedures existed through which they could retrieve it.[10]  The Court agreed with the District that the amended complaint did not adequately allege a failure to notify the plaintiffs that their property had been seized because the plaintiffs were made aware of the seizures within hours of their property being seized. *Id.* at 15.  Because so little time passed between the seizure of the plaintiffs' property and their discovery of the property's whereabouts, the Court held that they had failed to establish that the District could have taken reasonable steps to notify them of the seizures sooner. *Id.* at 25.

However, the Court also held that the case law on Rule 41(g) procedure was "either ambiguous, nonbinding, or not entirely on point" and that to learn precisely how one could property file a Rule 41(g) motion in Superior Court was "more than [could] be expected of a layperson." Mem. Op. 26.  The Court thus allowed a second claim to proceed under Counts II–IV "insofar as [it] allege[s] constitutionally inadequate notice of available procedures for the return of property." *Id.*

### iii.    Dismissal of Count V

Finally, the Court dismissed Count V, the plaintiffs' Fifth Amendment Takings claim.  The plaintiffs had argued that "in the case of physical appropriations by the government, by any means, the government must pay for what it takes, even for a temporary physical taking." Pls.' Opp'n. 52.  However, this argument ran counter to the weight of circuit precedent holding that "seizure and retention . . . of property pursuant to a valid exercise of the police power can never constitute an unlawful taking." Mem. Op. 28 (collecting cases).  Because no Circuit had held that the seizure

---

[10] The third theory encompassed Count VI, the District violated Mr. Joyner's and Iracks's due process rights by failing to provide a post-deprivation procedure for their property being held for potential civil forfeiture. *Id.* at 15.  Because this last theory did not state a standalone claim specific to individuals whose property was seized both as evidence and for potential forfeiture, the Court dismissed Count VI in full. Mem. Op. 15–16.

of property for use as evidence constituted a taking for public use within the meaning of the Fifth Amendment, the Court dismissed Count V in full.

What remained, therefore, were two live claims on which the plaintiffs could proceed under Counts II–IV. First, they retained a claim that because Rule 41(g) arguably does not apply to property, like the plaintiffs', seized and retained for a period prior to formal criminal charges, such retention violated their procedural due process rights. Second, they retained a claim that the District had separately violated their procedural due process rights by failing to provide adequate notice of available procedures for the return of property.

The case proceeded through over two years of discovery on these two narrow claims before the plaintiffs filed the instant Motion for Reconsideration. The District has filed an Opposition ("Dist. Opp'n."), ECF No. 109, and the plaintiffs have filed a Reply ("Pls.' Repl."), ECF No. 113. The Motion is therefore ripe for review.

## II.    LEGAL STANDARDS

### A. Reconsideration Under Rule 54(b)

Motions for reconsideration do not fall neatly into a Federal Rule of Civil Procedure, but courts in this District have typically reviewed reconsideration of interlocutory orders under Rule 54(b), which allows district courts to revise any such order "at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). *See, e.g.*, *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (Lamberth, J.) ("Rule 54(b) governs reconsideration of orders that do not constitute final judgments in a case.") (citations omitted). However, the judicial interest in finality disfavors reconsideration, and such motions should only be granted "as justice requires." *Montgomery v. IRS*, 356 F. Supp. 3d 74, 79 (D.D.C. 2019) (Boasberg, J.). Reconsidering prior orders through the lens of Rule 54(b) affords district courts the "broad discretion" of that Rule, but courts in this District have held that justice may require a court to reconsider one of its previous orders at least

where there has been "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the [court's previous] order." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 96 (D.D.C. 2018) (internal quotations omitted). While a court may use its discretion to reconsider orders for reasons other than those outlined above, there must be "good reason" to do so. *Cobell*, 355 F. Supp. 2d at 540. The moving party bears the burden of demonstrating "that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Bank Julius*, 315 F. Supp. 3d at 96.

### B. Clarification

As with motions for reconsideration, there is no Federal Rule of Civil Procedure governing "motions for clarification." *Barnes v. District of Columbia*, 289 F.R.D. 1, 13 n.6 (D.D.C. 2012) (Lamberth, C.J.). Nevertheless, such motions are generally allowed by federal courts so long as they ask the court to "construe the scope of [a previous] Order by applying it in a concrete context or particular factual situation." *U.S. v. Philip Morris USA Inc.*, 793 F. Supp. 2d 164, 168–69 (D.D.C. 2011) (Friedman, J.). However, such motions "have a limited role," which is to "clarify something ambiguous or vague, not to alter or amend" the court's previous order. *Steele v. United States*, No. 14-cv-1523-RCL, 2023 WL 6215790, at *5 (D.D.C. Sept. 25, 2023) (citing *Phillip Morris*, 793 F. Supp. 2d at 168). Therefore, requests to clarify a previous order are not asking the court to alter or modify the result but merely to help the party seeking clarification grasp the order's "meaning or scope in the face of an actual and material ambiguity." *Sai v. Transp. Sec. Admin.*, No. 14-cv-403-RDM, 2015 WL 13889866, at *3 (D.D.C. Aug. 19, 2015).

### C. Amendment Under Rule 15(a)

Parties may amend their pleadings "once as a matter of course" so long as they do so within twenty-one days of serving the pleading *or* within twenty-one days after service of a responsive

pleading or a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(A)–(B). If a party fails to amend their pleading within the later of these two windows, then they may amend their pleading "only with the opposing party's written consent or the court's leave." *Id.* 15(a)(2). Courts are to "give leave when justice so requires." *Id.* Because of this, the non-moving party "carries the burden in persuading the court to deny leave to amend." *Robinson v. District of Columbia*, 283 F.R.D. 4, 6 (D.D.C. 2012) (Boasberg, J.) (internal quotations omitted). However, district courts retain broad discretion in whether to grant or deny motions to amend. *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010). And district courts have found that "undue delay, bad faith, repeated failure to cure a pleading's deficiencies, undue prejudice to the opposing party, and futility of amendment" provide sufficient reason to deny leave to amend. *Nwachukwu v. Karl*, 222 F.R.D. 208, 211 (D.D.C. 2004) (Urbina, J.) (citing *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999)).

## III.    DISCUSSION

### A. The Court Will Deny the Motion for Reconsideration Because the Plaintiffs Have Not Demonstrated That Their Claims Survive Under *Asinor*

The plaintiffs advance three main arguments as to why this Court should reconsider its earlier Memorandum Opinion. None is persuasive.

First, they argue that an intervening case from the D.C. Circuit, *Asinor v. District of Columbia*, 111 F.4th 1249, 1251 (D.C. Cir. 2024), necessitates reconsideration of the Court's dismissal of the plaintiffs' Fourth and Fifth Amendment claims. Pls.' Mot. 13–15. They frame *Asinor* as an "intervening change in controlling law" sufficient to warrant reconsideration. *Id.* at 13. In *Asinor*, the D.C. Circuit considered two consolidated cases[11] involving MPD's arrest of

---

[11] *Cameron v. District of Columbia*, No. 21-cv-2908-APM, 2022 WL 3715779 (D.D.C. Aug. 29, 2022); *Asinor v. Dist. of Columbia*, No. 21-cv-2158-APM, 2022 WL 3715777 (D.D.C. Aug. 29, 2022).

certain individuals for their participation in or photographing of a protest in August 2020. 111 F.4th at 1251–52. Incident to the arrests, MPD seized the individuals' personal effects, including their cell phones. After MPD released them without filing charges, the individuals sought the return of their cell phones, to no avail. *Id.* at 1251. They subsequently sued the District of Columbia, alleging violation of, among other things, their rights under the Fourth and Fifth Amendments. *Id.* at 1251–52. In each case, the district court held that the plaintiffs had failed to state a Fourth Amendment claim because the initial seizure of their phones was constitutional under the Fourth Amendment and their claims about the continued retention of the phones were "governed exclusively by the Fifth Amendment."[12] *Id.* at 1252.

A panel of the D.C. Circuit unanimously reversed, holding that in addition to the initial seizure, the *retention* of arrestees' personal property after their release must also be reasonable to comply with the Fourth Amendment. *Id.* at 1251. Acknowledging that the Amendment's "bare text" does not speak to whether its guarantees apply to "the entire duration of the government's possession of" an individual's property, the panel looked to Founding-era definitions of the word "seizure." *Id.* Finding no conclusive answer in those definitions, the panel went on to look at "history" and the "common law" as understood at the time the Fourth Amendment was adopted. *Id.* at 1253. Because the "common law recognized that property interests are impaired not only at the instant when an owner loses possession, but also for as long as the owner cannot get the property back," the panel concluded that the Fourth Amendment governed MPD's continued retention of the plaintiffs' property. *Id.* Turning toward modern case law, the Circuit found additional support for its conclusion. Citing the Supreme Court's decision in *United States v. Jacobsen*, 466 U.S. 109 (1984), the panel held that because MPD "lacked any legitimate interest"

---

[12] Both *Cameron* and *Asinor* were decided by the same district judge.

in continuing to possess the plaintiffs' cell phones after the plaintiffs' release from custody, the possession of the phones "unreasonably interfere[d] with [the plaintiffs'] possessory interests in their own property." *Id.* at 1255.

The plaintiffs ask the Court to reconsider its Memorandum Opinion as to both their Fourth and Fifth Amendment claims "in light of the *Asinor* decision." Pls.' Mot. 15. The plaintiffs argue that the Court's analysis was "not as deep or broad as that proffered by the D.C. Circuit in *Asinor*," and the Court should therefore reconsider its Opinion. Pls.' Repl. 15. To be sure, the Court did not review definitions of the word "seizure" from 1700s dictionaries as did the D.C. Circuit. Nor did it consider the "history" of the rights enshrined in the Fourth Amendment. But the Court did consider the same "modern caselaw" as the D.C. Circuit, including the "key precedent" they identified.

The Court maintained that "a seizure of property for use as evidence that is valid at its inception may become unreasonable [under the Fourth Amendment] if it outlasts its initial justification." Mem. Op. 11 (citing this Court's prior opinion in *Smith*, 387 F. Supp. 3d at 25). Indeed, this Court cited and explicitly rejected the holding of one of another session of this court in arriving at the opposite conclusion.[13] *Id.* (citing *Cameron v. Dist. of Columbia*, No. 21-cv-2908-APM, 2022 WL 3715779 (D.D.C. Aug. 29, 2022)). And that sister court's decision was the exact one overturned by the Circuit in *Asinor*. The plaintiffs tellingly offer no argument why this Court's conclusion would be different if it were to reconsider its prior decision with *Asinor* in mind. And this makes sense, for the Court analyzed the plaintiffs' claims using the same reasonableness standard ultimately embraced in *Asinor*—meaning, practically speaking, the reasoning that the

---

[13] While acknowledging its departure from the weight of authority on this question, the Court noted that the Ninth Circuit had agreed with its interpretation of the Fourth Amendment. *Id.* (citing *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017)). The *Asinor* Court would go on to cite the exact same Ninth Circuit case, finding its conclusion "more persuasive" than other circuits. *Asinor*, 111 F.4th at 1260 n.3; *see also id.* at 1262 (Henderson, J., concurring).

plaintiffs are offering now has already been considered.[14] Dist. Opp'n. 7. Therefore, it seems that the plaintiffs take exception not to the Court's failure to apply the "reasonableness" standard set forth *Asinor* so much as they object to the Court's application of that reasoning. The latter argument is addressed further below.[15]

## B. The Court Will Deny the Motion for Reconsideration Because Their Motion Either Recycles Old Arguments Or Raises Forfeited Ones

Perhaps recognizing that their reliance on *Asinor* is misplaced, the plaintiffs next argue that this Court misinterpreted their Fourth Amendment claim even under the "reasonableness" standard set forth in *Asinor*. In its Memorandum Opinion, the Court refused to adopt the plaintiffs' "blanket rule that any retention of a vehicle or smartphone seized as evidence after it has been 'processed,' or a reasonable time for 'processing' has passed, is *per se* unconstitutional." Mem. Op. 12. The plaintiffs argue that the Court misinterpreted their Fourth Amendment claim as a request for a blanket rule. Pls.' Mot. 15–20. But rather than provide any argument that the Court's construction of their claim was "clear error" (and therefore a good candidate for reconsideration), the plaintiffs double down, reproducing language from their Amended Complaint that the "seizures became unreasonable under the Fourth Amendment after the vehicles and smartphones were searched and were processed for any evidentiary value they might have." Pls.' Mot. 15 (citing Am. Compl. ¶ 363). Here, the plaintiffs go even further, arguing that "[o]nce the property itself has

---

[14] Like the Circuit in *Asinor*, this Court also applied the rationale of *Jacobsen*, which at least one member of the *Asinor* panel considered the "key Supreme Court precedent" to the facts of this case. *Compare* Mem. Op. 10, *with Asinor*, 111 F.4th at 1255–56; *see also Asinor*, 111 F.4th at 1262 (Henderson, J., concurring) (finding unpersuasive the conclusions of four sister circuits because they failed to consider *Jacobsen*, the "key Supreme Court precedent").

[15] In addition, even if the Court had not analyzed the Fourth Amendment issue exactly as the *Asinor* Court did, that conclusion alone would do nothing to excuse the plaintiffs' "undue delay" in taking six months to move for reconsideration. *Nwachukwu*, 222 F.R.D. at 211. Indeed, as the Court will briefly address below, the plaintiffs' delay is part of a larger pattern in the plaintiffs' work product on this litigation to date and tests the Court's confidence that the instant Motion was filed in good faith.

no . . . evidentiary value, the government must show why retaining the property itself continues to be reasonable." Pls.' Mot. 15–16 (citing *In re Smith*, 888 F.2d 167, 168 (D.C. Cir. 1989)).

Putting to one side the fact that the *In re Smith* per curiam order cited by the plaintiffs does not stand for the proposition that there is a burden-shifting framework at work in these property-retention cases, this Court has already held that "[i]t must be reasonable, at a minimum, for the government to retain property seized as evidence for as long as it is pertinent to an ongoing, lawful criminal investigation or prosecution." Mem. Op. 13. And in almost identical language, the *Asinor* Court held that the government "can reasonably retain contraband or evidence in an ongoing criminal investigation or trial." *Asinor*, 111 F.4th at 1260. These holdings squarely foreclose the plaintiffs' argument that the District's retention of their property crossed the line from reasonable to unreasonable once the property was "processed" by MPD. Their argument on this point amounts to nothing more than an attempt to "reargue facts and theories upon which" both this Court and the *Asinor* Court have "already ruled." *Klayman v. Judicial Watch, Inc.*, 296 F. Supp. 3d 208, 213 (D.D.C. 2018) (Kollar-Kotelly, J.) (citing *Est. of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 & n.4 (D.D.C. 2011)).

The plaintiffs next claim that the District retained Ms. Parrott's and Mr. Iracks's vehicles to use as "leverage" in forcing those individuals to answer police questions. Pls.' Mot. 16–17. But the plaintiffs advance no argument as to why, *even if true*, such retention would amount to an unreasonable retention of the property. More importantly, they don't proffer any reason that they could not have made this argument in their original opposition to the motion to dismiss, and a motion for reconsideration is not a vehicle to proffer forfeited arguments. The plaintiffs also claim that the Court's reliance on then-Judge Gorsuch's opinion in *Christie*[16] was inapposite because

---

[16] *United States v. Christie*, 717 F.3d 1156, 1167 (10th Cir. 2013) (Gorsuch, J.).

their case presents an "exception" to the "general rule" that "lawfully seized property [b]earing evidence relevant to trial 'should be returned to its rightful owner once the criminal proceedings have terminated,' not before." Pls.' Mot. 17 (citing Mem. Op. 12–13). But the plaintiffs again advance *no argument* as to why their case should be considered an exception, with their next sentence simply stating that "*Christie* involved the property of the accused murderer, not of a third party." *Id.* at 18. As the District notes, to the extent the plaintiffs attempt to emphasize the fact that they were third parties to the crimes for which their property was seized as evidence, they have already fought and lost that battle. Dist. Opp'n. 10 (citing the plaintiffs' motion-to-dismiss briefing). And even if the Court had not considered this argument, its prior holding on the Fourth Amendment claims explicitly extended to claims made by third-party property holders. Mem. Op. 14.

Shifting gears, the plaintiffs accuse this Court of endorsing a *per se* rule that "holds that a piece of evidence has evidentiary value until a prosecutor says otherwise." Pls.' Mot. 18. This flippant characterization reflects a gross misreading of the Court's reasoning. The Court, like the D.C. Circuit in *Asinor*, held that personal property may be retained by the government lawfully "as long as it is pertinent to an ongoing, lawful criminal investigation or prosecution." Mem. Op. 12. And the Court went on to describe examples where "it might be reasonable for the government to retain seized property while a criminal case is still pending or in contemplation, *even after an initial search or 'processing.'*" Mem. Op. 12. Such examples included preservation of evidence for inspection by the prospective or actual criminal defendant, especially where the seized property contained "forensic evidence . . . that a defense expert would wish to analyze." *Id.* Far from supporting a rule that gives unfettered discretion to prosecutors, this Court and the D.C. Circuit recognized that both the government and the criminal defendant may have need to retain personal

property of third parties during the pendency of a criminal investigation. The remainder of the plaintiffs' Fourth Amendment arguments devolve into platitudes with either no citation or no relevance to this case.[17] The Court will not address those unsupported assertions.

### C. Fifth Amendment Claims

Finally, the plaintiffs argue that this Court misconstrued case law and the Amended Complaint's allegations regarding their Fifth Amendment claims. The plaintiffs advance four arguments on this point. First, the plaintiffs return once again to *Asinor*, this time to its "sparing[]" consideration of the Takings Clause. Pls.' Mot. 20. The entirety of the *Asinor* Court's consideration of the Takings Clause, however, is a recitation of the D.C. Circuit's earlier consideration of a takings claim in *Tate v. District of Columbia*, 627 F.3d 904 (D.C. Cir. 2010). The *Asinor* Court concluded that "*Tate* sheds little light" on cases like plaintiffs' because it dealt with a plaintiff whose property the District alleged she had abandoned. *Asinor*, 111 F.4th at 1260.

Were the D.C. Circuit's own distinction not enough, there are two more problems with the plaintiffs' reliance on *Tate*. First, *Tate* had been the law of the circuit for more than *ten years* at the time the plaintiffs filed their motion, and motions for reconsideration cannot be used "as a vehicle for presenting theories or arguments that could have been advanced earlier." *Klayman*, 296 F. Supp. 3d at 214. Second, and even more fundamentally, the plaintiffs misapply *Tate*'s reasoning to the facts of their situation. *Tate* held that if the District's seizure and sale of a plaintiff's property complied with due process, then any taking was lawful. *Tate*, 627 F.3d 904 (D.D.C. 2010). In other words: If due process in seizure, then no taking. The plaintiffs here assert that this logic can be flipped to stand for the proposition that: If no due process in seizure, then

---

[17] *E.g.*, "Prosecutors are, by nature, conservative"; "it is much easier to hold onto something that may be evidence than to let it go"; "there is easily a temptation for the government to retain a potential witness's vehicle . . . [to] secur[e] cooperation such as grand jury testimony." Pls.' Mot. 18–20.

taking. Pls.' Mot. 21. That, as any prospective law student studying for the LSAT will tell you, fails fundamental principles of logic.

The plaintiffs seek refuge in three out-of-circuit cases: a Fourth Circuit opinion, *Yawn v. Dorchester County*, 1 F.4th 191, 195 (4th Cir. 2021); the procedural history of a Fifth Circuit case, *Baker v. City of McKinney*, 84 F.4th 378 (5th Cir. 2023), *reh'g en banc denied* 93 F.4th 251 (5th Cir. Feb. 14, 2024); and a Sixth Circuit opinion, *Slaybaugh v. Rutherford City*, 114 F.4th 593, 597 (6th Cir. 2024), *reh'g en banc denied* 2024 WL 4661853, at *1 (6th Cir. Oct 16, 2024). At the risk of sounding like a broken record, the Court will point out that *Yawn* was decided well before this Court issued its Memorandum Opinion, and indeed before the District even filed its motion to dismiss on April 22, 2022. *See Klayman*, 296 F. Supp. 3d at 214. But even if *Yawn* had not been an available authority to the plaintiffs when they opposed the motion to dismiss, neither it nor the other cases cited by the plaintiffs provide "intervening authority" nor evidence that the Court's prior order was "clear[ly] wrong."

In *Baker*, the Fifth Circuit held that while no categorical police power exception to the Takings Clause existed, the government's action in that case fell under a "necessity exception" to the Takings Clause identified in "history and precedent." *Baker*, 84 F.4th at 385. It is hard to make out exactly what the plaintiffs want this Court to take away from *Baker*, but the Court can only assume it is the fact that six judges on the Fifth Circuit voted to rehear the case. Pls.' Mot. 22. Leaving aside that decisions of the Fifth Circuit are not binding on this Court, the plaintiffs fail to explain why a six-judge dissent from denial provides persuasive authority that this Court should reconsider its Memorandum Opinion. Not only that, but the plaintiffs also omit the fact that only two of the dissenting judges issued a statement respecting the denial of rehearing. *Baker v. City of McKinney*, 93 F.4th at 251 (Statement of Elrod and Oldham, JJ.). Therefore, in addition

to the fact that it is entirely possible that the other four judges wanted to rehear the case precisely to overturn the panel's police-power-exception holding.

But wait, the plaintiffs, say: Justice Sotomayor issued a statement concurring in the denial of certiorari in *Baker*. The Court is befuddled as to why the plaintiffs would draw attention to this statement. Joined by Justice Gorsuch, Justice Sotomayor noted that the Supreme Court has not "squarely address[ed]" whether the government can, pursuant to its police power, take property without just compensation. *Baker v. McKinney*, 145 S.Ct. 111, 112. While the parties here make much of Justice Sotomayor's citation to an earlier Supreme Court case from 1960, another portion of the Statement undermines the plaintiffs' reliance on *Baker*, *Yawn*, and *Slaybaugh*. Justice Sotomayor acknowledged that the question of "how the Takings Clause applies when the government destroys property pursuant to its police power[] is an important and complex [one] that would benefit from further percolation in the lower courts prior to this Court's intervention." *Id.* at 13. The Court hardly disagrees on the importance of the issue. But far from evincing an "intervening change in the law" or "clear error" in the Court's earlier decision, Justice Sotomayor's Statement simply confirms that reconsideration is not warranted because the Supreme Court has not "squarely address[ed]" whether there is categorical police-power exception to the Takings Clause and a growing circuit split exists.[18]

What is more, this Court did not even take a side in this debate. Instead, its holding was narrow: seizure and retention of property "for use as evidence in a criminal case" cannot constitute a taking before the associated criminal case has concluded. And because none of the plaintiffs pled facts that plausibly alleged their property was held beyond the termination of a criminal case, their Takings claims were dismissed. Far from adopting or rejecting a categorial police-power

---

[18] Because of this, the Court finds no reason to address *Yawn* or *Slaybaugh*.

exception, the Court's holding left open the possibility of instances where the police power cannot completely immunize the government from its obligation to compensate individual takings. *See* Mem. Op. 29–30 ("[H]ere . . . each of the plaintiffs' property is or was being retained as evidence in a criminal proceeding . . . . [T]heir only argument that it is not being retained pursuant to a lawful exercise of the police power is that the length of the seizure has violated the Fourth Amendment, an argument that the Court dispatched above.").

In sum, it is clear that the plaintiffs challenge this Court's decision not because it was "clear error," or because there is a clear "intervening change in law," but simply because the outcome goes against their clients. This is not grounds for granting reconsideration.[19]

### D. Clarification

The plaintiffs further ask this Court to clarify two points from its Memorandum Opinion. First, they ask this Court to "clarify" that Footnote 5 of the Opinion did not mean *exactly what it said*: that Ms. Parrott has standing to pursue a claim for an alleged deprivation of her due process rights under 42 U.S.C. § 1983 from the point her property was seized to the point that criminal charges were filed. It appears that the plaintiffs are not so much seeking "clarification" on this point as they are a reconsideration of the Court's decision. The Court was unambiguous: Ms. Parrott can pursue a § 1983 claim for the District's retention of her vehicle for the approximately three months before criminal charges were filed. Mem. Op. 16 n.5. The plaintiffs, however, "do not understand the Court to have foreclosed Ms. Parrott from arguing that she also has standing to challenge the District's continued retention of her vehicle after the institution of the criminal case." Pls.' Mot. 26. The Court has no choice but to conclude that the plaintiffs are intentionally

---

[19] As with the end of their Fourth Amendment argument, the last two pages of the plaintiffs' Fifth Amendment argument again state broad, normative claims without any citation to case law or other authority. Pls.' Mot. 24–25. The Court finds no need to evaluate the legal support for these arguments where plaintiffs have not even done so.

misreading this Court's language to serve their own ends. The Court explicitly referenced to the three-month window *before* the institution of a criminal proceeding as the relevant period during which Mr. Parrott could plausibly argue that her property was taken without due process. Indeed, the Court made that reference immediately prior to rejecting the District's argument that D.C. Superior Court Rule 41(g) provided adequate relief before the institution of a criminal proceeding, recognizing that the rule "does not apply—at least not reliably—where no criminal case has ever been brought before the Superior Court." Mem. Op. 16. The Court allowed the plaintiffs' due process claims to go forward only "insofar as they allege an unconstitutional lack of procedures available to contest a deprivation of property" in the *specific situation* where "property has been seized in connection with a criminal investigation *not yet charged* as a case in Superior Court." *Id.* at 21–22. No other reading of the Court's holding makes sense.

Straining to avoid this clear reading, the plaintiffs fall back on a position they argued in their motion-to-dismiss briefing: Namely, that even after a criminal case is charged, Rule 41(g) does not provide an adequate remedy for *third parties* who have their personal property seized as part of a criminal investigation. Pls.' Mot. 26. They argue that Rule 41(g) only provides recourse for criminal defendants. But this argument finds no basis in the text of the Rule, which states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." D.C. Super. Ct. R. Crim. P. 41(g). The plaintiffs seem to think that third parties are not included in the definition of "a person." But they provide no reason for the Court to commit to such a tortured reading of the rule.[20]

---

[20] The plaintiffs also argue that third parties are somehow entitled to even more process than the Rule provides. They imply that because criminal defendants receive a lawyer, notice of the basis for the charges against them, and prompt access to a neutral magistrate, so too should third parties whose property is taken in connection with a charged criminal case. Pls.' Mot. 26–27. But criminal defendants do not receive these additional protections because their *property* is seized *in connection* with a crime. They receive the protections because they are *charged* with a crime themselves.

Second, the plaintiffs ask the Court to clarify that regardless of whether Rule 41(g) provides an adequate post-deprivation procedure, the plaintiffs' claims that the District failed to provide notice of those procedures in violation of the Fifth Amendment should proceed. Pls.' Mot. 28. The Court is somewhat more sympathetic to this claim, but it nevertheless fails on standing grounds. The plaintiffs claim that the District had no policy for providing adequate notice of post-deprivation procedures, and that such a failure violated the plaintiffs' Fifth Amendment Rights. Pls.' Mot. 27. The District counters that "regardless of the policies regarding notice, Plaintiffs *did* get notice." Dist. Opp'n. 18. The District's use of the passive voice is telling, as the Court's Opinion on this point rested on the fact that the plaintiffs had obtained notice of the seizures not because of a District policy but because of the self-help measures they took to discover the location of their property. Mem. Op. 24–25. The Court held that because not enough time had elapsed for the District to even attempt putting the plaintiffs on notice, the plaintiffs failed to make a plausible allegation on this claim. *Id.* at 25.

Nothing about that situation has changed. While the Court is suspicious that the District does have such a policy of providing notice—especially considering the District's elusiveness in arguing that the plaintiffs' claims fail "regardless" of whether they have a policy—the fact remains that the named plaintiffs did have notice of the District's seizure of their property within twenty-four hours of such seizure. None of the named plaintiffs, therefore, has standing to challenge the District's lack of a policy.

### E. Amendment

---

For example, criminal defendants have a right to counsel because the Sixth Amendment provides such a right to "accused" persons. U.S. Const. amend. VI. That counsel might help the criminal defendant by filing a Rule 41(g) motion on his behalf does not mean that the criminal defendant receives assistance of counsel *for that purpose*. Thus, the plaintiffs are wrong to say that the Court's reasoning affords greater protection to the property rights of criminal defendants than third parties. Pls.' Mot. 27. Rather, the Constitution itself provides more protections to those "accused" of crimes than those who are not.

Finally, as a last-ditch effort, the plaintiffs ask for leave to further amend the Amended Complaint under Federal Rule of Civil Procedure 15(a). They do not advance much of an argument to justify allowing an amendment other than to say—once again without any citation to supporting evidence—that the criminal case against Ms. Parrott has ended. Pls.' Mot. 29–30. Because the District has not returned the keys to her car or three iPhones, the plaintiffs believe Ms. Parrott now has valid takings claim and should be allowed to amend the Amended Complaint to add this claim. The rest of their argument for granting leave to amend is made "in conjunction with" the Motion for Reconsideration, and the plaintiffs presumably incorporate those arguments into their request for leave to amend. Pls.' Mot. 30. Having denied those claims, the Court is hard-pressed to see what basis exists for granting leave to amend in the same breath it is denying reconsideration. Of course, a key difference between asking for reconsideration and asking for leave to amend is that the burden in the latter request shifts to the District, as the non-moving party, to show that leave to amend should be denied. *Robinson*, 283 F.R.D. at 6.

The District has met that burden. Most importantly, the District has shown that it would suffer undue prejudice if the Court granted leave to amend. Dist. Opp'n. 20. First, the District correctly points out that adding claims would require "additional discovery concerning MPD policies and procedures," creating repetitive work that would unduly burden the District and interfere with its important functions. Dist. Opp'n. 20. As to Ms. Parrott's new takings claim, the paucity of relevant information provided by the plaintiffs counsels against granting the motion. The Court has no way of knowing how long ago the criminal case involving her car was dismissed; whether Ms. Parrott has attempted to recover her property utilizing Rule 41(g); or whether MPD has been in contact with her about these items. To force the District back through rounds of discovery on this issue on such a barebones assertion would undoubtedly prejudice the District.

The District also argues that the plaintiffs' request to amend the Amended Complaint demonstrates "undue delay." Dist. Opp'n. 19. This Court agrees: to the extent the plaintiffs continue to rely on their theory that *Asinor* presents an intervening precedent, Pls.' Mot. 30, the Court has already noted that the plaintiffs knew about that case for six months before filing the instant Motion. And as this Court recognized *supra*, many of the theories advanced under the guise of being "novel" in light of *Asinor* are in reality based on cases that were decided well before the motion to dismiss over two years ago.

The Court finally turns to the District's argument that the plaintiffs have a "dilatory motive" in filing their motion to amend in light of their failure to "diligently litigate the case." Dist. Opp'n. 19. While the Court declines the invitation to inquire into the plaintiffs' motives in filing their motion, the Court will use this opportunity to address the burgeoning animosity between the parties. The Court recognizes that this is a contentious case with serious rights at stake. But that does not excuse either party from treating "all persons involved in the legal process with courtesy and respect." Model Rules of Pro. Conduct r. 1.3 cmt. 1. Moving forward, the Court expects the parties will adhere to the highest ethical standards set out by our profession.

## IV.    CONCLUSION

For the foregoing reasons, the plaintiffs' Motion [ECF No. 107] to Reconsider is **DENIED**. A separate Order consistent with this Opinion shall issue this date.

Date: __3__ July 2025

Royce C. Lamberth
United States District Judge